**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

TODD R. SNYDER, AS PLAN ADMINISTRATOR FOR THE TERRAFORM LABS PTE. LTD., ET AL., EACH POST-EFFECTIVE DATE DEBTOR, AND THE WIND DOWN TRUST,

                    Plaintiff,

        v.

JUMP TRADING, LLC, JUMP CRYPTO HOLDINGS, LLC, TAI MO SHAN LTD., JUMP FINANCIAL, LLC, J DIGITAL 6 CAYMAN LTD., JCDP-7QP LLC, JUMP OPERATIONS, LLC, JUMP CAPITAL, LLC, KANAV KARIYA, WILLIAM DISOMMA,

                    Defendants.

Case No. 25-cv-15414

**DEFENDANT DISOMMA'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND (6)**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

RELEVANT ALLEGATIONS................................................................................................ 2

ARGUMENT.................................................................................................................... 4

    I.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST DISOMMA FOR SECURITIES FRAUD OR MANIPULATION (COUNTS 1, 17, 19) ............................................. 5

        A.    Plaintiff Fails to Allege DiSomma Made Any Misstatements....................................... 5

        B.    Plaintiff Fails to Raise a Strong Inference of Scienter with Respect to DiSomma......... 7

    II.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST DISOMMA FOR COMMODITIES FRAUD (COUNTS 21–22) ............................................................ 10

    III.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST DISOMMA ON ANY FRAUDULENT TRANSFER THEORY (COUNTS 4–15)....................................... 11

    IV.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST DISOMMA ON AN AIDING AND ABETTING THEORY (COUNT 2)................................................. 14

    V.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST DISOMMA BASED ON ILLINOIS STATE LAW (COUNTS 16, 23–25)...................................................... 16

        A.    Plaintiff Fails to Make Out an Unjust Enrichment Claim............................................ 16

        B.    Plaintiff Fails to Make Out a Claim for Fraudulent Misrepresentation. ....................... 17

        C.    Plaintiff Fails to Make Out a Claim Under the Illinois Consumer Fraud Act. ............. 18

    VI.    PLAINTIFF FAILS TO STATE A CONTROL PERSON CLAIM AGAINST DISOMMA (COUNTS 18 AND 20) ....................................................................... 19

CONCLUSION................................................................................................................ 20

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*766347 Ontario Ltd. v. Zurich Cap. Markets, Inc.*,
  249 F. Supp. 2d 974 (N.D. Ill. 2003) ................................................................................ 20

*Aliano v. Ferriss*,
  988 N.E.2d 168 (Ill. App. Ct. 2013) .................................................................................. 18

*AnchorBank, FSB v. Hofer*,
  649 F.3d 610 (7th Cir. 2011) ............................................................................................... 7

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by & through Lyon v. Buth*,
  99 F.4th 928 (7th Cir. 2024) ................................................................................................ 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................. 4

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) .................................................................................................. 8

*Bank of Am., N.A. v. Knight*,
  725 F.3d 815 (7th Cir. 2013) ............................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................. 4

*Bonded Fin. Servs., Inc. v. European Am. Bank*,
  838 F.2d 890 (7th Cir. 1988) ........................................................................................ 12, 13

*Borsellino v. Goldman Sachs Grp., Inc.*,
  477 F.3d 502 (7th Cir. 2007) ............................................................................................... 4

*C.F.T.C. v. Kraft Food Grp., Inc.*,
  153 F. Supp. 3d 996 (N.D. Ill. 2015) ................................................................................. 10

*City of New Orleans Emps. Ret. Sys. v. PrivateBankcorp, Inc.*,
  2011 WL 5374095 (N.D. Ill. Nov. 3, 2011) ......................................................................... 8

*Davidoff v. Farina*,
  2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) ..................................................................... 9

*Donohoe v. Consolidated Operating & Prod. Corp.*,
  30 F.3d 907 (7th Cir. 1994) ............................................................................................... 19

ii

*Fulton Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.*,
   675 F.3d 1047 (7th Cir. 2012) ................................................................................ 6

*Gen. Elec. Cap. Corp. v. Lease Resolution Corp.*,
   128 F.3d 1074 (7th Cir. 1997) .............................................................................. 12

*Glickenhaus & Co. v. Household Int'l*,
   787 F.3d 408 (7th Cir. 2015) .................................................................................. 6

*Global Gaming Philippines, LLC v. Razon*,
   2022 WL 836716 (S.D.N.Y. Mar. 21, 2022) ........................................................ 16

*Gociman v. Loyal Univ. of Chi.*,
   41 F.4th 873 (7th Cir. 2022) ................................................................................. 16

*Hefferman v. Bass*,
   467 F.3d 596 (7th Cir. 2006) ................................................................................ 13

*In re Baxter Int'l Inc. Sec. Litig.*,
   2021 WL 100457 (N.D. Ill. Jan. 12, 2021) ............................................................ 9

*In re Canopy Fin., Inc.*,
   2015 WL 3505010 (N.D. Ill. June 2, 2015) .......................................................... 14

*In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*,
   435 F. Supp. 3d 845 (N.D. Ill. 2020) ..................................................................... 8

*In re Concepts Am, Inc.*,
   2018 WL 1174900 (N.D. Ill. Mar. 1, 2018) ......................................................... 13

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
   801 F.3d 758 (7th Cir. 2015) ................................................................................ 10

*In re Life Fund 5.1 LLC*,
   2010 WL 2650024 (Bankr. N.D. Ill. June 30, 2010) ............................................ 12

*In re Opus East, LLC*,
   528 B.R. 30 (Bankr. D. Del. 2015) ....................................................................... 16

*In re Peregrine Fin. Grp., Inc.*,
   589 B.R. 360 (Bankr. N.D. Ill. 2018) ................................................................... 13

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
   564 U.S. 135 (2011) ............................................................................................... 5

iii

*Magnuson v. Window Rock Residential Recovery Fund, L.P.*,
  2023 WL 8090727 (N.D. Ill. Nov. 21, 2023)................................................................ 7

*Magnuson v. Window Rock Residential Recovery Fund, L.P.*,
  2024 WL 5040836 (N.D. Ill. Dec. 9, 2024) ............................................................... 19

*McCauley v. City of Chicago*,
  671 F.3d 611 (7th Cir. 2011)..................................................................................... 4

*Patterson v. Jump Trading LLC*,
  710 F. Supp. 3d 692 (N.D. Cal. 2024) ...................................................................... 8

*PB Lube, Inc. v. Clean Harbors Env't Servs., Inc.*,
   2024 WL 3328161 (N.D. Ill. July 8, 2024) .............................................................. 17

*Peterson v. Colony Am. Fin. Lender, LLC*,
  634 B.R. 1010 (Bankr. N.D. Ill. 2021).............................................................. 16, 17

*Praither v. Northbrook Bank & Tr. Co.*,
  192 N.E.3d 747 (Ill. App. Ct. 2021)......................................................................... 14

*Pugh v. Tribune Co.*,
  521 F.3d 686 (7th Cir. 2008)..................................................................................... 7

*Rensin, Tr. of Rensin Joint Tr. v. U.S. Cellular Corp.*,
  755 F. Supp. 3d 1048 (N.D. Ill. 2024) ..................................................................... 19

*Saletech, LLC v. East Balt, Inc.*,
  20 N.E.3d 796 (Ill. App. Ct. 2014)........................................................................... 16

*Sullivan & Long, Inc. v. Scattered Corp.*,
  47 F.3d 857 (7th Cir. 1995)............................................................................ 7, 8, 10

*Swanson v. Citibank, N.A.*,
  614 F.3d 400 (7th Cir. 2010)..................................................................................... 4

*Symvria, Inc. v. Callen*,
  2022 WL 60530 (N.D. Ill. Jan. 6, 2022) .................................................................. 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ................................................................................................. 7

*Thompson v. Am. Airlines Grp., Inc.*,
  128 F. Supp. 3d 1047 (N.D. Ill. 2015) ..................................................................... 17

*U.S. ex rel. Presser v. Acacia Mental Health Clinic, LLC,*
   836 F.3d 770 (7th Cir. 2016) ................................................................................. 4

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.,*
   495 F. Supp. 3d 622 (N.D. Ill. 2020) ..................................................................... 18

*Waldock v. M.J. Select Global, Ltd.,*
   2005 WL 3542527  (N.D. Ill. Dec. 27, 2005) ......................................................... 19

*Walleye Trading LLC v. AbbVie Inc.,*
   962 F.3d 975 (7th Cir. 2020)................................................................................... 7

*Zurich Cap. Markets Inc. v. Coglianese,*
   332 F. Supp. 2d 1087 (N.D. Ill. 2004) ................................................................... 20

**Statutes**

11 U.S.C. § 548(a)(1)(A) ................................................................................... 11, 12

11 U.S.C. § 550(a) ............................................................................................ 12, 13

15 U.S.C. § 77o................................................................................................... 18

15 U.S.C. § 78i(a) ......................................................................................... 5, 7, 10

15 U.S.C. § 78j(b)................................................................................................ 5

15 U.S.C. § 78t(a) ............................................................................................... 18

15 U.S.C. § 78u-4(b)(2)  ...................................................................................... 6

17 C.F.R. § 240.10b-5......................................................................................... 5, 6, 7

59 Ill. Comp. Stat.. § 160/5(a)(2).......................................................................... 12

**INTRODUCTION**

This lawsuit is a baseless attempt by Plaintiff, standing in the shoes of Terraform Labs Pte. Ltd. and Terraform Labs Limited (together, "Terraform"), to hold the Jump Defendants, Kanav Kariya ("Kariya"), and William DiSomma ("DiSomma") responsible for a fraud committed by Terraform and its former CEO, Do Kwon ("Kwon"). All of Plaintiff's claims are meritless, but they are particularly misguided as to DiSomma. The few specific allegations Plaintiff makes regarding DiSomma in fact paint a consistent picture of lawful conduct: a market participant who believed in Terraform and UST and their surrounding ecosystem, believed that he could make money based on the trading opportunities the May 2021 UST depeg presented, and acted based on that belief. Plaintiff's post-hoc attempt to recast DiSomma's reasonable, good faith, and benign business strategies and decisions should be rejected and the claims against him dismissed with prejudice. Lacking well-pleaded allegations identifying any wrongdoing by DiSomma, Plaintiff instead largely lumps him into broad statements about actions taken by "Jump" or "Defendants." But such unspecific, conclusory group pleading is insufficient to state a claim.

DiSomma incorporates by reference the Statement of Facts and all arguments set forth in the Jump Defendants' Motion to Dismiss ("Jump Brief" or "Jump Br.") as if fully set forth herein, and writes separately to address several additional failings of the Complaint that further justify the dismissal of claims against DiSomma specifically.

*First*, Plaintiff fails to state a claim against DiSomma under the Securities Exchange Act of 1934 ("Exchange Act") under either a misstatements or market manipulation theory. The former theory fails because DiSomma is not alleged to have made any material misstatement or omission in light of a duty to disclose. The latter theory fails because the Complaint does not allege that DiSomma manipulated a security. And both fail because the Complaint's allegations fall far short of the Private Securities Litigation Reform Act's ("PSLRA") requirement that

1

Plaintiff demonstrate a strong inference of scienter as to DiSomma. Plaintiff does not state a claim against DiSomma under the Commodities Exchange Act ("CEA") for similar reasons.

*Second*, Plaintiff fails to state a claim for fraudulent transfer under either federal or Illinois law because DiSomma is not alleged to have been the recipient or beneficiary of any transfer.

*Third*, Plaintiff fails to state a claim for aiding and abetting Kwon's purported breach of fiduciary duty because, even assuming such a breach occurred, the Complaint does not adequately allege that DiSomma was aware Kwon was breaching his fiduciary duties or that DiSomma provided him substantial assistance in doing so.

*Fourth*, Plaintiff fails to state a claim for unjust enrichment, fraudulent misrepresentation, or violations of the Illinois Consumer Fraud Act ("ICFA"). DiSomma is not alleged to have personally received a benefit, so he cannot be liable for unjust enrichment. DiSomma is not alleged to have made any fraudulent misstatement or omission, so he cannot be liable for fraudulent misrepresentation. And DiSomma is not alleged to have performed any deceptive or manipulative acts, so he cannot be liable under the ICFA.

*Finally*, Plaintiff fails to state a claim for control person liability against DiSomma because Plaintiff does not identify a primary violation and because his allegations regarding DiSomma's supposed control are insufficient.

Accordingly, for the reasons set forth in the Jump Brief and herein, Plaintiff fails to state any claim with respect to DiSomma, and all claims against him should thus be dismissed with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).

## **RELEVANT ALLEGATIONS**[1]

The one-hundred-and-five-page Complaint largely lumps allegations against DiSomma

---

[1] As noted in the Jump Brief, Plaintiff's generalized allegations offer no well-pleaded facts to establish their truth. *See* Jump Br. at 4 n.3. Plaintiff also omits critical facts in his recounting of events. *See, e.g.*,

together with those made against the various Jump Defendants, collectively, and Kariya, who, during the relevant period, was President of Jump Crypto, Complaint ("Compl.") ¶ 31. The purported conduct specifically attributed to DiSomma is minimal.

The Complaint alleges that DiSomma is a co-founder of Jump Trading Group and managing member of Jump Financial, LLC. *Id.* ¶ 32. According to Plaintiff, prior to the UST depeg in May 2021, the Jump Defendants had "invested substantial time and capital into the Terraform ecosystem" and therefore had a "substantial self-interest" in Terraform's UST retaining its peg. *Id.* ¶ 59. On May 19, 2021, UST fell below one dollar, reaching a value of $0.90 by May 23, 2021. *Id.* ¶ 60. Plaintiff alleges that, on May 23, 2021, the Jump Defendants made an agreement with Kwon whereby Terraform would agree to remove certain vesting conditions from a previous agreement between the Jump Defendants and Terraform in exchange for the Jump Defendants' assistance in restoring the peg. *Id.* ¶ 62. Later that day, DiSomma allegedly "began giving instructions to the Jump traders . . . about how to trade and continued to give instructions . . . in the following days." *Id.* ¶ 64; *see also id.* ¶ 66. The Jump Defendants are alleged to have begun buying and holding more UST, in a departure from Jump's past market-making activities. *Id.* After the UST peg stabilized on May 27, 2021, DiSomma is alleged to have told traders to "carefully unwind Jump's UST position so as not to cause another depeg." *Id.* ¶¶ 68, 359. According to the Complaint, "Jump's actions . . . restored UST to its $1 peg," but its purported role in restoring the peg was not disclosed to the public. *See id.* ¶¶ 67–69, 420.

In May 2022, UST again began to deviate from its peg. *Id.* ¶ 91. During the second depeg, DiSomma allegedly contacted other prominent crypto trading firms in an attempt to raise additional funds to purchase UST and support Terraform. *Id.* ¶¶ 99–100. Plaintiff alleges that

---

Jump Br. at 40 n.26. DiSomma accepts the allegations in the Complaint as true only for purposes of this motion.

some of the firms contacted by DiSomma were "aggressive, quant-focused trading firms" that "used that information to trade against UST and Luna." *Id.* ¶ 101. When deposed by the SEC prior to its trial against Terraform, DiSomma invoked his Fifth Amendment rights in response to questions concerning UST. *Id.* ¶¶ 10, 111.

## ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Moreover, "the required level of factual specificity rises with the complexity of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). In evaluating the Complaint, the court need not accept as true "legal conclusions" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663–64.[2]

As explained in the Jump Brief, each of Plaintiff's claims sound in fraud. Accordingly, Plaintiff's claims are subject to the heightened pleading standard of Rule 9(b). *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007); *see* Jump Br. at 7, 33, 50. Thus, Plaintiff must "state with particularity the circumstances constituting fraud." *U.S. ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 775 (7th Cir. 2016). Practically speaking,

---

[2] In addition to challenging Plaintiff's claims under Rule 12(b)(6), the Jump Brief moves to dismiss certain claims due to the lack of subject matter jurisdiction. Jump Br. at 10–14. DiSomma joins the Jump Defendants' motion in full and moves to dismiss under both Rule 12(b)(1) and 12(b)(6).

"[t]his requires allegations of the 'who, what, when, where and how' of the alleged fraudulent conduct." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Moreover, Plaintiff cannot merely group the defendants together. Under either Rule 8 or 9(b), a claim must be dismissed if it merely groups defendants together without providing the relevant details "about who did what." *Id.* at 818. Plaintiff's limited allegations regarding DiSomma fall far short of these standards.

## I. PLAINTIFF FAILS TO STATE A CLAIM AGAINST DISOMMA FOR SECURITIES FRAUD OR MANIPULATION (COUNTS 1, 17, 19)

Plaintiff brings claims against DiSomma for contribution to Terraform's Rule 10b-5 liability (Count 1), a violation of Exchange Act Section 10(b) and SEC Rule 10b-5 on behalf of the Crypto Loss Claimants (Count 17), and a violation of Exchange Act Section 9, also on behalf of the Crypto Loss Claimants (Count 19). For the reasons described in the Jump Brief, Plaintiff's allegations fail in numerous regards. *See* Jump Br. at 14–33. All of these failings are equally applicable to the claims against DiSomma individually and justify dismissal. Beyond this, Plaintiff's claims have unique deficiencies with respect to DiSomma that further necessitate dismissal.

### A. *Plaintiff Fails to Allege DiSomma Made Any Misstatements.*

In order to state a claim for securities fraud under Section 10(b) and Rule 10b-5, Plaintiff must adequately allege "(1) a material misrepresentation or omission" or manipulative act; "(2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by & through Lyon v. Buth*, 99 F.4th 928, 951 (7th Cir. 2024) (citation omitted). A person can only be held liable under Section 10(b) if they were the "maker of a statement," which is "the person or entity with ultimate authority

over the statement, including its content and whether and how to communicate it." *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011).

Plaintiff identifies five alleged misstatements. Compl. ¶¶ 328–32. But Plaintiff does not allege that DiSomma was the speaker or author of a single one of these statements. Instead, Plaintiff attributes four of the alleged misstatements to Kariya. *Id.* ¶¶ 328, 330–32. The final misstatement is attributed to "Jump Crypto." *Id.* ¶ 329. Plaintiff does not allege that DiSomma reviewed, approved, or was even aware of any of these statements. Plaintiff's failure to allege that DiSomma had any role with respect to these statements is fatal to the claim against him either as a direct violator of Section 10(b) and SEC Rule 10b-5 (Count 17) or as a contributor to Terraform's violation (Count 1). *Fulton Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.*, 675 F.3d 1047, 1051 (7th Cir. 2012) (affirming dismissal of claims against defendant where there was no allegation that defendant directed speakers to make misstatements).

Nor may Plaintiff rely on a theory that DiSomma "made" certain statements published by others, simply by virtue of his role as co-founder of Jump Trading Group. The mere fact that someone is an executive or senior member of a company does not make them liable for statements made by other employees unless they "actually exercised control over the content of [the statements] and whether and how they were communicated." *Glickenhaus & Co. v. Household Int'l*, 787 F.3d 408, 427 (7th Cir. 2015). Again, Plaintiff does not even allege that DiSomma was aware of the alleged misstatements, let alone that he exercised control over their content or how they were communicated.

Nor does Plaintiff state a claim against DiSomma based on an omission theory. For the reasons explained in the Jump Brief, Plaintiff fails to allege that DiSomma had a duty to disclose any of the purportedly omitted information. *See* Jump Br. at 27–28.

6

At bottom, Plaintiff attempts to make DiSomma responsible for statements made by others and offers no plausible allegations regarding his role in those statements. For these reasons and the reasons set forth in the Jump Brief, Plaintiff fails to state a claim for securities fraud against DiSomma based on misstatements or omissions, and Counts 1 and 17 must be dismissed.

      B.      *Plaintiff Fails to Raise a Strong Inference of Scienter with Respect to DiSomma.*

Plaintiff's securities fraud and manipulation claims must also be dismissed because Plaintiff has not adequately alleged scienter. Plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The required state of mind under both Section 10(b) and 9(a) is scienter. *See Buth*, 99 F.4th at 951 (Section 10(b)); *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 616–17 (7th Cir. 2011) (Section 9(a)). Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). Under the PSLRA, Plaintiff's scienter allegations must be "more than merely plausible or reasonable." *Id.* at 314. Rather, the "allegations of scienter must be as compelling as any opposing inference." *Walleye Trading LLC v. AbbVie Inc.*, 962 F.3d 975, 977 (7th Cir. 2020). And Plaintiff "must create a strong inference of scienter with respect to each individual defendant." *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008). This is a "more demanding standard" than even Rule 9(b). *Magnuson v. Window Rock Residential Recovery Fund, L.P.*, 2023 WL 8090727, at *7 (N.D. Ill. Nov. 21, 2023). Plaintiff fails to meet this high burden with respect to DiSomma.

Plaintiff's allegations with respect to DiSomma do not come close to demonstrating an intent to deceive, manipulate, or defraud. DiSomma is not alleged to have engaged in any conversations with Kwon or anyone at TFL, let alone entered into an agreement to manipulate the UST markets or otherwise commit fraud. In addition, DiSomma is not alleged to have believed

7

that UST was worth less than $1. To establish the requisite manipulative intent, Plaintiff must adequately allege that DiSomma directed trading with the intent to create "artificially high or low prices, prices that do not reflect the underlying conditions of supply and demand." *Sullivan & Long, Inc. v. Scattered Corp.*, 47 F.3d 857, 862 (7th Cir. 1995). Plaintiff fails to do so. In substance, Plaintiff alleges that DiSomma "directed Jump traders to adjust their models to . . . buy[] and hold[] more and more UST." Compl. ¶ 66. Plaintiff characterizes this behavior as "artificially restor[ing] the peg." *Id.* ¶ 63. But this is conclusory, as there is no allegation that DiSomma believed that a $1 price for UST was artificial. Rather, as the court observed in rejecting substantially the same allegations in the *Patterson* action, the trading "could reflect a benign business decision" to acquire "tokens below their real value" and then sell for profit. *Patterson v. Jump Trading LLC*, 710 F. Supp. 3d 692, 717 (N.D. Cal. 2024). Indeed, that is precisely what the Complaint here alleges DiSomma did. Compl. ¶¶ 70, 307 (alleging Jump Defendants "profited over $1.5 million" by buying UST at below $1 and then selling once the peg was restored).

Plaintiff cannot transform ordinary market behavior of buying low and selling high into market manipulation by conclusorily labeling it "artificial." As the Seventh Circuit explained in *Sullivan & Long*, profiting by buying an asset at a price below its true value and selling when that price rebounds is arbitrage, which "is not market manipulation. The opposite of a practice that creates artificial prices, it eliminates artificial price differences." 47 F.3d at 862; *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007) (observing that trading that "move[s] the prices of . . . securities towards their intrinsic values" is not manipulative).

Plaintiff's only explicit scienter allegation is a single conclusory paragraph arguing that "*Jump* acted with scienter" because "[i]t failed to disclose critical information about its role in defending the peg, all while knowing its behavior would result in significant profits from selling

8

hundreds of millions of dollars of Luna tokens." Compl. ¶ 335 (emphasis added). DiSomma is not included in the Complaint's definition of "Jump." *Id.* at 2. Even if he were, this allegation would "constitute[] group pleading, which fails to meet the heightened PSLRA pleading requirements." *City of New Orleans Emps. Ret. Sys. v. PrivateBankcorp, Inc.*, 2011 WL 5374095, at *8 (N.D. Ill. Nov. 3, 2011). And even if it did not fail for these reasons, this conclusory allegation boils down to the anodyne proposition that the Jump Defendants sought to engage in profitable trading.[3] But "a profit motive does not suffice to establish [scienter]." *In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 435 F. Supp. 3d 845, 863 (N.D. Ill. 2020). Plaintiff's other broad and conclusory allegations—such as that "Jump was doing everything possible to salvage this fraudulent scheme," Compl. ¶ 99, or that "Jump knew . . . that LFG had insufficient funds to re-establish the peg," *id.* ¶ 103—suffer the same failings. Nor can Plaintiff allege that DiSomma must have had scienter merely by virtue of his role as cofounder of Jump Trading Group. *See In re Baxter Int'l Inc. Sec. Litig.*, 2021 WL 100457, at *12 (N.D. Ill. Jan. 12, 2021) (collecting cases for the proposition that "a pleading of scienter may not rest on the inference that defendants must have been aware of the [fraud] based on their positions within the company" (quotation modified)).

Many of Plaintiff's allegations actually weigh against a finding of scienter as to DiSomma. Plaintiff puts significant emphasis on the allegation that in May 2021, the Jump Defendants successfully negotiated the removal of certain vesting conditions from their contract with Terraform. Compl. ¶¶ 61–66. As Plaintiff alleges, this meant that the Jump Defendants agreed to purchase "millions of Luna" at a time UST prices were precipitously falling. *Id.* ¶ 63. As the

---

[3] Nor can Plaintiff infer that DiSomma had scienter by virtue of his failure to disclose the Jump Defendants' role in purportedly defending the peg, as DiSomma was under no duty to make such a disclosure. *See infra* at 6; Jump Br. at 27–28.

Complaint alleges, the Jump Defendants continued to receive 1.2 million Luna each month until the collapse of Terraform. *Id.* ¶ 75. If DiSomma and the Jump Defendants thought that UST was a sham, this decision to increase their investment in Terraform's tokens would make no sense. *See, e.g.*, *Davidoff v. Farina*, 2005 WL 2030501, at *11 n.19 (S.D.N.Y. Aug. 22, 2005) (finding that there could be no inference of scienter because "it would have made no economic sense for defendants to invest literally billions of dollars in a venture that they knew would fail"). Indeed, the fact that certain Jump Defendants later agreed to purchase hundreds of millions of dollars' worth of LUNA that would not unlock for years to come, demonstrating a long-term commitment to, and good faith belief in the ecosystem. Jump Br. at 9; Compl. ¶ 83. And the fact that DiSomma allegedly made efforts to *assist* Terraform by conducting outreach to other firms during the second depeg also demonstrates his genuine belief in the ecosystem. Compl. ¶ 100.

Plaintiff's allegations fall far short of establishing a strong inference of scienter with respect to DiSomma, and the Exchange Act claims (Counts 1, 17, and 19) should be dismissed.

## II. PLAINTIFF FAILS TO STATE A CLAIM AGAINST DISOMMA FOR COMMODITIES FRAUD (COUNTS 21–22)

For similar reasons, Plaintiff fails to state a claim against DiSomma for violating the CEA. Plaintiff asserts two claims under the CEA: (1) a claim for market manipulation under Section 9(a) (Count 21); and (2) a claim for aiding and abetting market manipulation (Count 22). Both fail to state a claim.

To state a claim under Section 9(a), Plaintiff must adequately allege that "(1) the defendants possessed the ability to influence prices; (2) an artificial price existed; (3) the defendant caused the artificial price; and (4) the defendant specifically intended to cause the artificial price." *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 764–65 (7th Cir. 2015). For the reasons described in the Jump Brief, Plaintiff fails at every hurdle of this inquiry. *See* Jump Br. 33–37.

10

Like the claim under the parallel Exchange Act provision, Plaintiff's allegations regarding DiSomma's intent are particularly lacking and further justify dismissal. It is not sufficient for Plaintiff to allege merely that DiSomma was aware that trading "might have an impact on the []  market"; rather, Plaintiff must allege that he "specifically inten[ded] to cause the artificial price." *C.F.T.C. v. Kraft Food Grp., Inc.*, 153 F. Supp. 3d 996, 1020 (N.D. Ill. 2015) (citation omitted). The Complaint does not allege that DiSomma believed that $1 was an artificial or unjustified price for UST. *See supra* Section I.B. Shorn of the suggestive and speculative framing, all Plaintiff has described is a trader who saw the opportunity to acquire a commodity for $0.90 when he believed he could sell it for $1, and did just that. This sort of trading reflects the "underlying conditions of supply and demand" and is not manipulative. *Sullivan & Long, Inc.*, 47 F.3d at 862.

Plaintiff also brings a claim for aiding and abetting market manipulation under the CEA. Compl. ¶¶ 435–59. This count does not even state *whom* DiSomma is alleged to have aided and abetted, let alone that he did so with the requisite intent. *See id.*; *see also* Jump Br. at 37. Indeed, a side-by-side comparison of Count 21 (primary violation) and Count 22 (aiding and abetting violation) reveals that the substantive allegations are nearly word-for-word identical. The only difference between the two counts is that Count 22 includes a rote recitation of the statutory language regarding aiding and abetting liability. Compl. ¶ 439. This does not rescue Plaintiff's deficient allegations, and this claim must be dismissed for the same reasons as Count 21.

III. **PLAINTIFF FAILS TO STATE A CLAIM AGAINST DISOMMA ON ANY FRAUDULENT TRANSFER THEORY (COUNTS 4–15)**

The Court should also dismiss Plaintiff's fraudulent transfer claims against DiSomma. These claims, which constitute the bulk of Plaintiff's counts, allege that certain transactions between certain Jump Defendants, TFL, and LFG were actual or constructively fraudulent transfers in violation of federal and state law. Plaintiff brings these claims on behalf of the Crypto

11

Loss Claimants, LFG, and TFL, against all Defendants. All of these claims fail for the reasons articulated in Jump's Brief, which are equally applicable to DiSomma. *See* Jump Br. at 37–48. These claims are also uniquely flawed with respect to DiSomma, providing a further basis for dismissal.

To recover for an actual fraudulent transfer, Plaintiff must show that the transfer was made "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted." 11 U.S.C. § 548(a)(1)(A); *see also* 59 Ill. Comp. Stat. Ann. § 160/5(a)(1).[4] To recover for a constructive fraudulent transfer, Plaintiff must show that the debtor:

> "received less than a reasonably equivalent value in exchange for such transfer or obligation" and either "was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation," or "was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital," or "intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured."

11 U.S.C. § 548(a)(1)(B); *see also* 59 Ill. Comp. Stat. Ann. § 160/5(a)(2).

A trustee can only recover the property transferred or its value from the "initial transferee of such transfer or the entity for whose benefit such transfer was made or any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a); Compl. ¶ 300.

Because Plaintiff is alleging fraud, he must meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See Gen. Elec. Cap. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) (applying Rule 9(b) to fraudulent transfer claims); *see also* Jump Br. at 43. Accordingly, Plaintiff "must allege what (or how much) was transferred, when the

---

[4] Federal and Illinois fraudulent transfer law are "essentially identical." *In re Blackrock Burr Ridge, Inc.*, 663 B.R. 877, 894 (Bankr. N.D. Ill. 2024). Accordingly, Plaintiff's fraudulent transfer claims fail under either source of law.

transfer was made, how it was made, who made it, who received it, and under what circumstances." *In re Life Fund 5.1 LLC*, 2010 WL 2650024, at *3 (Bankr. N.D. Ill. June 30, 2010). Plaintiff fails to meet this stringent standard with respect to DiSomma.

In addition to the deficiencies identified in the Jump Brief, Plaintiff's claims against DiSomma fail for the simple reason that he never alleges that DiSomma was a transferee. To be a "transferee," DiSomma must have received "dominion over the money or other asset." *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988). Plaintiff does not allege DiSomma received dominion over any transferred funds. Indeed, over the course of one hundred and fifty paragraphs of allegations regarding the purported fraudulent transfers, DiSomma is not mentioned a single time. Compl. ¶¶ 161–302. On the contrary, Plaintiff repeatedly alleges that the transfers were made to and for the benefit of "Jump Trading." *See, e.g.*, *id.* ¶¶ 167, 181, 195, 231, 245, 259. The Complaint also does not allege that DiSomma was "the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a); Compl. ¶ 300. The Bankruptcy Code does not define this term, but the Seventh Circuit has interpreted it to mean a party who "receives the benefit [of the transfer] but not the money." *Bonded Fin. Servs*, 838 F.2d at 893. That person must "benefit from the transfer directly, not indirectly, as soon as the transfer is made." *In re Peregrine Fin. Grp., Inc.*, 589 B.R. 360, 380 (Bankr. N.D. Ill. 2018). It is insufficient to allege only that by virtue of his role with the Jump Defendants, DiSomma might ultimately "be able to use the funds held by [initial transferee] to his own benefit." *Id.* at 380. Here, Plaintiff does not even make that allegation.

The fact that DiSomma was neither a transferee nor the purported beneficiary of the transfers is fatal to Plaintiff's claim against him individually. *See In re Concepts Am, Inc.*, 2018 WL 1174900, at *12 (N.D. Ill. Mar. 1, 2018) (dismissing claim where defendant was "neither a

13

transferee of any fraudulent transfer nor the immediate or mediate transferee"); 11 U.S.C. § 550(a).

Accordingly, each of these counts should be dismissed.

## IV. PLAINTIFF FAILS TO STATE A CLAIM AGAINST DISOMMA ON AN AIDING AND ABETTING THEORY (COUNT 2)

Count 2, which alleges that Defendants aided and abetted Kwon's breach of fiduciary duties, is similarly meritless, particularly as to DiSomma. To state a claim, Plaintiff must adequately allege "(1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation." *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (applying Illinois law).[5] Plaintiff's aiding and abetting claim sounds in fraud, but its conclusory allegations fail to meet Rule 8's pleading standard, let alone Rule 9(b)'s heightened requirements. *See* Jump Br. 49–50. This deficiency begins with Plaintiff's failure to adequately allege a primary violation. *See* Jump Br. at 49 n.37.

But even if Plaintiff had plausibly alleged that Kwon breached his duty, there is no plausible allegation that DiSomma knew about it. To satisfy this element, Plaintiff must show that DiSomma had "actual knowledge," and not just that there may have been "red flags" or "indicia of suspicious activity." *In re Canopy Fin., Inc.*, 2015 WL 3505010, at *7 (N.D. Ill. June 2, 2015). Plaintiff fails to meet this high bar. Plaintiff claims the "Defendants' actual knowledge" came from two sources: their "knowledge of and direct involvement in virtually every major decision

---

[5] As an initial matter, Plaintiff conclusorily claims that "Kwon owed fiduciary duties to Terraform," but does not specify the source of law for those duties. Compl. ¶ 144. Plaintiff does not even allege *where* any of the relevant Terraform entities were incorporated. And given the muddled nature of these allegations, it is also not clear whether Plaintiff is making a claim that Kwon breached his fiduciary duties with respect to Terraform, LFG, or both. *See id.* ¶ 143 (describing Kwon's fiduciary duties to Terraform); ¶ 148 (alleging Kwon breached his fiduciary duties by "misappropriat[ing] *LFG* funds" (emphasis added)). These failings only highlight the conclusory nature of Plaintiff's claim. But regardless of the source of law for any underlying fiduciary duty claim or the precise theory pursued, Plaintiff's claim for aiding and abetting liability falls far short as to DiSomma.

14

made by Kwon in the operation of Terraform and LFG from May 2021 through May 2022" and "non-public information about the stability of Terraform's ecosystem." Compl. ¶ 149. But this allegation is insufficient to satisfy either Rule 8 or Rule 9(b), particularly as to DiSomma.

First, Plaintiff does not allege *any* communication between DiSomma and Kwon, let alone pervasive enough contact to plausibly allege that DiSomma would have personal knowledge of and direct involvement in *all* of Kwon's business decisions in his management of companies that were entirely separate from the Jump Defendants. Second, Plaintiff does not explain how DiSomma's purported "non-public information about the stability of Terraform's ecosystem" would have made him aware Kwon was breaching his fiduciary duty towards his own company. *See Praither v. Northbrook Bank & Tr. Co.*, 192 N.E.3d 747, 760–61 (Ill. App. Ct. 2021) (affirming dismissal of aiding and abetting fiduciary duty claim where plaintiffs did not sufficiently allege that defendant had actual knowledge of breach). Indeed, the decision to continue investing in Terraform's tokens, as alleged in the Complaint, is inconsistent with the allegation that DiSomma was aware Kwon was engaged in misconduct. *See supra* at 9–10. DiSomma's direction to traders to acquire more UST in May 2021 while its price was declining is also consistent with a trader who had faith in the token and its surrounding ecosystem.

Finally, even if DiSomma was aware Kwon was breaching his fiduciary duties, Plaintiff still fails to allege that DiSomma personally provided substantial aid to Kwon. Plaintiff devotes a single paragraph to alleging how "Defendants substantially assisted Kwon's breaches of fiduciary duty." Compl. ¶ 148. Each of these conclusory allegations should be rejected for the reasons articulated in the Jump Brief. Jump Br. at 49–50. But even more crucially, Plaintiff does not allege that *DiSomma* "carr[ied] out [Kwon's] instructions to misappropriate LFG funds," received any LFG funds, misrepresented the stability of the Terraform ecosystem, or assisted in growing

15

the amount of UST.  Compl. ¶ 148.  Again, Plaintiff cannot simply "lump[] all the defendants together, never describing which defendant is responsible for what conduct[.]"  *Knight*, 725 F.3d at 818 (citation omitted).  But that is precisely what the Complaint does.  The Court should thus dismiss Count 2.  *See, e.g.*, *Symvria, Inc. v. Callen*, 2022 WL 60530, at *18 (N.D. Ill. Jan. 6, 2022) (dismissing aiding and abetting fiduciary duty claim because of insufficient allegations of substantial aid).

**V.     PLAINTIFF FAILS TO STATE A CLAIM AGAINST DISOMMA BASED ON ILLINOIS STATE LAW (COUNTS 16, 23–25)**

Plaintiff's remaining state law claims against DiSomma fare no better and should be dismissed for failure to state a claim.  As the Jump Brief explains, each of these claims is fatally flawed.  *See* Jump Br. 48–50.  In addition, these claims are uniquely deficient as to DiSomma.

*A.     Plaintiff Fails to Make Out an Unjust Enrichment Claim.*

Plaintiff asserts claims for unjust enrichment "[a]gainst all Defendants" on behalf of LFG and Terraform (Count 16) as well as the Crypto Loss Claimants (Count 24).  Compl. at 59, 101.  "To state a claim for unjust enrichment under Illinois law**,** a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."  *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 886 (7th Cir. 2022) (citation omitted).  The Complaint does not allege that DiSomma personally received or retained any benefit.  Plaintiff's failure to make this essential allegation dooms the unjust enrichment claims against DiSomma individually.  *See Saletech, LLC v. East Balt, Inc.*, 20 N.E.3d 796, 808 (Ill. App. Ct. 2014) (dismissing unjust enrichment claim when there were no allegations defendant obtained a benefit from plaintiff).

Nor can Plaintiff hold DiSomma individually liable for purported unjust enrichment provided to the Jump Defendants by piercing the corporate veil.  First, as explained in the Jump

16

Brief, Plaintiff has not stated a claim as to the Jump Defendants. *See* Jump Br. at 50. Second, to pierce the corporate veil, Plaintiff "bears the burden of proving that there are substantial reasons" for the Court to disregard the corporate form. *In re Opus East, LLC*, 528 B.R. 30, 57–58 (Bankr. D. Del. 2015) (applying Delaware law). To do this, Plaintiff "must plead facts supporting an inference that the corporation, through its alter-ego, is a sham entity and exists for no purpose other than to defraud investors and creditors." *Peterson v. Colony Am. Fin. Lender, LLC*, 634 B.R. 1010, 1025 (Bankr. N.D. Ill. 2021) (applying Delaware law); *see also Glob. Gaming Philippines, LLC v. Razon*, 2022 WL 836716, at *7 (S.D.N.Y. Mar. 21, 2022) (concluding Cayman Island veil piercing law is similar to if not more stringent than Delaware law). Plaintiff does not make such an allegation with respect to DiSomma and the Jump Defendants. At most, Plaintiff conclusorily alleges that "Jump used these entities to commingle funds and assets across its business, shared corporate officers amongst them, failed to maintain arms-length relationships between them, and employed each one as a mere facade for Jump itself." Compl. ¶ 30. But even if Plaintiff *had* pleaded any facts in support of these allegations (and he does not), Plaintiff would still be unable to pierce the corporate veil since Plaintiff does not allege the relevant entities exist merely to defraud. *See Peterson*, 634 B.R. at 1017–28 (finding that "[w]ithout facts to support this key element" the veil cannot be pierced under Delaware law); *see also* Jump Br. at 10. Accordingly, Counts 16 and 24 must be dismissed against DiSomma.

### B. *Plaintiff Fails to Make Out a Claim for Fraudulent Misrepresentation.*

To make out a claim for fraudulent misrepresentation under Illinois law, Plaintiff must allege "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance."

*Thompson v. Am. Airlines Grp., Inc.*, 128 F. Supp. 3d 1047, 1050 (N.D. Ill. 2015). This claim fails for the reasons stated in the Jump Brief, which apply equally to DiSomma. Jump Br. at 48–49. In addition, as described above, Plaintiff does not allege that DiSomma individually made any false statements or omissions of material fact at all. *See supra* at 5–6. Given the absence of such allegations, Plaintiffs also cannot allege the elements of reliance or scienter as to DiSomma. Accordingly, Plaintiff fails to state a claim for fraudulent misrepresentation, and Count 25 must be dismissed. *See, e.g.*, *PB Lube, Inc. v. Clean Harbors Env't Servs., Inc.*, 2024 WL 3328161, at *6 (N.D. Ill. July 8, 2024) (dismissing claim for fraudulent misrepresentation based only on conclusory allegations).

### C.      *Plaintiff Fails to Make Out a Claim Under the Illinois Consumer Fraud Act.*

To state a claim for a violation of the ICFA, Plaintiff must adequately allege "the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019). As stated in the Jump Brief, this claim fails for several reasons. Jump Br. at 48–49. In addition, Plaintiff does not allege that DiSomma committed any deceptive or unfair act. Despite being alleged against all Defendants, Plaintiff's allegations in this count entirely relate to actions taken by the Jump Defendants, Kariya, and Terraform executives. Compl. ¶¶ 460–73. Plaintiff's failure to allege any deceptive acts by DiSomma is fatal to Count 23, as alleged against him.[6] *See, e.g.*, *Aliano v. Ferriss*, 988 N.E.2d 168, 176–77 (Ill. App. Ct. 2013) (affirming dismissal of ICFA claim where plaintiff failed to adequately allege an unfair practice or deceptive conduct).

---

[6] To the extent the ICFA claim is premised on DiSomma's alleged involvement in the May 2021 trading, those allegations fail for the same reasons described above. *See supra* at 7–11.

## VI.  PLAINTIFF FAILS TO STATE A CONTROL PERSON CLAIM AGAINST DISOMMA (COUNTS 18 AND 20)

Finally, Plaintiff brings claims against DiSomma as a control person of the Jump Defendants under both Section 20(a) of the Exchange Act and Section 15 of the Securities Act of 1933 (the "Securities Act").  To state a claim under either statute, a plaintiff must allege "(1) a primary violation of securities law; (2) that each individual defendant exercised general control over the primary violator's operations; *and* (3) that each individual defendant possessed the power or ability to control the specific transaction or activity [upon] which the primary violation was predicated, whether or not that power was exercised." *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 672–73 (N.D. Ill. 2020) (quotation modified and emphasis added).  These claims fail at each step.

*First*, as set forth in the Jump Brief and above, Plaintiff has failed to plead a primary violation of either the Exchange or Securities Acts, requiring dismissal of the control person claims.  *See, e.g.*, *Rensin, Tr. of Rensin Joint Tr. v. U.S. Cellular Corp.*, 755 F. Supp. 3d 1048, 1066 (N.D. Ill. 2024) (dismissing control person claims given failure to plead a primary violation).

*Second*, to satisfy the element of general control, Plaintiff needs to adequately allege that DiSomma "actually exercised general control over the operations of the wrongdoer." *Donohoe v. Consolidated Operating & Prod. Corp.*, 30 F.3d 907, 911 (7th Cir. 1994).  He fails to do so. Plaintiff alleges that DiSomma "had control of the primary violator–the Jump entity Defendants." Compl. ¶ 403; *see also id.* ¶¶ 357, 360, 407–08.  But the Complaint provides no detail regarding DiSomma's ownership or contractual control of any of the relevant entities.  Courts regularly reject such boilerplate allegations of control.  *See, e.g.*, *Waldock v. M.J. Select Glob., Ltd.*, 2005 WL 3542527, at *7 (N.D. Ill. Dec. 27, 2005) (finding control insufficiently alleged when based on conclusory allegations).  Plaintiff merely alleges that DiSomma is "the co-founder of Jump

19

Trading Group and a managing member of Jump Financial, LLC." Compl. ¶ 32. This is not enough. Plaintiff must "allege something more than [Defendant's] position" to state a claim for control person liability. *Magnuson v. Window Rock Residential Recovery Fund, L.P.*, 2024 WL 5040836, at *5 (N.D. Ill. Dec. 9, 2024). The Court should reject Plaintiff's conclusory allegations. *See Zurich Cap. Markets Inc. v. Coglianese*, 332 F. Supp. 2d 1087, 1111 (N.D. Ill. 2004) (rejecting assertion of general control based on conclusory allegations regarding defendants' titles).

*Third,* Plaintiff fails to adequately allege that DiSomma had the ability to "control the specific transaction or activity that is alleged to give rise to liability." *Donohoe*, 30 F.3d at 912. While Plaintiff alleges that DiSomma "directed" the Jump Defendants' trading activity in May 2021, Compl. ¶¶ 359, 406, this trading activity is not a basis for liability, as discussed *supra*.[7] And the Complaint alleges nothing to demonstrate DiSomma's specific control over any other aspect of the alleged securities law violations. The Complaint does not allege that he had specific control of the purported misstatements or omissions that underlie the bulk of Plaintiff's complaint. The failure to allege anything regarding DiSomma's "role in the underlying misrepresentations or omissions" is fatal to Plaintiff's control person claims with respect to any alleged misrepresentations or omissions. *766347 Ontario Ltd. v. Zurich Cap. Markets, Inc.*, 249 F. Supp. 2d 974, 984 (N.D. Ill. 2003). The Complaint also fails to allege anything regarding DiSomma's specific control over TMSL's purported violations of Section 12 of the Securities Act. Accordingly, the control person claims (Counts 18 and 20) must be dismissed against DiSomma.

## **CONCLUSION**

For each of the foregoing reasons, DiSomma respectfully requests that the Court dismiss the Complaint's claims against him with prejudice.

---

[7] Even if this activity were a basis for a primary violation, Plaintiff could not establish control-person liability because Plaintiff has not plausibly alleged DiSomma's general control over the Jump Defendants.

Dated: March 23, 2026                    Respectfully submitted,

                                         **KKL LLP**

                                         /s/ *Paul M. Krieger*
                                         Paul M. Krieger (admitted *pro hac vice*)
                                         Rebecca S. Tinio (*pro hac vice* pending)
                                         Jonathan F. Bolz (admitted *pro hac vice*)
                                         Benjamin W. Perotin (*pro hac vice* pending)
                                         350 5th Avenue, Suite 7710
                                         New York, NY 10018
                                         (212) 390-9550
                                         Paul.Krieger@KKLllp.com
                                         Rebecca.Tinio@KKLllp.com
                                         Jonathan.Bolz@KKLllp.com
                                         Ben.Perotin@KKLllp.com


                                         *Counsel for Defendant William DiSomma*