# EXHIBIT 3

**UNITED STATES OF AMERICA**
**Before the**
**SECURITIES AND EXCHANGE COMMISSION**

**SECURITIES ACT OF 1933**
**Release No. 11349 / December 20, 2024**

**ADMINISTRATIVE PROCEEDING**
**File No. 3-22382**

**In the Matter of**

**TAI MO SHAN LIMITED**

**Respondent.**

**ORDER INSTITUTING CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTION 8A OF THE SECURITIES ACT OF 1933, MAKING FINDINGS, AND IMPOSING A CEASE-AND-DESIST ORDER**

## I.

The Securities and Exchange Commission ("Commission") deems it appropriate that cease-and-desist proceedings be, and hereby are, instituted pursuant to Section 8A of the Securities Act of 1933 ("Securities Act") against Tai Mo Shan Limited ("Tai Mo Shan" or "Respondent").

## II.

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over it and the subject matter of these proceedings, which are admitted, Respondent consents to the entry of this Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Making Findings, and Imposing a Cease-and-Desist Order ("Order"), as set forth below.

## III.

On the basis of this Order and Respondent's Offer, the Commission finds[1] that:

### Summary

1. From January 2021 to May 2022, Tai Mo Shan, directly or indirectly, offered and sold securities through the use of interstate commerce when no registration statement was in effect with respect to these offers and sales. Specifically, Tai Mo Shan acted as a statutory underwriter

[1] The findings herein are made pursuant to Respondent's Offer of Settlement and are not binding on any other person or entity in this or any other proceeding.

with respect to certain of its offers and sales of LUNA, a crypto asset issued by Terraform Labs PTE Ltd. ("Terraform") and offered and sold as a security. As a result of this conduct, Tai Mo Shan violated Sections 5(a) and (c) of the Securities Act.

2. Tai Mo Shan negligently engaged in a course of conduct in May 2021 that misled members of the investing public about the efficacy of Terraform's so-called "algorithmic stablecoin," UST, when it dropped in value from its $1 peg ("de-peg"). In light of prior statements by Terraform that its algorithmic mechanism would maintain UST's $1 peg, Tai Mo Shan acted negligently by trading UST in a manner that deceived the market that Terraform's algorithmic mechanism was working as intended to stabilize UST's price at $1. On May 23, 2021, Tai Mo Shan entered into an agreement with Terraform that incentivized Tai Mo Shan to purchase UST in exchange for Terraform "vesting" Tai Mo Shan's existing option to purchase LUNA at a discount to the then-prevailing market price of LUNA. On that day and subsequent days, Tai Mo Shan traded in a manner consistent with trying to restore the price of UST toward its $1 peg, including by purchasing more than $20 million worth of UST. Tai Mo Shan should have known that statements made by Terraform, prior to the de-peg, regarding how its arbitrage mechanism operated led reasonable investors to believe that swapping of UST and LUNA on Terraform's blockchain through the algorithmic arbitrage mechanism acted alone to automatically stabilize UST's price at $1, instead of the price being stabilized, at least in part, by large purchases of UST incentivized by Terraform. As a result of its negligent conduct, Tai Mo Shan violated Section 17(a)(3) of the Securities Act. A violation of Securities Act Section 17(a)(3) does not require scienter and may rest on a finding of negligence. *See Aaron v. SEC*, 446 U.S. 680, 701–02 (1980).

## Respondent

3. Tai Mo Shan Limited is a Cayman Islands corporation with its principal place of business in Grand Cayman, Cayman Islands. Tai Mo Shan is a wholly-owned subsidiary of Jump Crypto Holdings LLC. Tai Mo Shan has not been registered with the Commission in any capacity and has no known disciplinary history.

## Other Relevant Entity

4. Terraform is a private company registered and headquartered in Singapore. During the relevant period, Terraform had employees in the United States and a website accessible to U.S.-based investors. Terraform was found liable for an unregistered, fraudulent offering for its conduct leading up to the collapse of the Terraform ecosystem in May 2022. *SEC v. Terraform Labs Pte. Ltd.*, 1:23cv01346 (JSR), Dkt. 229 (April 5, 2024) (Jury Verdict); *Terraform*, 708 F. Supp. 3d 450, 474-75 (S.D.N.Y. 2023) (granting summary judgment that defendants offered and sold unregistered securities). Terraform filed for bankruptcy on January 21, 2024, and, on September 19, 2024, a bankruptcy court approved Terraform's plan to wind down its operations. Neither Terraform nor its offers or sales of securities were registered with the Commission in any capacity.

## Background

### A. Tai Mo Shan Participated in an Unregistered Securities Offering

5. Beginning in November 2019, Tai Mo Shan entered into agreements with Terraform, the issuer of LUNA, pursuant to which Tai Mo Shan would receive LUNA crypto assets being offered and sold as securities in exchange for providing services.[2] Rather than receive a fee for its services, under these agreements, Tai Mo Shan obtained a loan of LUNA from Terraform, through which Tai Mo Shan received a large number of LUNA for a period of time, typically two years, after which Tai Mo Shan had the option of returning the tokens at no cost or purchasing the loaned tokens at the price specified in the agreement.

6. Tai Mo Shan's services included activities typical of a statutory underwriter; that is, acting as a "conduit[] for the transfer of securities to the public." *Ackerberg v. Johnson*, 892 F.2d 1328, 1335 (8th Cir. 1989) (citations omitted). Specifically, Tai Mo Shan acquired LUNA, which was offered and sold as a security, from Terraform in or around the time it was first made available to the public. Tai Mo Shan entered into its first agreement to acquire LUNA on November 19, 2019, approximately seven months after LUNA's April 24, 2019, launch on the Terra blockchain, but prior to its wider public availability on crypto asset trading platforms.

7. Tai Mo Shan acquired certain LUNA crypto assets offered and sold as securities with a view toward distribution, as evidenced by the fact that Tai Mo Shan offered and resold LUNA as securities into the market on U.S.-based crypto asset trading platforms, shortly after acquiring the crypto assets from Terraform. From January 2021 to May 2022, Tai Mo Shan facilitated the distribution of LUNA offered and sold as securities by engaging in one-sided trading strategies on U.S.-based crypto asset trading platforms designed to liquidate its LUNA holdings acquired from Terraform by transferring those securities to the public and adding to LUNA's circulating supply. Tai Mo Shan profited from these transactions.

8. As a result of the conduct described above, Tai Mo Shan violated Sections 5(a) and 5(c) of the Securities Act because Tai Mo Shan directly or indirectly offered and sold crypto assets being offered and sold as securities on U.S.-based crypto asset trading platforms through the use of interstate commerce when no registration statement was in effect and no exemption from such registration applied.

## B. Tai Mo Shan's Negligent Course of Conduct During the 2021 UST De-Peg

9. In May 2021, Tai Mo Shan acted negligently by engaging in a course of conduct that caused investors to be deceived about the efficacy of Terraform's arbitrage mechanism, which the public believed—based on Terraform's prior statements—solely maintained UST's peg to the U.S. dollar.

10. UST was a crypto asset that Terraform designed to maintain a one-to-one peg to the U.S. dollar, by virtue of an algorithm coded into the Terraform blockchain that tied the value of UST to LUNA. The algorithm was intended to provide an arbitrage opportunity for traders to keep the price of UST pegged at $1. If, for example, the market price of UST dropped to $0.95, traders could buy UST at that price and exchange each UST for $1 worth of LUNA by "burning" the UST

[2] A federal district court held in December 2023 that LUNA and UST were offered and sold as securities. *SEC v. Terraform Labs Pte. Ltd.*, 708 F.Supp.3d 450, 472-74 (S.D.N.Y. 2023).

and "minting" the LUNA through the algorithm. In theory, this process would reduce the supply of UST and increase its price until it reached a dollar. While the value of UST was intended to stay at $1, the value of LUNA could, and did, increase as more investors engaged with the Terraform ecosystem.

11. On May 23, 2021, the price of UST began to sharply fall below its $1 peg. At that time, Tai Mo Shan and Terraform entered into a verbal agreement whereby Terraform agreed to fully vest the remaining portion of LUNA that was owed to Tai Mo Shan pursuant to its loan agreements with Terraform. Tai Mo Shan made purchases of UST on May 23, 2021 and subsequent days, in a manner that diverged from its historic trading pattern for UST by building a large long position in UST, accumulating more than $20 million worth of UST.

12. The investing public, which looks to centralized trading platforms for up-to-the-moment market data, would have seen additional demand for, and upward price movement in, UST, but would not have been aware of the extent of UST demand that was coming from Tai Mo Shan's purchases. In light of Terraform's public statements regarding how the arbitrage mechanism operated, Tai Mo Shan should have known that its trading would mislead the investing public to believe that Terraform's arbitrage mechanism, which was coded into Terraform's blockchain, alone raised the price of UST back up to $1. Tai Mo Shan should have known that purchasing UST and supporting its price in this manner misled the market about the stability of UST's peg and the effectiveness of Terraform's algorithm meant to maintain that stability.

13. Tai Mo Shan and Terraform's agreement was memorialized on July 21, 2021. Pursuant to this amended agreement, Tai Mo Shan began receiving monthly installments of unlocked LUNA in September 2021. Tai Mo Shan earned a profit of approximately $73,452,756 million from the sale of the additional LUNA that Tai Mo Shan received from the amended agreement.

14. As a result of the negligent conduct described above, Tai Mo Shan violated Section 17(a)(3) of the Securities Act, which makes it unlawful for any person in the offer or sale of a security to engage "in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

## Disgorgement and Prejudgment Interest

15. The disgorgement and prejudgment interest ordered in paragraph IV.B. is consistent with equitable principles and does not exceed Respondent's net profits from its violations, and will be distributed to harmed investors to the extent feasible. The Commission will hold funds paid pursuant to paragraph IV.B. in an account at the United States Treasury pending distribution. Upon approval of the distribution final accounting by the Commission, any amounts remaining that are infeasible to return to investors, and any amounts returned to the Commission in the future that are infeasible to return to investors, may be transferred to the general fund of the U.S. Treasury, subject to Section 21F(g)(3) of the Exchange Act.

## IV.

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondent Tai Mo Shan's Offer.

Accordingly, it is hereby ORDERED that**:**

A. Pursuant to Section 8A of the Securities Act, Respondent Tai Mo Shan cease and desist from committing or causing any violations and any future violations Sections 5(a), 5(c), and 17(a)(3) of the Securities Act.

B. Tai Mo Shan shall, within 14 days of the entry of this Order, pay disgorgement of $73,452,756 and prejudgment interest of $12,916,153 to the Securities and Exchange Commission. If timely payment is not made, additional interest shall accrue pursuant to SEC Rule of Practice 600.

C. Tai Mo Shan shall, within 14 days of the entry of this Order, pay a civil money penalty in the amount of $36,726,378 to the Securities and Exchange Commission. If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. §3717.

Payment must be made in one of the following ways:

(1) Tai Mo Shan may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2) Tai Mo Shan may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3) Tai Mo Shan may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying Tai Mo Shan as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Michael Brennan, Associate Director, Division of Enforcement, Securities and Exchange Commission, 100 F St., NE, Office 5110, Washington, DC 20549.

D. Pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002, a Fair Fund is created for the disgorgement, prejudgment interest, and penalties referenced in paragraphs IV.B and IV.C above. Amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Respondent agrees that in any Related Investor Action, it shall not argue that it is entitled to, nor shall it benefit by, offset or reduction of any award of compensatory damages by the amount of any part of Respondent's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Respondent agrees that it shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the Securities and Exchange Commission. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondent by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

By the Commission.

Vanessa A. Countryman
Secretary