**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

TODD R. SNYDER, AS PLAN ADMINISTRATOR FOR THE TERRAFORM LABS PTE. LTD., ET AL., EACH POST-EFFECTIVE DATE DEBTOR, AND THE WIND DOWN TRUST,

Plaintiff,

v.

JUMP TRADING, LLC, JUMP CRYPTO HOLDINGS, LLC, TAI MO SHAN LTD., JUMP FINANCIAL, LLC, J DIGITAL 6 CAYMAN LTD., JCDP-7QP LLC, JUMP OPERATIONS, LLC, JUMP CAPITAL, LLC, KANAV KARIYA, WILLIAM DISOMMA,

Defendants.

Case No. 25-cv-15414

**DEFENDANT DISOMMA'S MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

RELEVANT ALLEGATIONS ..... 2

ARGUMENT ..... 5

I. COUNT ONE IS BARRED BY TERRAFORM'S OWN WRONGDOING ..... 5

II. PLAINTIFF FAILS TO STATE A CLAIM AGAINST DISOMMA FOR SECURITIES FRAUD OR MANIPULATION (COUNTS 2–3, 5) ..... 5

A. Plaintiff Does Not Allege that DiSomma Made Any Misstatements. ..... 6

B. Plaintiff Fails to Raise a Strong Inference of Scienter with Respect to DiSomma ..... 7

III. PLAINTIFF FAILS TO STATE A CLAIM AGAINST DISOMMA ON ANY FRAUDULENT TRANSFER THEORY (COUNTS 9–12) ..... 10

IV. PLAINTIFF FAILS TO STATE A CLAIM AGAINST DISOMMA ON AN AIDING AND ABETTING THEORY (COUNT 1) ..... 11

V. PLAINTIFF FAILS TO STATE A CLAIM AGAINST DISOMMA BASED ON ILLINOIS STATE LAW (COUNTS 6–8) ..... 13

A. Plaintiff Fails to State a Claim for Common Law Fraud. ..... 14

B. Plaintiff Fails to State an Unjust Enrichment Claim. ..... 14

C. Plaintiff Fails to State a Claim Under the Illinois Consumer Fraud Act. ..... 15

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aliano v. Ferriss*,
988 N.E.2d 168 (Ill. App. Ct. 2013) .......... 15

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) .......... 9

*Bonded Fin. Servs., Inc. v. Eur. Am. Bank*,
838 F.2d 890 (7th Cir. 1988) .......... 11

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) .......... 8

*City of New Orleans Emps. Ret. Sys. v. PrivateBankcorp, Inc.*,
2011 WL 5374095 (N.D. Ill. Nov. 3, 2011) .......... 9

*Davidoff v. Farina*,
2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) .......... 9, 10

*Fulton Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.*,
675 F.3d 1047 (7th Cir. 2012) .......... 7

*Glickenhaus & Co. v. Household Int'l*,
787 F.3d 408 (7th Cir. 2015) .......... 6

*Gociman v. Loyola Univ. of Chi.*,
41 F.4th 873 (7th Cir. 2022) .......... 14

*Greer v. Advanced Equities, Inc.*,
683 F. Supp. 2d 761 (N.D. Ill. 2010) .......... 8

*Hefferman v. Bass*,
467 F.3d 596 (7th Cir. 2006) .......... 12

*I Am Athlete LLC v. IM EnMotive, LLC*,
2023 WL 8933592 (Del. Ch. Dec. 27, 2023) .......... 15

*In re Baxter Int'l Inc. Sec. Litig.*,
2021 WL 100457 (N.D. Ill. Jan. 12, 2021) .......... 9

*In re Canopy Fin., Inc.*,
2015 WL 3505010 (N.D. Ill. June 2, 2015) .......... 12

*In re Concepts Am., Inc.*,
2018 WL 1174900 (N.D. Ill. Mar. 1, 2018) .... 11

*In re Life Fund 5.1 LLC*,
2010 WL 2650024 (Bankr. N.D. Ill. June 30, 2010) .... 11

*In re Peregrine Fin. Grp., Inc.*,
589 B.R. 360 (Bankr. N.D. Ill. 2018) .... 11

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
564 U.S. 135 (2011) .... 6

*Knauer v. Jonathon Roberts Financial Group*,
348 F.3d 230 (7th Cir. 2003) .... 5

*Peterson v. Colony Am. Fin. Lender, LLC*,
634 B.R. 1010 (Bankr. N.D. Ill. 2021) .... 14

*Peterson v. Winston & Strawn, LLP*,
2012 WL 4892758 (N.D. Ill. Oct. 10, 2012) .... 5

*Praither v. Northbrook Bank & Tr. Co.*,
192 N.E.3d 747 (Ill. App. Ct. 2021) .... 13

*Premier Cap. Mgmt., LLC v. Cohen*,
2003 WL 21960357 (N.D. Ill. Aug. 15, 2003) .... 10

*Pugh v. Tribune Co.*,
521 F.3d 686 (7th Cir. 2008) .... 7

*S.E.C. v. Ustian*,
2019 WL 7486835 (N.D. Ill. Dec. 13, 2019) .... 7

*Saletech, LLC v. East Balt, Inc.*,
20 N.E.3d 796 (Ill. App. Ct. 2014) .... 14

*Santa Fe Indus., Inc. v. Green*,
430 U.S. 462 (1977) .... 7

*Shrock v. Meier*,
270 N.E.3d 871 (Ill. App. Ct. Dec. 2024) .... 14

*Sullivan & Long, Inc. v. Scattered Corp.*,
47 F.3d 857 (7th Cir. 1995) .... 7, 8, 9

*Symvria, Inc. v. Callen*,
2022 WL 60530 (N.D. Ill. Jan. 6, 2022) ........................................................................ 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .......................................................................................................... 7

*Vanzant v. Hill's Pet Nutrition, Inc.*,
934 F.3d 730 (7th Cir. 2019)........................................................................................... 15

**Statutes**

11 U.S.C. § 550(a) ................................................................................................... 10, 11

**INTRODUCTION**

In his Amended Complaint ("AC"), Plaintiff, standing in the shoes of Terraform Labs Pte. and Terraform Labs Limited (together, "Terraform"), acknowledges that *Terraform* and its co-founder, Do Kwon, are the parties responsible for the alleged fraud at issue in this case. Plaintiff nonetheless attempts to shift the blame to the Jump Defendants, Kanav Kariya, and William DiSomma. But Plaintiff fails to plausibly allege misconduct by DiSomma or any other Defendant. Nor should Terraform be allowed to recover for a fraud that it undisputedly committed.

The AC contains new details, but the fundamental allegations are the same, and as before, fatally flawed as to DiSomma. Plaintiff again relies on impermissible group pleading and conclusory allegations. What specific details the AC does provide paint a consistent picture of lawful conduct: Jump was a market participant and DiSomma believed in Terraform, its token, TerraUSD ("UST"), and the entire Terraform ecosystem; believed that the May 2021 UST depeg presented genuine, potentially profitable trading opportunities; and DiSomma acted based on that belief. Plaintiff's attempt to recast DiSomma's reasonable, good faith, and benign business strategies should be rejected and the claims against him dismissed with prejudice.

DiSomma incorporates and adopts the Statement of Facts and all arguments set forth in the Jump Defendants' Motion to Dismiss ("Jump Brief" or "Jump Br.") as if fully set forth herein, and writes separately to address the several additional failings of the AC that further justify the dismissal of claims against DiSomma specifically.

*First*, certain of Plaintiff's claims are barred by the doctrine of *in pari delicto*. This Court should not countenance Terraform seeking damages from DiSomma for a fraud that it committed.

*Second*, Plaintiff fails to state a claim against DiSomma under the Securities Exchange Act of 1934 ("Exchange Act") under either a misstatements or market manipulation theory. The former theory fails because DiSomma is not alleged to have made any material misstatement or

actionable omission. The latter theory fails because Plaintiff does not allege that DiSomma manipulated a security. And both fail to satisfy the Private Securities Litigation Reform Act's ("PSLRA") requirement to demonstrate a strong inference of scienter as to DiSomma. Furthermore, because Plaintiff fails to state a primary violation against any Jump Defendant, DiSomma cannot be held liable as a control person.

*Third*, Plaintiff fails to state a claim for fraudulent transfer under either federal or Illinois law because DiSomma is not alleged to have been the recipient or beneficiary of any transfer.

*Fourth*, Plaintiff fails to state a claim for aiding and abetting Kwon's purported breach of fiduciary duty because the AC does not adequately allege that DiSomma was aware of any such breach or that DiSomma provided Kwon with substantial assistance.

*Fifth*, Plaintiff fails to state a claim for unjust enrichment, fraudulent misrepresentation, or violations of the Illinois Consumer Fraud Act ("ICFA"). DiSomma is not adequately alleged to have personally received a benefit, to have made any fraudulent misstatement or omission, or to have performed any deceptive or manipulative acts.

Accordingly, for the reasons set forth in the Jump Brief and herein, all claims against DiSomma should be dismissed with prejudice under Rule 12(b)(6).

## <u>RELEVANT ALLEGATIONS</u>[1]

DiSomma adopts the summary of the allegations in the AC set forth in the Jump Brief, *see* Jump Br. at 3–6, and focuses here on the limited conduct specifically attributed to DiSomma. Plaintiff alleges that DiSomma is a co-founder of the Jump Trading Group and a managing member of Jump Financial, LLC and that DiSomma "ran the team" at Jump Crypto, while Kariya served

[1] As noted in the Jump Brief, the AC contains numerous false allegations and omits critical facts from the recounting of events. DiSomma accepts the well-pleaded allegations in the AC as true only for purposes of this motion.

as its public face. AC ¶ 42. DiSomma purportedly "approved Jump Crypto's deals, directed Jump Crypto's lead trader on trading strategies, and generally set the investment strategy for Jump Crypto." *Id.* Plaintiff alleges that each of the Jump Defendants were under the "common ownership of Defendant DiSomma and other owners" of the Jump Trading Group. *Id.* ¶ 305.

According to the AC, DiSomma was involved in or the subject of a handful of communications related to Terraform prior to the May 2021 depeg. Specifically, Plaintiff alleges that in September 2020, DiSomma wrote that he had asked Kariya for "a chunky deal with [Terraform] . . . and [Kariya] landed it," describing the arrangement as "a big notional deal," and adding that if "this project pops then we should eat." *Id.* ¶ 74. Plaintiff also alleges that DiSomma discussed the "Terra Deal" with Kariya and others during an internal Jump Trading call in September 2020. *Id.* ¶ 80. Plaintiff alleges that, on two occasions, Kariya mentioned DiSomma in communications with Kwon in the spring of 2021: once to tell Kwon that he would discuss a proposal with DiSomma and another time to convey an "ask" from DiSomma regarding Terraform "front[ing]" cryptocurrency to Jump. *Id.* ¶ 75. Plaintiff further alleges that DiSomma told another Jump Trading executive that he was "pretty sure that Kanav is now a confidant of Do." *Id.* ¶ 83.

Plaintiff's central allegations regarding DiSomma concern the May 2021 depeg. Plaintiff alleges that on May 23, 2021, during a company-wide meeting, Kariya told "DiSomma and . . . other Jump employees" that Kwon had agreed "to vest us." *Id.* ¶ 115. According to the AC, this meant that Kwon had "agree[d] to drop the vesting conditions" from "over 60 million LUNA [Terraform's native token] that [Jump] was contractually entitled to receive in the future." *Id.* ¶ 114. Plaintiff alleges that, after Kwon agreed to remove the vesting conditions, DiSomma "directed Jump's traders to adjust the parameters of Jump's trading models to make programmatic trades of UST designed specifically to restore UST's $1 peg." *Id.* ¶¶ 119–20. And "[f]ollowing

DiSomma's instructions," Jump's traders altered those models to be more aggressive and to accumulate additional UST throughout the day. *Id.* ¶¶ 121–22. DiSomma allegedly authorized traders to spend up to $100 million to support LUNA during the depeg. *Id.* ¶ 123.

According to the AC, in response to a statement by another Jump executive that "the prop[osal] [to vest Jump] to Do was well timed," DiSomma wrote, "[i]t's a good start." *Id.* ¶ 118. Plaintiff also alleges that DiSomma "briefed Jump Trading executives" about Jump's trading in May 2021, writing that Jump "[n]eeded to support UST directly on Kucoin (spun up a book stacker to sell KUCN.USDTUST, potentially 50MM)." *Id.* ¶ 130; *see also id.* ¶ 136 (alleging that DiSomma debriefed with Jump traders about "Jump's role in restoring UST's $1 peg"). Allegedly, DiSomma's reference to a "book stacker" referred to "placing a significant volume of orders on KuCoin to purchase UST." *Id.* ¶ 131. In addition, months later, DiSomma explained that "Terra's stablecoin (UST) should trade at 1:1 relative to USD, USDT, USDC, etc., and we try to keep it pegged there by making markets in a synthetic (TI internal) USTUSDT market." *Id.* ¶ 138.

Furthermore, Plaintiff alleges that DiSomma "sought out ways to shape public opinion to bolster the value of Jump's LUNA positions," including in connection with a CoinDesk reporter's outreach to Jump regarding media opportunities. *Id.* ¶ 162. When another Jump executive remarked that having "an indirect marketing arm" writing about topics Jump cared about "feels like a very interesting opportunity," DiSomma allegedly responded, "I spoke with peter and we going to work on nudges." *Id.* In advance of an "interview with CoinDesk," DiSomma allegedly remarked to another Jump executive that "this LUNA project is super hot right now" and that Jump "should get Kanav on with us as Kanav championed this thing the whole way." *Id.*[2]

During the May 2022 depeg, Plaintiff alleges that DiSomma "spearheaded . . . outreach

[2] The AC does not specify to whom DiSomma made this remark or provide any information about the CoinDesk interview, including who was interviewed or the subject matter of the interview.

efforts . . . [to] leaders at various other crypto-trading firms to seek bailout funding for Terra." *Id.* ¶ 202. Some of the firms DiSomma contacted were "aggressive, quant-focused trading firms" that, on information and belief, "used that information to trade against UST and LUNA[.]" *Id.* ¶ 203. Plaintiff also alleges that DiSomma invoked his Fifth Amendment rights when the Securities and Exchange Commission ("SEC") deposed him during its investigation into Terraform. *Id.* ¶ 222.

## ARGUMENT

DiSomma adopts the Jump Defendants' articulation of the legal standards governing motions to dismiss and claims sounding in fraud—which all of Plaintiff's claims do. *See* Jump Br. at 6. Plaintiff's limited allegations regarding DiSomma fall far short of these standards.

## I. COUNT 1 IS BARRED BY TERRAFORM'S OWN WRONGDOING

As set forth in the Jump Brief, the doctrine of *in pari delicto* requires the dismissal of Plaintiff's aiding and abetting claim against DiSomma. *See* Jump Br. at 63–65. Indeed, Plaintiff's allegations make clear that key aspects of the fraud, like the misrepresentations relating to Chai, were completely unknown to and in fact deceived DiSomma and Jump. This case is similar to *Knauer v. Jonathon Roberts Financial Group*, 348 F.3d 230 (7th Cir. 2003), in which the plaintiff-trustee represented a bankrupt company that had operated a "classic Ponzi scheme." *Id.* at 231. The trustee sued broker-dealers who solicited investments in the scheme. *Id.* The Seventh Circuit barred the trustee's claims because the defendants had little to do with the scheme, while the trustee stood in the shoes of those who were "deeply complicit" in it. *Id.* at 237–38; *see also, e.g.*, *Peterson v. Winston & Strawn, LLP*, 2012 WL 4892758, at *4–5 (N.D. Ill. Oct. 10, 2012).

## II. PLAINTIFF FAILS TO STATE A CLAIM AGAINST DISOMMA FOR SECURITIES FRAUD OR MANIPULATION (COUNTS 2–3, 5)

Plaintiff brings claims against DiSomma for contribution to Terraform's Rule 10b-5 liability (Count 2), a violation of Exchange Act Section 10(b) and SEC Rule 10b-5 on behalf of

the Crypto Loss Claimants[3] (Count 3), and a violation of Exchange Act Section 9, also on behalf of the Crypto Loss Claimants (Count 5). For the reasons described in the Jump Brief, Plaintiff's allegations fail in numerous regards. *See* Jump Br. at 22–48. Plaintiff's claims, whether based on a misstatements or a scheme liability theory, are also uniquely deficient as to DiSomma.

*A. Plaintiff Does Not Allege that DiSomma Made Any Misstatements.*

Plaintiff alleges that Defendants violated Section 10(b) and Rule 10b-5 through a series of "deceptive or manipulative acts," including several purportedly "false and misleading statements." AC ¶¶ 337, 340. As discussed in the Jump Brief, none of these statements was actually false or misleading. *See* Jump Br. at 28–33. But even if they were, they could not serve as the basis of a claim against DiSomma, because he is not alleged to have made any of the statements.

A person can only be liable under Section 10(b) based a misstatement theory if they were "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011). The AC identifies five alleged misstatements. AC ¶¶ 254–58. But Plaintiff does not allege with particularly that DiSomma uttered, authored, approved, or was even aware of any challenged statement. Indeed, the only allegations that connect DiSomma to public communications concern an unrelated potential interview with CoinDesk. Nor may Plaintiff attribute statements made by DiSomma's colleagues to DiSomma by virtue of his role as co-founder of Jump Trading Group. Because Plaintiff does not plead that DiSomma "*actually exercised* control over the content of [the statements] and whether and how they were communicated," his claims fail. *Glickenhaus & Co. v. Household Int'l*, 787 F.3d 408, 427 (7th

[3] The "Crypto Loss Claimants" are the individuals listed in Exhibit A to the AC who assigned claims to the Wind Down Trust established under the Second Amended Chapter 11 Plan of Liquidation approved in *In re Terraform Labs Pte. Ltd. et al.*, Case No. 24-10070 (Bankr. D. Del.).

Cir. 2015); *see also Fulton Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.*, 675 F.3d 1047, 1051 (7th Cir. 2012). Plaintiff also does not allege that DiSomma disseminated any of the alleged misstatements. *Cf. S.E.C. v. Ustian*, 2019 WL 7486835, at *40 (N.D. Ill. Dec. 13, 2019) (acknowledging that "disseminating a fraudulent statement amounts to deceptive conduct" under scheme liability). At bottom, Plaintiff attempts to make DiSomma responsible for statements made by others and offers no plausible allegations regarding his role in those statements. To the extent Counts 2–3 are based on alleged misstatements, they fail as to DiSomma.[4]

B. *Plaintiff Fails to Raise a Strong Inference of Scienter with Respect to DiSomma.*

Plaintiff's securities fraud and manipulation claims should also be dismissed because Plaintiff has not adequately "create[d] a strong inference of scienter with respect to each individual defendant." *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008). That requires an inference of "intent to deceive, manipulate, or defraud" that is at least as compelling as any opposing inference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (citation modified).

To establish the requisite manipulative intent, Plaintiff must adequately allege that DiSomma directed trading with the intent to create "artificially high or low prices, prices that do not reflect the underlying conditions of supply and demand." *Sullivan & Long, Inc. v. Scattered Corp.*, 47 F.3d 857, 862 (7th Cir. 1995); *see also Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977). The AC pays lip service to this requirement with the allegation that "Defendants did not believe that UST was worth $1." AC ¶ 341. But such threadbare, conclusory recitals cannot

[4] Plaintiff also fails to state a claim against DiSomma based on an omission theory. For the reasons explained in the Jump Brief, Plaintiff fails to allege that DiSomma had a duty to disclose any of the purportedly omitted information. *See* Jump Br. at 29–33; 41–42. And to the extent Plaintiff's scheme liability theory is predicated on any misstatements or omissions, it fails for the same reasons. *See, e.g.*, *KBC Asset Mgmt. NV v. Discover Fin. Servs.*, 2025 WL 976120, at *29 n.12 (N.D. Ill. Mar 31, 2025).

stand in for well-pleaded allegations. *See, e.g.*, *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *Greer v. Advanced Equities, Inc.*, 683 F. Supp. 2d 761, 775–76 (N.D. Ill. 2010). And the AC contains no non-conclusory allegations that might support this assertion. DiSomma is not alleged to have engaged in any conversations with Kwon or anyone at Terraform, let alone agreed to engage in a scheme to commit fraud. DiSomma is not alleged to have any inside knowledge regarding the design of the UST-LUNA algorithm that might have led him to believe the ecosystem was a sham or did not function as represented to the market. To the contrary, Plaintiff alleges that DiSomma expressed the *opposite* view, telling another Jump employee that "Terra's stablecoin (UST) ***should*** trade at 1:1 relative to USD, USDT, USDC, etc . . . ." AC ¶ 138. Maintaining the peg through market-making was exactly how the UST algorithm was supposed to work. *See id.* ¶ 56 ("[A]lgorithmic stablecoins rely on incentives and arbitrage to maintain the price peg.").

Plaintiff attempts to establish DiSomma's scienter by alleging that he instructed traders to engage in manual trading in May 2021. *See id.* ¶ 341. But even taking this allegation at face value, such trading is not indicative of fraudulent intent. If anything, this demonstrates DiSomma's good faith. Because of the unique nature of stablecoins, they are either worth $0 or $1. *See id.* ¶¶ 53–56 (describing stablecoins). If DiSomma truly believed that UST was worth $0 in the short or long term, it would not make any sense to continue accumulating UST at prices around $0.90.

Plaintiff also alleges that DiSomma intended to "restore the peg." *Id.* ¶¶ 337, 341. But it is not unlawful to knowingly or even intentionally affect the price of a security. To establish scienter, Plaintiff must plausibly allege that DiSomma intended to create "*artificially* high or low prices . . . that do not reflect the underlying conditions of supply and demand." *Sullivan & Long*, 47 F.3d at 862 (emphasis added). Plaintiff cannot transform ordinary market behavior of buying low and selling high into market manipulation by conclusorily labeling it "artificial." As the

Seventh Circuit explained in *Sullivan & Long*, profiting by buying an asset at a price below its true value and selling when that price rebounds "is not market manipulation. The opposite of a practice that creates artificial prices, it eliminates artificial price differences." *Id.*; *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007) (trading that "move[s] the prices of . . . securities toward their intrinsic values" is not manipulative).

Plaintiff's other scattershot allegations in support of scienter lack merit. Plaintiff alleges that "Defendants acted with scienter . . . [and] had the intent to create artificial prices that do not reflect the underlying conditions of supply and demand." AC ¶ 368; *see also id.* ¶ 341 (attributing several conclusory allegations to "Defendants"). This conclusory group pleading does not satisfy the PSLRA's heightened pleading requirements. *See City of New Orleans Emps. Ret. Sys. v. PrivateBankcorp, Inc.*, 2011 WL 5374095, at *8 (N.D. Ill. Nov. 3, 2011). Nor can Plaintiff allege that DiSomma had scienter merely by virtue of his role as co-founder of Jump Trading Group. *See In re Baxter Int'l Inc. Sec. Litig.*, 2021 WL 100457, at *12 (N.D. Ill. Jan. 12, 2021) ("a pleading of scienter may not rest on the inference that defendants must have been aware of the [fraud] based on their positions within the company" (quotation modified)).

Many of Plaintiff's allegations actually weigh against a finding of scienter as to DiSomma. Plaintiff puts significant emphasis on the allegation that in May 2021, the Jump Defendants successfully negotiated the removal of certain vesting conditions from their contract with Terraform. AC ¶¶ 114–15. In effect, this meant the Jump Defendants agreed to receive 1.2 million LUNA each month through August 2025. *Id.* ¶ 150. If DiSomma and the Jump Defendants thought that UST was a sham, this decision to increase their exposure to LUNA would make no sense. *See, e.g.*, *Davidoff v. Farina*, 2005 WL 2030501, at *11 n.19 (S.D.N.Y. Aug. 22, 2005) (there could be no inference of scienter because "it would have made no economic sense for

defendants to invest literally billions of dollars in a venture that they knew would fail"). That Jump allegedly negotiated to ensure the receipt of over 60 million LUNA over the course of more than four years is evidence of DiSomma (and Jump's) good-faith long term belief in the Terraform ecosystem. *See* Jump Br. at 43–44; AC ¶ 150. Similarly, the fact that DiSomma allegedly made efforts to *assist* Terraform in May 2022 by conducting outreach to other firms also demonstrates his belief in the ecosystem. *Id.* ¶ 202. There is no well-pleaded allegation that DiSomma intended to do anything other than connect potentially interested parties with an investment opportunity.

In sum, Plaintiff's allegations fall far short of establishing a strong inference of scienter with respect to DiSomma, which is an independent basis for dismissing Counts 2, 3, and 5 against him. And given Plaintiff's failure to adequately allege a primary violation of the Exchange Act, his control person claim against DiSomma is also deficient. *See, e.g.*, *Premier Cap. Mgmt., LLC v. Cohen*, 2003 WL 21960357, at *9 (N.D. Ill. Aug. 15, 2003). Thus, for the reasons set above and in the Jump Brief, the Court should dismiss Counts 2, 3, 4, and 5 as to DiSomma.

## III. PLAINTIFF FAILS TO STATE A CLAIM AGAINST DISOMMA ON ANY FRAUDULENT TRANSFER THEORY (COUNTS 9–12)

The Court should also dismiss Plaintiff's fraudulent transfer claims against DiSomma. Counts 9 through 12 allege that various transactions between certain Jump Defendants, Terraform, and the Luna Foundation Guard ("LFG") were fraudulent transfers in violation of federal and state law. Plaintiff brings these claims on behalf of the Crypto Loss Claimants and Terraform. All of these claims fail for the reasons articulated in Jump's Brief. *See* Jump Br. at 48–61. These claims are also uniquely and additionally flawed with respect to DiSomma.

A trustee can only recover the property transferred or its value from the "initial transferee of such transfer or the entity for whose benefit such transfer was made or [] any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). Because Plaintiff is alleging

fraud, he must meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See In re Life Fund 5.1 LLC*, 2010 WL 2650024, at *3 (Bankr. N.D. Ill. June 30, 2010).

The AC fails to adequately allege that DiSomma was a transferee of any funds. To be a "transferee," DiSomma must have received "dominion over the money or other asset." *Bonded Fin. Servs., Inc. v. Eur. Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988). Plaintiff does not allege DiSomma received dominion over any transferred funds. Plaintiff alleges that transfers were made to "Defendants," *see, e.g.*, AC ¶ 406, but not to DiSomma personally. *See, e.g.*, *id.* ¶ 299 (Bitcoins were transferred "from LFG to a specific Jump wallet" and "Jump received the Bitcoin in the identified wallet"); *id.* ¶ 300 (transfers were made to "Jump"). Indeed, in fifty-two paragraphs of allegations regarding the purported fraudulent transfers, DiSomma is not mentioned a single time. *Id.* ¶¶ 401–453.

The AC also does not allege that DiSomma was "the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a). The Seventh Circuit has interpreted this term to mean a party who "receives the benefit [of the transfer] but not the money." *Bonded Fin. Servs.*, 838 F.2d at 895. That person must "benefit from the transfer directly, not indirectly, as soon as the transfer is made." *In re Peregrine Fin. Grp., Inc.*, 589 B.R. 360, 380 (Bankr. N.D. Ill. 2018). Speculating that DiSomma might ultimately "be able to use the funds held by [initial transferee] to his own benefit" would be insufficient. *Id.* at 380. But Plaintiff does not even make that allegation.

The fact that DiSomma was neither a transferee nor the purported beneficiary of the transfers is fatal to Plaintiff's claims against him individually in Counts 9 through 12. *See In re Concepts Am., Inc.*, 2018 WL 1174900, at *12 (N.D. Ill. Mar. 1, 2018); 11 U.S.C. § 550(a).

## IV. PLAINTIFF FAILS TO STATE A CLAIM AGAINST DISOMMA ON AN AIDING AND ABETTING THEORY (COUNT 1)

The Court should also dismiss Count 1, which alleges that Defendants aided and abetted

Kwon's breach of fiduciary duty. Plaintiff must adequately allege "(1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation." *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (applying Illinois law).[5] Because this claim sounds in fraud, it is subject to Rule 9(b). *Id*. at 601–02 (applying Rule 9(b) to a claim of aiding and abetting breach of fiduciary duty turning on alleged fraud). But Plaintiff's conclusory allegations fail to satisfy even Rule 8. *See* Jump Br. at 62–65.

Even assuming that Kwon breached a duty, Plaintiff must plausibly allege that DiSomma had "actual knowledge," and not just that there may have been "red flags" or "indicia of suspicious activity." *In re Canopy Fin., Inc.*, 2015 WL 3505010, at *7 (N.D. Ill. June 2, 2015). Plaintiff fails to meet this high bar. According to the AC, "Defendants' actual knowledge" came from two sources: their "knowledge of and direct involvement in virtually every major decision made by Kwon in the operation of Terraform and LFG from May 2021 through May 2022" and "non-public information about the stability of the Terra Ecosystem." AC ¶ 316. These vague, group-pled allegations do not show actual knowledge that Kwon breached a duty, particularly as to DiSomma.

First, Plaintiff does not allege *any* communication between DiSomma and Kwon, let alone pervasive enough contact to plausibly allege that DiSomma would have personal knowledge of and direct involvement in nearly *all* of Kwon's business decisions in his management of companies that were entirely separate from the Jump Defendants. Second, Plaintiff does not explain how

[5] Plaintiff alleges that "Kwon owed fiduciary duties to Terraform," but does not specify the source of law for those duties. AC ¶ 312. Plaintiff does not even allege where any of the relevant entities were incorporated. Furthermore, it is not clear whether Kwon is alleged to have breached his fiduciary duties with respect to Terraform, LFG, or both. *See id.* (describing Kwon's fiduciary duties to Terraform); *id.* ¶ 315 (alleging Kwon breached his fiduciary duties by "misappropriat[ing] *LFG* funds" (emphasis added)). This lack of clarity underscores the conclusory nature of Plaintiff's claim. But aside from these problems, Plaintiff's claim for aiding and abetting liability falls far short as to DiSomma.

DiSomma's purported "non-public information about the stability of the Terra Ecosystem," *id.*, would have made him aware Kwon was breaching his fiduciary duty towards his own company. *See Praither v. Northbrook Bank & Tr. Co.*, 192 N.E.3d 747, 760–61 (Ill. App. Ct. 2021) (affirming dismissal of aiding and abetting fiduciary duty claim where plaintiffs did not sufficiently allege that defendant had actual knowledge of breach). Indeed, the decision to continue investing in Terraform's tokens, as alleged in the AC, is inconsistent with the allegation that DiSomma was aware Kwon was engaged in misconduct. *See supra* at 9–10. Conversely, DiSomma's direction to traders to acquire more UST in May 2021 while its price was declining is consistent with a trader who had faith in the token and its surrounding ecosystem.

Finally, even if Plaintiff had adequately alleged that Kwon breached a duty and DiSomma had actual knowledge of the breach, Count 1 fails because Plaintiff does not allege that DiSomma personally provided substantial aid to Kwon. Plaintiff devotes a single paragraph to alleging how Defendants substantially assisted Kwon's breaches of fiduciary duty. *See* AC ¶ 315. Each of these conclusory, group-pled allegations should be rejected for the reasons articulated in the Jump Brief. Jump Br. at 62–64. Even more crucially, none of these allegations mention DiSomma. *Id.* ¶ 315. For these reasons and the reasons set forth in the Jump Brief, the Court should dismiss Count 1 as to DiSomma. *See, e.g.*, *Symvria, Inc. v. Callen*, 2022 WL 60530, at *18 (N.D. Ill. Jan. 6, 2022).

## V. PLAINTIFF FAILS TO STATE A CLAIM AGAINST DISOMMA BASED ON ILLINOIS STATE LAW (COUNTS 6–8)

Plaintiff's remaining state law claims against DiSomma fare no better. As the Jump Brief explains, each of these claims is fatally flawed, *see* Jump Br. at 16–19; 61–62, and they are uniquely deficient as to DiSomma.

*A. Plaintiff Fails to State a Claim for Common Law Fraud.*

To state a claim for fraud under Illinois law, Plaintiff must allege "(1) a false statement of fact, (2) knowingly made by the defendant, (3) made with the intent to induce plaintiff to act, (4) the plaintiff's justifiable reliance on the false statement, (5) and that such reliance caused plaintiff to suffer damages." *Shrock v. Meier*, 270 N.E.3d 871, 883 (Ill. App. Ct. Dec. 2024) (citation modified); *see also* AC ¶ 375. This claim (Count 6) fails for the reasons stated in the Jump Brief, which apply equally to DiSomma, and for the reasons articulated above as to Plaintiff's securities fraud claim. *See supra* at 5–10; *see also* Jump Br. at 61–62.

*B. Plaintiff Fails to State an Unjust Enrichment Claim.*

"To state a claim for unjust enrichment under Illinois law, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 886 (7th Cir. 2022) (citation omitted). The AC does not allege that DiSomma personally received or retained any benefit. This dooms Count 8 against DiSomma individually. *See Saletech, LLC v. East Balt, Inc.*, 20 N.E.3d 796, 808 (Ill. App. Ct. 2014) (dismissing unjust enrichment claim when there were no allegations defendant obtained a benefit from plaintiff).

Nor can Plaintiff pierce the corporate veil and hold DiSomma individually liable for benefits that the Jump Defendants purportedly received. First, as explained in the Jump Brief, Plaintiff has not stated a claim as to any Jump Defendant. *See* Jump Br. at 65. Second, to pierce the corporate veil, Plaintiff "must plead facts supporting an inference that the corporation, through its alter-ego, is a sham entity and exists for no purpose other than to defraud investors and creditors." *Peterson v. Colony Am. Fin. Lender, LLC*, 634 B.R. 1010, 1025 (Bankr. N.D. Ill. 2021)

(citation modified) (applying Delaware law); *see also* Jump Br. at 8–10. Plaintiff does not make such an allegation with respect to DiSomma. Plaintiff merely alleges that "[o]n information and belief, the Jump Entity Defendants commingled funds and failed to observe corporate separateness." AC ¶ 41. Such pleading is insufficient to pierce the corporate veil, *see, e.g.*, *I Am Athlete LLC v. IM EnMotive,* LLC, 2023 WL 8933592, at *5 (Del. Ch. Dec. 27, 2023) (collecting cases); *see also* Jump Br. at 8–10. Furthermore, Plaintiff does not even allege that DiSomma directly owns any of the Jump Defendants. Thus, to pierce the veil as to DiSomma, the Court would need to disregard legal entities that Plaintiff has not even identified.

*C. Plaintiff Fails to State a Claim Under the Illinois Consumer Fraud Act.*

To state a claim for a violation of the ICFA, Plaintiff must adequately allege "the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019). As stated in the Jump Brief, Count 7 fails for several reasons, which apply equally to DiSomma. Jump Br. at 16–19; 61–62. Furthermore, Plaintiff does not allege that DiSomma committed any deceptive or unfair act. DiSomma's only alleged role with the purported scheme was his involvement in the May 2021 trading. *See* AC ¶ 389. But for the reasons explained above, that trading was not manipulative or deceptive. *See supra* at 7–10. *See, e.g.*, *Aliano v. Ferriss*, 988 N.E.2d 168, 177 (Ill. App. Ct. 2013) (affirming dismissal of ICFA claim where plaintiff failed to adequately allege an unfair practice or deceptive conduct).

## CONCLUSION

For each of the foregoing reasons, DiSomma respectfully requests that the Court dismiss the AC's claims against him with prejudice.

Dated: August 19, 2026

Respectfully submitted,

**KKL LLP**

/s/ *Paul M. Krieger*
Paul M. Krieger (admitted *pro hac vice*)
Rebecca S. Tinio (admitted *pro hac vice*)
Jonathan F. Bolz (admitted *pro hac vice*)
Benjamin W. Perotin (admitted *pro hac vice*)
350 5th Avenue, Suite 7710
New York, NY 10018
(212) 390-9550
Paul.Krieger@KKLllp.com
Rebecca.Tinio@KKLllp.com
Jonathan.Bolz@KKLllp.com
Ben.Perotin@KKLllp.com

*Counsel for Defendant William DiSomma*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2026, I electronically filed the foregoing document with the Court via CM/ECF, which will automatically send notice and a copy of same to counsel of record via email.

*/s/Paul M. Krieger*
Paul M. Krieger