# EXHIBIT 21

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| TERRAFORM LABS PTE. LTD., *et al.*,[1] | ) | Case No. 24–10070 (BLS) |
| Debtors. | ) | (Jointly Administered) |

**GLOBAL NOTES AND**
**STATEMENT OF LIMITATIONS, METHODOLOGY,**
**AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES**
**OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

The Schedules of Assets and Liabilities (collectively, the "Schedules") and the Statements of Financial Affairs (collectively, the "Statements," and, together with the Schedules, the "Schedules and Statements"), filed by Terraform Labs Pte. Ltd., ("TFL") and Terraform Labs Limited ("TLL"), as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), were prepared, pursuant to section 521 of title 11 of the United States Code (the "Bankruptcy Code"), rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 1007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), by management of the Debtors, with the assistance of the Debtors' advisors. The Schedules and Statements are unaudited.

On June 12, 2024, TFL finalized settlement discussions with the SEC, which culminated in a consent agreement signed by TFL (the "Consent"), and the *Final Judgment Against Terraform Labs Pte. Ltd. and Do Hyeong Kwon* (No. 1:23-cv-1346 (JSR); Docket No. 271) (the "Final Judgment") approved by District Court Judge Jed S. Rakoff. The Consent and Final Judgment (together, the "SEC Settlement") contemplate, among other things, a chapter 11 plan of liquidation, a wind down of the Debtors' business operations, and sales of TFL's assets. The Schedules and Statements included herein do not reflect all of the terms and stipulations agreed upon under the SEC Settlement.

These *Global Notes and Statement of Limitations, Methodology, and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* (the "Global Notes") are incorporated by reference in, and comprise an integral part of, the Schedules and

[1] The Debtors in these chapter 11 cases are: Terraform Labs Pte. Ltd; Terraform Labs Limited. The Debtors' principal offices are located at 1 Wallich Street, #37-01, Guoco Tower, Singapore 078881..

Case 24-10070-BLS Doc 514 Filed 09/26/24 Page 2 of 43

Statements, and should be referred to and considered in connection with any review of the Schedules and Statements.[2]

The Schedules and Statements filed for TLL have been signed by Chris Amani, Head of Company Operations (effectively the Chief Executive Officer) of TFL, on behalf of TFL, in TFL's capacity as the Director of TLL. Mr. Amani is an authorized signatory for TFL and TFL is authorized to act on behalf of TLL. In reviewing and signing the Schedules and Statements, Mr. Amani necessarily relied upon the efforts, statements, and representations of the Debtors' employees and the Debtors' other personnel and advisors. Mr. Amani has not (and could not have) personally verified the accuracy of each such statement and representation, including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and respective creditor addresses.

As outlined in the *Declaration of Chris Amani in Support of the Debtors' Chapter 11 Petition and First Day Relief* [Docket No. 18] (as amended or supplemented, the "First Day Declaration"),[3] Mr. Amani was appointed as a Director and Head of Company Operations of TFL on May 27, 2023. Mr. Amani does not hold any positions, including any officer, director or similar positions with TLL. As such, Mr. Amani may not be aware of certain transactions and is unable to verify their accuracy.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have made every reasonable effort to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements. As a result, inadvertent errors or omissions may exist. For the avoidance of doubt, the Debtors reserve all of their rights to amend and supplement the Schedules and Statements as may be necessary or appropriate.

The Debtors and their agents, attorneys, and advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein or the Schedules and Statements. As outlined above, although good faith efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist. In no event shall the Debtors or their agents, attorneys, and advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their agents, attorneys, and advisors are advised of the possibility of

---

2 These Global Notes supplement and are in addition to any specific notes contained in the Debtors' Schedules or Statements.

3 Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration or the *Motion of Debtor for Entry of Interim and Final Orders (I) Authorizing Debtor to Use Treasury Management System, (II) Authorizing Continuation of Intracompany and Intercompany Transactions, (III) Extending Time to Comply with Requirements of 11 U.S.C. § 345(b), and (IV) Granting Related Relief* [Docket No. 21] (the "Treasury Management Motion"), as applicable.

such damages. The Debtors and their agents, attorneys, and advisors expressly do not undertake any obligation to update, modify, revise, or recategorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or recategorized, except as required by applicable law or order of the Bankruptcy Court.

Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.

## Global Notes and Overview of Methodology

1. **Description of the Cases**. On January 21, 2024 (the "TFL Petition Date"), TFL filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court). On February 29, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [Docket No. 101]. Subsequently, on July 1, 2024 (the "TLL Petition Date" and together with the TFL Petition Date, the "Petition Date"), TLL filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as Debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

2. **Global Notes Control**. These Global Notes pertain to and comprise an integral part of the Debtors' Schedules and Statements and should be referenced in connection with any review thereof. In the event that the Schedules and Statements differ from the Global Notes, the Global Notes shall control.

3. **"As Of" Information Date**. To the best of the Debtors' knowledge and except as otherwise noted herein, the asset information provided herein represents the asset and liability data of the Debtors as of the applicable Petition Date. Amounts ultimately realized may vary from net book value (or the applicable value ascribed herein) and such variance may be material. Accordingly, the Debtors reserve all of their rights to amend or adjust the value of each asset set forth herein. In addition, the amounts showing for total liabilities exclude items identified as "unknown," "disputed," "contingent," or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements.

4. **Reservations and Limitations**. Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist. The Debtors reserve all rights to amend and supplement the Schedules and Statements as may be necessary or appropriate. Nothing contained in the Schedules and Statements constitutes a waiver of any of the Debtors' rights or an admission of any kind with respect to the chapter 11 cases, including, but not limited to, any rights or claims of the Debtors against any third party or issues involving substantive consolidation, equitable subordination, or defenses or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code or any other relevant applicable bankruptcy or non-bankruptcy laws to recover assets or

avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

a. **No Admission**. Nothing contained in the Schedules and Statements is intended as, or should be construed as, an admission or stipulation of the validity of any claim against the Debtors, any assertion made therein or herein, or a waiver of the Debtors' rights to dispute any claim or assert any cause of action or defense against any party.

b. **Recharacterization**. The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements. Nonetheless, the Debtors may have improperly characterized, classified, categorized, designated or omitted certain items due to the complexity of the Debtors' business. Accordingly, the Debtors reserve all rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the applicable Petition Date and remain executory and unexpired postpetition.

c. **Classifications**. Listing (i) a claim on Schedule E/F as "priority" or "unsecured," or (ii) a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract, or setoff such claims, as appropriate, or that such claim is not subject to objection.

d. **Claims Description**. Any failure to designate a claim in the Schedules and Statements as "contingent," "unliquidated," or "disputed" does not constitute an admission by the Debtors that such claim or amount is not "contingent," "unliquidated," or "disputed." The Debtors reserve all of their rights to dispute, or to assert offsets or defenses to, any claim reflected on their Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, or classification, or to otherwise subsequently designate any claim as "contingent," "unliquidated," or "disputed." Moreover, the Debtors reserve all of their rights to amend their Schedules and Statements as necessary and appropriate, including but not limited to, with respect to claim descriptions and designations. Listing a claim does not constitute an admission of liability by the Debtors against whom the claim is listed.

e. **Estimates and Assumptions**. To prepare and file the Schedules and Statements in accordance with the deadlines in the chapter 11 cases, management was required to make reasonable estimates and assumptions that affected the reported amounts of these assets and liabilities. The Debtors reserve all rights to amend the reported amounts of assets and liabilities to reflect changes in those estimates or assumptions.

f. **Causes of Action**. Despite their reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and

actions under other relevant bankruptcy and non-bankruptcy laws to recover assets. The Debtors reserve all of their rights with respect to any cause of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment, and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the applicable Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (collectively, "Causes of Action") they may have, and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any claims or Causes of Action or in any way prejudice or impair the assertion of such claims or Causes of Action.

g. **Property Rights**. Exclusion of certain property, including intellectual property, shall not be construed to be an admission that such property rights have been abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain property shall not be construed to be an admission that such property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. The Debtors have made every effort to only identify the Debtors' property on the Schedules and Statements, however, in some instances, property listed may, in fact, be owned by a non-Debtor. Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all property rights.

h. **Insiders**. In the circumstance where the Schedules and Statements require information regarding "insiders," the Debtors have included information with respect to the individuals and entities who the Debtors believe would be included in the definition of "insider" set forth in section 101(31) of the Bankruptcy Code during the relevant time periods. Such individuals may no longer serve in such capacities.

An individual or entity is designated as an insider for the purposes of the Schedules and Statements if such individual or entity, based on the totality of the circumstances, has at least a controlling interest in, or exercises sufficient authority over, the Debtors such that they dictate corporate policy and/or the disposition of corporate assets.

The listing or omission of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed as an admission of any fact, right, claim, or defense, and all such rights, claims, and defenses are hereby expressly reserved. Parties listed as "insiders" have been included for informational purposes only, and such information may not be used for: (i) the purposes of determining (a) control of the Debtors; (b) the extent of which any party exercised management responsibilities or functions; (c) corporate decision making authority over the Debtors; or (d) whether the Debtors or any such insider could successfully

argue that such party is not an "insider" under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability; or (e) for any other purpose.

i. **Personally Identifiable Information**. The addresses of individuals have been redacted in the Schedules and Statements in accordance with the *Order (I) Authorizing The Debtor To File Under Seal (A) Portions Of The Creditor Matrix And (B) The Personal Information In Other And Future Filings, And (II) Granting Related Relief* [Docket No. 11] (the "Creditor Matrix Order").

j. **Digital Assets**. Certain of the Debtors' assets are digital assets, or digital tokens, based on a publicly accessible blockchain. Digital assets are unique assets. Certain laws and regulations that may be applicable to digital assets do not contemplate or address unique issues associated with the digital asset economy, are subject to significant uncertainty, and vary widely across U.S. federal, state, and local and international jurisdictions. The Debtors make no representations or admissions concerning the status of digital assets as a "security" under any state, federal, or local domestic or international statute, including United States federal securities laws, and reserve all rights to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard.

**Ownership of Digital Assets**. The Debtors have been diligently reviewing their books and records with the assistance of their advisors to trace the ownership of certain of the Debtors' digital assets, and to determine the quantum of intercompany claims that exist between the Debtors. TLL was an entity registered in the British Virgin Islands ("BVI"), which was struck off the BVI Register of Companies and dissolved as of July 18, 2023. TLL was restored on June 25, 2024 in accordance with the laws of the BVI. As reflected on the Schedules and Statements, the Debtors believe that TLL has only de minimis liabilities.

Based on the Debtors' review of the digital assets, the Schedules reflect the Debtors' reasonable efforts to reflect asset ownership of the digital assets by either TFL or TLL. The Debtors reserve all rights to change this determination if additional information is uncovered. To the extent TFL continues to use digital assets that may ultimately be determined to constitute assets of TLL, consistent with prepetition practice, it will record intercompany transactions and balances between TFL and TLL on its books.

In 2023, TFL was granted 150 Luna tokens from the Luna Community ("TFL Community Grant") of which 125M LUNA tokens were earmarked for TFL's treasury, as well as strategic partnerships and ecosystem project incentives and 25M Luna tokens earmarked for liquidity pools to be paired with TFL's non-Luna Treasury. The 125M Luna tokens vests linearly over five years with a one-year cliff, starting January 2024. Token vesting is enforced programmatically via a smart contract. The 25M Luna tokens were not subject to any vesting terms allowing funds to be deployed by Terra into the Liquidity Pools. Per the TFL Community Grant, these LUNA were not to be sold under any circumstances.

In April 2024, TFL decided to unwind its positions in three Liquidity Pools and ultimately converted the majority of Non-Luna tokens to BTC.

The Bridge Protocol and bridge wallets allow users of Terra related tokens to use the wrapped versions of those tokens on the Harmony One network, the BNB Smart Chain Network, and the Ethereum Network instead of on the native Terra Blockchain. Users of the Bridge Protocol can send their Terra related tokens to the wallet corresponding to the destination chain to which they wished to bridge and redeem the tokens automatically upon request at any time. As disclosed in TFL's monthly operating reports throughout its chapter 11 case, TFL has not and does not use or include any of these tokens in its treasury.

Prepetition, in July 2023, TFL informed the Terra community that by December 2023, it would cease operating the Harmony One Bridge and migrate assets associated with the Binance Smart Chain Network, and the Ethereum Network to a bridge protocol hosted by a third party. Although TFL itself effectively stopped maintaining the Bridge Protocols after December 2023, users potentially were able to still redeem their tokens from the Bridge Wallets while the "bot" (the "Shuttle Bot") that processed redemption requests was still being operated by a former TFL employee. The Shuttle Bot would facilitate redemption of Terra Classic Tokens by monitoring each of the corresponding networks for instructions to "burn" the equivalent bridged assets that the user received when they deposited the respective Terra Classic Tokens. Upon observing the burn instructions, the Shuttle Bot initiates a redemption of Terra Classic Tokens to the user who initiated the burn request for the bridged assets. Historically, users could initiate the burning of the bridged assets and redemption of the corresponding Terra Classic Tokens through a TFL-operated website with a simple user interface. However, since December 2023 the Bridge Protocols have been effectively defunct.

To ensure that users have an opportunity to redeem any bridged assets in a secure and effective manner, the Debtors seeks authority to take the following steps. First, to enhance security and reduce third-party access to the bridge wallets, the Debtors would move the assets in each of the Bridge Wallets to three new corresponding wallets. Second, once the assets are transferred to the new wallets, the Debtors would create a new Shuttle Bot and reopen a new, simplified user interface for the Bridge Protocols through which users could request to redeem their Terra Classic tokens. No other activities will be permitted through the user interface. Finally, the Debtors would shut down the historical user interface, and would create a new website that properly limits redemptions from the three remaining networks to Terra Classic using the Shuttle Bot.

On July 17, 2024, the Court entered the *Order Approving Implementation Steps in Compliance with TFL Consent and Final Judgment in SEC Enforcement Action* authorized the Debtor to effectuate the wind-down plan for the bridge wallets [Docket 479].

As per the SEC Settlement, TFL agreed to burn or destroy all tokens native to the Terra blockchain that are within TFL's possession or control, including but not limited to UST, MIR, LUNA, wLUNA, ANC, KRTC and LUNA 2.0 private keys in TFL's

possession to wallets or blockchains addresses holding TFL's digital assets. As of the date hereof, these digital assets have not been burned. In addition, as part of the wind-down procedures approved by the Court (Docket No. 479), TFL is authorized, but not directed to facilitate the redemption of the tokens within the bridge wallets.

k. **Moon Rabbit**. For vendors and service providers that did not accept digital assets for payment, in 2023, the Debtors established a system whereby they transferred the necessary digital assets to pay specific vendor invoices to a designated third-party service provider, Moon Rabbit Labs, Inc. ("Moon Rabbit"). Moon Rabbit processed the digital assets by the way of two over-the-counter exchanges (the "OTCs"). The OTCs would exchange digital assets into local government-issued currency (e.g., fiat currency), such as U.S. dollars or Singapore dollars, and would remit payment of such amounts to the relevant vendor. The OTCs, in effect, acted as a digital asset converter for the Debtors, exchanging one form of currency (digital) for another (fiat). Moon Rabbit acted as the intermediary to source the OTCs pursuant to the terms of a Service Agreement dated November 4, 2022 (the "Service Agreement"). The OTCs charged a 3% service fee for each transfer and conversion they complete on behalf of the Moon Rabbit, which was in turn passed onto the Debtors. Moon Rabbit did not accept any percentage of the service fee. Instead, the Debtors paid Moon Rabbit a monthly flat rate for Moon Rabbit to provide accounting services to the Debtors.

Moon Rabbit also facilitated payments to the Debtors' third-party payroll provider and employment agency, Deel, Inc. ("Deel"), a human capital management firm. The Debtors transferred digital assets from either the Bitcoin Wallet or Ops Multisig Wallets, usually in Bitcoin or USDC to Moon Rabbit. Moon Rabbit would then send the digital assets to the OTCs, which would convert the digital assets into fiat currency and transfer it to Deel to pay Deel's invoices. Deel would then transfer the fiat currency to the Debtors' employees and contractors to pay wages and benefits.

As it relates to SOFA Question 3, the Debtors are listing certain payments to Third Parties paid out in Fiat which were facilitated via the Moon Rabbit transactions described above.

l. **Dentons Advance Payment**. Prior to the TFL Petition Date, the Debtors directly transferred digital assets to Dentons to fund an advance payment to Dentons (the "Dentons Advance Payment"), which is advising and representing the Debtors in ongoing litigation and investigations, including an enforcement action, entitled *SEC v. Terraform Labs Pte. Ltd., et al.*, Case No. 1:23-cv01346-JSR (S.D.N.Y.), filed by the Securities and Exchange Commission (the "SEC Enforcement Action"). Upon receipt of the Dentons Advance Payment, Dentons converted it from digital assets to fiat currency to hold in a fee advance. This fee advance was intended to fund professional fees for the retained professionals involved in the Debtors' chapter 11 cases. $48 million of the Dentons Advance Payment was returned to the Debtors by Dentons in March 2024, pursuant to the *Order Granting Application of Debtor for Entry of an Order Authorizing the Retention and Employment of Dentons US LLP as Special Counsel to the Debtor and Debtor in Possession, Effective as of the Petition Date* [Docket No. 179] (the "Dentons Retention Order").

5. **Methodology**.

a. **Basis of Presentation**. Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements. The Schedules and Statements are unaudited and have not been prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), International Financial Reporting Standards ("IFRS"), or Singapore Financial Reporting Standards ("SFRS") and are not intended to reconcile fully with any financial statements of the Debtors prepared under GAAP, IFRS, or SFRS. Therefore, combining the assets and liabilities set forth in the Schedules and Statements would result in amounts that are substantially different from financial information that would be prepared on a consolidated basis under GAAP, IFRS, or SFRS. The Schedules, Statements and their figures are presented on a preliminary and unaudited basis and may be subject to material changes as a result of varying matters, including, but not limited to, any potential audit adjustments, annual procedures and analysis, changes in estimates, events subsequent to the balance sheet date, further reconciliation of advance payments and accompanying utilizations related to various professionals and multiple litigations, and revisions or reconciliations of invoices received subsequent to the balance sheet date. Unlike the consolidated financial statements, the Schedules and Statements reflect the assets and liabilities of the Debtors, except where otherwise indicated. Accordingly, the totals listed in the Schedules will likely differ, at times materially, from the consolidated financial reports prepared by the Debtors for financial reporting purposes or otherwise.

Moreover, given, among other things, the uncertainty surrounding the collection and ownership of certain assets and the valuation and nature of certain liabilities, to the extent that the Debtors show more assets than liabilities, this is not an admission that the Debtors were solvent as of the applicable Petition Date or at any time prior to the applicable Petition Date. Likewise, to the extent the Debtors show more liabilities than assets, this is not an admission that the Debtors were insolvent on the applicable Petition Date or any time prior to the applicable Petition Date.

b. **Duplication**. Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in multiple parts of the Statements and Schedules. To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

c. **Umbrella or Master Agreements**. Contracts and leases listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with the Debtors and non-filing entities. Non-filing entities, however, may be liable together with such Debtors on account of such agreements and the Debtors reserve all rights to amend the Schedules and Statements to reflect changes regarding the liability of the Debtors with respect to such agreements, if appropriate. Additionally, by listing an umbrella or master agreement in these Schedules and Statements, the Debtors make no representation as to the severability of such agreements and its related contracts and leases, including any subleases, and the Debtors reserve any and all rights with respect

to any arguments or claims it may have in regard to the severability of such agreements.

d. **Executory Contracts**. Although the Debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so. Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G.

The contracts and agreements listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of diligent efforts to identify such documents. Unless otherwise specified on Schedule G, each executory contract listed thereon shall include all exhibits, schedules, riders, modifications, memorandums, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract, without respect to whether such agreement, instrument, or other document is listed thereon.

e. **Unexpired Leases**. The Debtors have not included in the Schedules and Statements the future obligations of any capital or operating leases. To the extent that there was an amount outstanding as of the applicable Petition Date, the creditor has been included on Schedule E/F.

f. **Valuation**. It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain current market valuations of all of their assets. Accordingly, unless otherwise indicated, net book values of the Debtors' assets as of the applicable Petition Date are reflected on the Schedules and Statements. Exceptions to this include operating cash and certain other assets. Operating cash is presented at bank balance as of January 21, 2024. Certain other assets, such as investments by the Debtors in Proximity and other intangible assets, are listed at undetermined amounts, as the net book values may differ materially from fair market values. Amounts ultimately realized may vary from net book value (or whatever value was ascribed) and such variance may be material. Accordingly, the Debtors reserve all of their rights to amend or adjust the value of each asset set forth herein. In addition, the amounts shown for total liabilities exclude items identified as "unknown" or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements. Also, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value. The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset. Given, among other things, the current market valuation of certain assets and the valuation and nature of certain liabilities, nothing in the Debtors' Schedules

and Statements shall be, or shall be deemed to be an admission that the Debtors were solvent or insolvent as of the applicable Petition Date. The liquidation of certain assets included herein could potentially yield significantly lower value than the book value reflected in these Schedules and Statements.

g. **Valuation of Cryptocurrency**. Cryptocurrency amounts are generally listed by coin amount and U.S. dollars. To the extent cryptocurrency values are presented in U.S. dollars, they reflect the valuation as set forth in the Debtors' books and records as of the applicable Petition Date or the time of the relevant transaction, as applicable. Transactions and wallet balances were priced using the daily closing price reported on various sources, including CoinGecko, CoinMarketCap, CoinCodex, Coinhall, and Yahoo Finance. Actual net realizable value may vary significantly. The Debtors reserve all rights in this respect with such values presented in the Schedules and Statements.

h. **Contingent Assets**. The Debtors believes that they may possess certain claims and causes of action against various parties. Additionally, the Debtors may possess contingent claims in the form of various avoidance actions they could commence under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws. The Debtors are continuing to review potential causes of action, and accordingly, despite reasonable efforts, may not have set forth all of their causes of action against third parties as assets in the Schedules and Statements. The Debtors reserve all of their rights with respect to any claims, causes of action, or avoidance actions it may have and nothing contained in these Global Notes or the Schedules and Statements shall be deemed a waiver of any such claims, avoidance actions, or causes of action or in any way prejudice or impair the assertion of such claims.

Additionally, prior to the relevant Petition Date, the Debtor, as plaintiff, commenced various lawsuits against third parties seeking monetary damages. Refer to each Statement, Part 3, Question 7, for lawsuits commenced prior to the relevant Petition Date in which the Debtors were a plaintiff.

i. **Unliquidated Claim Amounts**. Claim amounts that could not be quantified by the Debtors are scheduled as "unliquidated."

j. **Undetermined Amounts**. The description of an amount as "undetermined" is not intended to reflect upon the materiality of such amount.

k. **Totals**. All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements. To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total. The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.

l. **Allocation of Liabilities**. The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements. As

additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change. The Debtors reserve the right to amend the Schedules and Statements as it deems appropriate in this regard.

The liabilities listed on the Schedules do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all of their rights to dispute or challenge the validity of any asserted claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to any creditor's claim.

m. **Paid Claims**. Pursuant to certain orders of the Bankruptcy Court entered in the Debtors' chapter 11 cases, as well as other orders of the Bankruptcy Court (collectively, the "Orders"), the Debtors were authorized to pay certain outstanding prepetition payables, among other things, certain prepetition claims of employee wages and benefits, fees and expenses of counsel acting for employees pursuant to indemnification obligations, foreign claimants, critical vendors, and taxing authorities. Accordingly, these liabilities may have been or may be satisfied in accordance with such Orders. Regardless of whether such claims are listed in the Schedules and Statements, to the extent such claims are paid pursuant to an order of the Bankruptcy Court (including the Orders), the Debtors reserve all rights to amend, supplement, or otherwise modify the Schedules and Statements.

n. **Other Paid Claims**. To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Debtors' Schedules and Statements, and shall be enforceable by all parties, subject to any necessary Bankruptcy Court approval. To the extent the Debtors pays any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend, supplement, or otherwise modify the Schedules and Statements and take such other actions, including the filing of claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

o. **Credits and Adjustments**. The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances, or other adjustments due from such creditors to the Debtors. The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same.

p. **Intercompany Claims**. Receivables and payables among and between Debtors are reported on Statement 4, Schedule A/B, and Schedule E/F, respectively, per the Debtors' books and records. The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission of the characterization of such balances as debt, equity, or otherwise or an admission as to the validity of such receivables and payables. For the avoidance of doubt, the Debtors reserve all rights, claims, and defenses in connection with any and all intercompany

receivables and payables, including, but not limited to, with respect to the characterization of intercompany claims, loans, and notes. Without limiting the generality of the foregoing, certain intercompany receivables and payables among and between the Debtors have been consolidated and netted in the Debtors' books and records. Such treatment is not, and should not be construed as, an admission of the amount and/or validity of any such intercompany receivables and payables or the validity of any netting or offset per the Debtors' books and records. The Debtors takes no position in these Schedules and Statements as to whether any such amounts would be allowed as a claim or an interest, or not all allowed at all. The listing of these amounts is not necessarily indicative of the ultimate recovery, if any, on any intercompany asset account or the impairment or claim status of any intercompany liability account. The Debtors reserve all rights to later change the amounts, characterization, classification, categorization or designation of intercompany accounts reported in the Schedules and Statements.

Prior to the TFL Petition Date, the Debtors routinely engaged in intercompany transactions (collectively, "Intercompany Transactions") resulting in certain intercompany payables and receivables (the "Intercompany Claims"). Pursuant to the *Second Interim Order (I) Authorizing Debtor to Use Treasury Management System, (II) Authorizing Continuation of Intracompany and Intercompany Transactions, (III) Extending Time to Comply with Requirements of 11 U.S.C. § 345(b), and (IV) Granting Related Relief* [Docket No. 211] (the "Second Interim Treasury Management Order"), the Debtors received the authority to continue to collect, concentrate and disburse cash in accordance with the Treasury Management System, including with respect to funding Proximity Intercompany Transactions, TLL Intercompany Transactions, and Intracompany Transactions. To the extent that an Intercompany Claim has been satisfied pursuant to the Interim Treasury Management Order, such Intercompany Claim is excluded from Schedule AB and Schedule E/F.

Furthermore, in connection with the Proximity Intercompany Transactions, pursuant to the Second Interim Treasury Management Order, the Debtors will continue to maintain, and cause their non-Debtor affiliates to maintain, accurate and current records with respect to all such transfers, whether in fiat currency or digital assets, so that all prepetition and post-petition transactions may be readily ascertained, traced, and recorded properly on applicable intercompany accounts, and shall make such records available on a highly confidential or professionals' eyes only basis to counsel to the SEC, and any statutory committee appointed in these cases and to the U.S. Trustee, in each case upon request.

In addition, the Debtors may act on behalf of other non-Debtor affiliates. Reasonable efforts have been made to indicate the ultimate beneficiary of a payment or obligation. Whether a particular payment or obligation was incurred by the entity actually making the payment or incurring the obligation is a complex question of applicable non-bankruptcy law, and nothing herein constitutes an admission that the Debtor entity is an obligor with respect to any such payment. The Debtors reserve all rights to reclassify any payment or obligation as attributable to another entity and all rights with respect to the proper accounting and treatment of such payments and liabilities.

q. **Guarantees and Other Secondary Liability Claims**. The Debtors have exercised reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, the "Guarantees") in their executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements. Where such Guarantees have been identified, they have been included on Schedule H. However, certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements may have been inadvertently omitted. The Debtors reserve all of their rights to amend, supplement, and otherwise modify the Schedules to the extent that additional Guarantees are identified.

r. **Claims of Third-Party Related Entities**. While the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations thereto. Therefore, to the extent that the Debtors have classified their estimate of claims of a creditor as disputed, all claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered as disputed, whether or not they are designated as such.

s. **Excluded Assets and Liabilities**. The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including without limitation, accrued salaries, employee benefit accruals and accrued accounts payable. The Debtors have also excluded potential rejection damage claims of counterparties to executory contracts and unexpired leases that may be rejected (if any), to the extent such damage claims exist. In addition, the Debtors may have excluded amounts for which the Debtors have been granted authority to pay pursuant to the Orders or other order that may be entered by the Bankruptcy Court. Certain immaterial assets and liabilities may have been excluded.

t. **Currency**. Unless otherwise indicated, all amounts are reflected in U.S. dollars.

u. **Setoffs**. The Debtors may incur setoffs and net payments in the ordinary course of business. Such setoffs and nettings may occur due to a variety of transactions or disputes, including but not limited to, intercompany transactions, counterparty settlements, pricing discrepancies, rebates, returns, warranties, refunds, and negotiations and/or other disputes between the Debtors and their vendors. These setoffs and other similar rights are consistent with the ordinary course of business in the Debtors' industry and are not tracked separately. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for and, as such, are or may not be included separately in the Schedules and Statements. In addition, some amounts listed in the Schedules and Statements may have been affected by setoffs or nettings by third parties of which the Debtors are not aware. The Debtors reserve all rights to challenge any setoff and/or recoupment rights that may be asserted.

v. **Schedule A/B-3 – Checking, savings, or other financial accounts, CDs, etc**. Schedule A/B-3 lists closing bank balances as of January 21, 2024.

Cash and cash equivalents includes fiat currencies denominated in USD, SGD, EUR, and CHF. As referenced in the Treasury Management Motion, these accounts were frozen shortly after the SEC Enforcement Action and remain frozen notwithstanding the Debtors' attempts to contact the banks and its requests for the release of funds sitting in the bank accounts. Subsequent to the TFL Petition Date, in February 2024, TFL opened a bank account with Western Alliance Bank, which is compliant with section 345 of the Bankruptcy Code. Subsequently, TFL signed a consent (the "TFL Consent") and reached a settlement with the SEC, whose terms are set forth in the Final Judgment Against Terraform Labs PTE LTD and Do Hyeong Kwon [Docket No. 273]. On July 25, 2024, TFL opened a segregated bank account that was created to receive the transfer of assets contemplated in the SEC Settlement.

In addition to the TFL bank accounts described above, TLL opened an operating and segregated bank account on June 28 and July 15, respectively. As a part of the opening of the operating bank account, TFL deposited $50,000 into this account.

w. **Schedule A/B-7 – Deposits**. As referenced in the First Day Declaration, the "High Court of Singapore – Litigation Escrow Deposit" is the fiat currency paid by the Debtors to the Singapore High Court, which will remain with the Singapore High Court until the earlier of (i) outcome of the Singapore Action; or (ii) a successful application to release the funds is made by the Debtor, whichever occurs earlier. Furthermore, there are various other deposited amounts associated with the Debtors' lease, reinstatement of the lease, deposits held by the third-party payroll provider, Deel Inc., and other security deposits.

6. **<u>Specific Schedules Disclosures</u>.**

a. **Schedule A/B-8 – Prepayments:** The Debtors and their advisors continue to review professional fee retainer balances and other prepayments; for this reason, these amounts are subject to change. Note, as stated above, Dentons returned $48 million of the Advance Payment to the Debtors on March 15, 2024 pursuant to the Dentons Retention Order [Docket No. 179]. The prepayment balance relates to various professional fee retainer balances for both chapter 11 related professionals and subcontractor professionals retained by Dentons.

b. **Schedule A/B, Question 15 – Non-publicly traded stock.** Venture Investments include various technology-related ventures in early-stage and growth-stage companies that the Debtors have invested in over the last several years. These investments include but are not limited to: limited partnership interests and equity ownership through seed, series A & series B raises. The amounts listed for Venture Investments do not include approximately $33.5 million of unfunded commitments.

c. **Schedule A/B – 55 - Building, other improved real estate:** The Debtors do not own any real property. The Debtors' office lease is set forth on Schedule G.

d. **Schedule A/B, Question 77 - Other property of any kind not already listed.** Schedule A/B, Question 77 lists, among other things, the digital assets. The current value shown reflects the valuation as booked in the Debtors' books and records as of the applicable Petition Date. All figures set forth in Schedule A/B, Question 77 are preliminary, unreviewed, and unaudited and are subject to final adjustments.

The Wallets and Accounts hold various digital assets, including but not limited to Bitcoin, Ethereum, and Luna, and stablecoins USDC and USDT. Notably, none of the Wallets and Accounts hold fiat currency, such as U.S. dollars.

As described above, per the SEC Settlement, TFL agreed to burn or destroy all tokens in their possession or control that are native to the Terra blockchain, including but not limited to UST, MIR, LUNA, wLUNA, ANC, KRTC, and LUNA 2.0 holding TFL's digital assets.

"Intercompany Receivable" pertains to amounts due from Proximity for payroll expenses.

e. **Executory Contracts and Unexpired Leases**. The Debtors have not attached such agreements to Schedule A/B. Instead, the Debtors ha only listed such agreements on Schedule G.

f. **Schedule D – Creditors Who Have Claims Secured by Property**. Except as otherwise agreed pursuant to a stipulation, or agreed order, or general order entered by the Bankruptcy Court that is or becomes final, the Debtors and their estates reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to any creditor of any Debtor. The Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim.

The Debtors have not included on Schedule D parties that may believe their claims are secured through setoff rights or inchoate statutory lien rights.

Before the TFL Petition Date, TLL borrowed approximately 850,000 in FRAX tokens (valued at approximately $850,000 at the time of the loan), collateralized by approximately 441,000 CVX tokens (valued at approximately $1.29M at the time of the loan) on a decentralized finance protocol governed by a smart contract. When the Loan to Value (LTV) ratio of the FRAX loan balance outstanding compared to the value of the CVX collateral rises above the maximum LTV threshold, any lender under the decentralized finance protocol can foreclose on the CVX collateral to repay all or a portion of the FRAX loan on TLL's behalf and receive an equal value of the foreclosed collateral plus a liquidation fee of 10%. On January 23 and January 25, 2024, the maximum LTV threshold was reached due to the decline in value of the CVX collateral. Approximately 341,000 CVX tokens (worth approximately $820,000 at the time) were foreclosed on by lenders under the decentralized finance protocol without the consent of the Debtors, thus reducing the balance of the Debtors'

Case 24-10070-BLS Doc 514 Filed 07/29/24 Page 17 of 43

outstanding FRAX loan. As of February 29, 2024, approximately $70,000 of the initial FRAX loan is outstanding and collateralized by approximately 99,000 CVX tokens (currently worth approximately $496,000). The Debtors are evaluating their options and appropriate next steps as a result of these post-petition foreclosures and the Debtors reserve all of their rights with respect thereto.

The Liquidity Multisig Wallet holds digital assets TFL intends to deploy for liquidity provisioning and liquidity pool positions the Debtors maintain on decentralized exchanges (each, a "DEX"). The DEXs that are governed by smart contracts that determine the price of two "paired" tokens and adjust the prices in real time depending on supply and demand. For assets deployed in these pools, the Debtors receive compensation in the form of digital assets from the relevant exchanges for providing liquidity. The Debtors converted approximately $23M of non-BTC digital assets, including USDC, ETH, SOL, and other de minimis digital assets into BTC during the month of April.

g. **Schedule E/F – Creditors Who Hold Unsecured Claims**

*i.* ***Part 1 – Creditors with Priority Unsecured Claims***. The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority treatment under section 507 of the Bankruptcy Code. The Debtors reserve all of their rights to dispute the amount and the priority status of any claim on any basis at any time.

Pursuant to the *Final Order (I) Authorizing Debtor to (A) Pay Prepetition Workforce Obligations and (B) Maintain Employee Benefit Programs, and (II) Granting Related Relief.* [Docket No. 149] (the "Final Wages Order"), the Debtors received authority to pay certain prepetition obligations, including, without limitation, obligations related to employee wages and other employee benefits, in the ordinary course of business. Accordingly, no undisputed, prepetition claims of non-insiders related to employee wages and other employee benefits that have been paid or may be paid pursuant to the Final Wages Order or pursuant to further Bankruptcy Court order have been listed on Schedule E/F, Part 1.

*ii.* ***Part 2 – Creditors with Nonpriority Unsecured Claims***. The liabilities identified on Schedule E/F, Part 2, are derived from the Debtors' books and records. The Debtors made a reasonable attempt to set forth their unsecured obligations, although the actual amount of claims against the Debtors may vary from those liabilities represented on Schedule E/F Part 2. The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed claims or the correct amount of all unsecured claims.

In certain cases, it would be a time-consuming and inefficient use of estate resources, or impracticable, to assign a given liability to a particular legal entity

in the organization based on a contractual obligation. Instead, the Schedules reflect the liability based on the Debtors' books and records.

Pursuant to the Orders, the Debtors received authority to pay certain prepetition claims. Accordingly, no undisputed, prepetition unsecured claims of non-insiders that have been paid or may be paid pursuant to the Orders or pursuant to further Bankruptcy Court order have been listed on Schedule E/F, Part 2. Listing a claim or failure to list a claim on Schedule E/F, Part 2 that is subject to payment pursuant to the Orders does not serve as an admission by the Debtors as to the validity of such claim or as to the status of payment of such claim.

Schedule E/F, Part 2 and Statements, Part 3, Question 7, contain information regarding pending litigation involving the Debtors. The amounts for these potential claims are listed as "undetermined" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2, does not include claims that may arise in connection with the rejection of any executory contracts or unexpired leases, if any, that may be or have been rejected in the chapter 11 cases.

In many cases, the claims listed on Schedule E/F, Part 2, arose, accrued, or were incurred on various dates or on a date or dates that are unknown to the Debtors or are subject to dispute. Where the determination of the date on which a claim arose, accrued, or was incurred would be unduly burdensome and costly to the Debtors' estates, the Debtors have not listed a specific date or dates for such claim.

In the ordinary course of business, the Debtors may have received advances, earnouts, sponsorship, or similar funds from a vendor or customer which are earned over a period of time and have resulted in a net credit in favor of the Debtors. These ordinary course transactions are not reflected on Schedule E/F.

As of the time of filing of the Schedules and Statements, the Debtors may not have received all invoices for payables, expenses, and other liabilities that may have accrued prior to the applicable Petition Date. Accordingly, the information contained on Schedules D and E/F may be incomplete. The Debtors reserve their rights to, but undertake no obligations to, amend Schedules E/F if and as it receives such invoices.

Liabilities listed on Schedules E/F do not reflect any prepetition amounts paid under various authority granted by the Bankruptcy Court, including the Orders, that have been issued postpetition. The Debtors expect that certain claimants

may continue to receive payments for prepetition amounts paid under various authority granted by the Bankruptcy Court that would be issued postpetitition. The Debtors reserve all of their rights with respect to such payments, including the right to amend, supplement, or otherwise modify Schedule E/F, Part 2, to reflect such payments.

Schedule E/F reflects the prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with assumption or assumption and assignment of an executory contract or unexpired lease.

h. **Schedule G – Executory Contracts and Unexpired Leases**. While reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors, omissions, and unintended duplication or overinclusion of items may have occurred. The Debtors reserve all rights to supplement or amend Schedule G as necessary.

Listing a contract, lease, or agreement on Schedule G does not constitute an admission that such contract, lease, or agreement is an executory contract or unexpired lease or that such contract, lease, or agreement was in effect on the applicable Petition Date or is valid or enforceable. The Debtors hereby reserve all their rights, claims and Causes of Action with respect to the contracts, leases, or agreements on Schedule G, including the right to dispute the validity, status, or enforceability of, or otherwise modify any contracts, leases, or agreements set forth on Schedule G and to amend, supplement, or otherwise modify Schedule G as necessary, at any time, to remove any contracts, leases, or agreements.

Certain of the contracts, leases, and agreements listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal, and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of business, such as supplemental agreements and letter agreements, which agreements may not be set forth on Schedule G. The Debtors reserve all their rights to amend, supplement, or otherwise modify Schedule G to the extent that additional information regarding such agreements becomes available. Certain executory contracts or unexpired leases may not have been memorialized and could be subject to dispute. Any executory contracts or unexpired leases that have not been reduced to writing are not included on Schedule G.

Certain of the contracts, leases, and agreements listed on Schedule G may consist of several parts, including, without limitation, purchase orders, amendments, restatements, waivers, letters, and other documents that may not be identified in Schedule G or that may be listed as a single entry. The Debtors expressly reserve their rights to determine or challenge whether such documents constitute an executory contract or unexpired lease, a single contract, agreement or lease, or multiple, severable or separate contracts, agreements or leases.

The contracts, leases, and agreements identified in Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents.

Unless otherwise specified in Schedule G, each executory contract or unexpired lease identified therein shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument, or other document is listed therein. In some cases, the same supplier or provider may appear multiple times in Schedule G. Multiple listings, if any, reflect distinct agreements between the applicable Debtors and such supplier or provider.

Omission of a contract, lease, or agreement from Schedule G does not constitute an admission that such omitted contract, lease, or agreement is not an executory contract or unexpired lease. The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts, leases, or agreements are not impaired by any such omission.

i. **Schedule H – Co-Debtors**. For purposes of Schedule H, the Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, debt instruments, and other agreements. Thus, the Debtors reserve their right to amend Schedule H to the extent that additional guarantees are identified, or such guarantees are discovered to have expired or become unenforceable. The disclosure of a guarantee relationship in Schedule H does not constitute an admission by the Debtors as to the effectiveness or enforceability of such guarantee.

In the ordinary course of business, the Debtors may become subject to pending or threatened litigation and claims arising out of the conduct of their business. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counterclaims against other parties. The Debtors have not listed any litigation-related co-Debtors in Schedule H. Instead, all such listings to the extent known to the Debtors are listed on Schedule E/F.

7. **<u>Specific Statements Disclosures</u>**.

a. **Statements, Part 1, Question 1 – Gross revenue from business.** Revenue for fiscal years 2022, 2023, and 2024 are unaudited, currently under review by the Debtors and as such could be subject to material adjustments.

b. **Statements, Part 1, Question 2 – Non-business revenue**. Non-business revenue includes interest income. The Debtors are currently reviewing the books and records of both TFL and TLL and as such the information provided herein is subject to change.

c. **Statements, Part 2, Question 3 – Certain payments or transfers to creditors within 90 days before filing this case.** Prior to the TFL Petition Date, TFL maintained a centralized treasury management system through which TFL made and received payments on behalf of its non-Debtor subsidiary, Proximity as further explained in the Treasury Management Motion. The information contained in the Schedules and Statements includes wallet transfers to third-party vendors primarily related to: professional fees, advanced payments to certain professionals, liquidity deployment in liquidity pools, various blockchain transactions used to swap and convert digital assets, operating expenses and other expenses, the prepetition key employee retention plan & various other operating payments. Transfers listed in response to this question also include inflows from various blockchain transactions related to the swap and or conversion of digital assets.

As described in further detail in the Treasury Management Motion, the Debtors move digital assets between certain operational Wallets and Accounts to fund ordinary course operations and pay vendors, employees, and legal fees. For certain vendors and service providers that do not accept digital assets for payment, the Debtors have established a system whereby it transfers the necessary digital assets to pay specific vendor invoices. Additionally, certain transactions related to relayer wallets are intentionally omitted. These transactions are voluminous in nature and de minimis in value. These wallets are used to support various transactions related to conversions of coins, payment of gas fees, and other ordinary course wallet transactions.

d. **Statements, Part 2, Question 4 – Payments or other transfers of property made within 1 year before filing this case that benefited any insider**. The listing of any individual or entity as an insider does not constitute an admission or a final determination that any such individual or entity is or is not an insider. Distributions by the Debtors to their directors and officers are listed in the attachment to Statements, Part 2, Question 4.

Transfers reflected on the Schedule to or for insiders where the insider was used for the benefit of third party are omitted.

This section includes payments made for the benefit of Insiders, including but not limited to salaries and wages, employee expense reimbursements and payments for reimbursement of legal fees to and retainers to counsel for the benefit of Insiders.

In addition, digital asset transfers from TLL to the Debtors for intercompany borrowing, including but not limited to payment of operating expenses, certain capital investments made by the Debtor, professional fees and advanced professional fee retainers.

As described above, the Debtors have been diligently reviewing their books and records with the assistance of the Advisors to confirm the ownership of certain of the Debtors' digital asset wallets as between TFL and TLL. For the purposes of the Statement of Financial Affairs and disclosure purposes only, the intracompany wallet

transfers included herein include both inflows and outflows between all Debtors or Non-Debtors wallets which are currently under review.

In certain circumstances, the Debtors move digital assets between certain operational Wallets and Accounts, such as the Bitcoin Wallet and other bitcoin wallets to position the assets to be ultimately used for activities such as liquidity provisioning, funding of ordinary course expenses, employees related costs, capital calls and legal fees.

e. **Statements, Part 5, Question 10 – Certain Losses**. The Debtors occasionally incur losses for a variety of reasons, including theft and property damage. The Debtors, however, may not have records of all such losses to the extent such losses do not have a material impact on the Debtors' businesses or are not reported for insurance purposes.

f. **Statements, Part 13, Question 30 – Payments, Distributions, or Withdrawals Credited or Given to Insiders**. Please refer to Statements, Part 2, Question 4 regarding all payments to insiders.

**Fill in this information to identify the case:**

Debtor name: Terraform Labs Limited

United States Bankruptcy Court for the: District of Delaware

Case number (If known): 24–11481 (BLS)

☐ Check if this is an amended filing

# Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals

12/15

**Part 1: Summary of Assets**

1. ***Schedule A/B: Assets-Real and Personal Property*** (Official Form 206A/B)

   1a. **Real property:**
   Copy line 88 from *Schedule A/B* ........ $ 0.00

   1b. **Total personal property:**
   Copy line 91A from *Schedule A/B* ........ $ 465,029,989.93

   1c. **Total of all property:**
   Copy line 92 from *Schedule A/B* ........ $ 465,029,989.93

**Part 2: Summary of Liabilities**

2. ***Schedule D: Creditors Who Have Claims Secured by Property*** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim*, from line 3 of *Schedule D* ........ $ 0.00

3. ***Schedule E/F: Creditors Who Have Unsecured Claims*** (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F* ........ $ 0.00

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F* ........ + $ Undetermined

4. **Total liabilities** ........ $ Undetermined
   Lines 2 + 3a + 3b

***Plus Undetermined Amounts**

**Fill in this information to identify the case:**

Debtor name Terraform Labs Limited

United States Bankruptcy Court for the: District of Delaware

Case number (If known) 24–11481 (BLS)

☐ Check if this is an amended filing

Official Form 206A/B

# Schedule A/B: Assets - Real and Personal Property

12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

## Part 1: Cash and cash equivalents

1. **Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
☑ Yes. Fill in the information below.

| **All cash or cash equivalents owned or controlled by the debtor** | **Current value of debtor's interest** |
|---|---|
| 2. **Cash on hand** | $ 0.00 |

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1 Western Alliance Bank | Operating Account | 0 0 6 5 | $ 50,000.00 |
| 3.2 | | | $ |

4. **Other cash equivalents** *(Identify all)*

| | |
|---|---|
| 4.1 None | $ 0.00 |
| 4.2 | $ |

5. **Total of Part 1**

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80. $ 50,000.00

## Part 2: Deposits and prepayments

6. **Does the debtor have any deposits or prepayments?**

☑ No.Go to Part 3.
☐ Yes. Fill in the information below.

**Current value of debtor's interest**

7. **Deposits, including security deposits and utility deposits**

| Description, including name of holder of deposit | |
|---|---|
| 7.1 | $ |
| 7.2 | $ |

8. **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

| | | |
|---|---|---|
| 8.1 | | $ |
| 8.2 | | $ |

9. **Total of Part 2.**

Add lines 7 through 8. Copy the total to line 81. $ 0.00

## Part 3: Accounts receivable

10. **Does the debtor have any accounts receivable?**

☑ No. Go to Part 4.
☐ Yes. Fill in the information below.

| | | | | Current value of debtor's interest |
|---|---|---|---|---|
| 11. **Accounts receivable** | | | | |
| 11a. 90 days old or less: | face amount | — doubtful or uncollectible accounts | = ...... → | $ |
| 11b. Over 90 days old: | face amount | — doubtful or uncollectible accounts | = ...... → | $ |

12. **Total of Part 3**

Current value on lines 11a + 11b = line 12. Copy the total to line 82. $ 0.00

## Part 4: Investments

13. **Does the debtor own any investments?**

☐ No. Go to Part 5.
☑ Yes. Fill in the information below.

| | | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 14. **Mutual funds or publicly traded stocks not included in Part 1** | | | |
| Name of fund or stock: | | | |
| 14.1 None | | | $ 0.00 |
| 14.2 | | | $ |
| 15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture** | | | |
| Name of entity: | % of ownership: | | |
| 15.1 See Attached Rider | % | | $ 10,000,000.00 |
| 15.2 | % | | $ |
| 16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1** | | | |
| Describe: | | | |
| 16.1 None | | | $ 0.00 |
| 16.2 | | | $ |

17. **Total of Part 4**

Add lines 14 through 16. Copy the total to line 83. $ 10,000,000.00

## Part 5: Inventory, excluding agriculture assets

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☑ No. Go to Part 6.
☐ Yes. Fill in the information below.

| General Description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19. **Raw materials** | | | | |
| | MM / DD / YYYY | $ | | $ |
| 20. **Work in progress** | | | | |
| | MM / DD / YYYY | $ | | $ |
| 21. **Finished goods, including goods held for resale** | | | | |
| | MM / DD / YYYY | $ | | $ |
| 22. **Other inventory or supplies** | | | | |
| | MM / DD / YYYY | $ | | $ |

23. **Total of Part 5.** $ 0.00
Add lines 19 through 22. Copy the total to line 84.

24. **Is any of the property listed in Part 5 perishable?**

☐ No
☐ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

☐ No
☐ Yes. Book value $ ______ Valuation method ______ Current value $ ______

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**

☐ No
☐ Yes

## Part 6: Farming and fishing-related assets (other than titled motor vehicles and land)

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.
☐ Yes. Fill in the information below.

| General Description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 28. **Crops-either planted or harvested** | $ | | $ |
| 29. **Farm animals** *Examples*: Livestock, poultry, farm-raised fish | $ | | $ |
| 30. **Farm machinery and equipment** (Other than titled motor vehicles) | $ | | $ |
| 31. **Farm and fishing supplies, chemicals, and feed** | $ | | $ |
| 32. **Other farming and fishing-related property not already listed in Part 6** | $ | | $ |

33. **Total of Part 6.**

Add lines 28 through 32. Copy the total to line 85. $ 0.00

34. **Is the debtor a member of an agricultural cooperative?**

☐ No
☐ Yes. Is any of the debtor's property stored at the cooperative?
  ☐ No
  ☐ Yes

35. **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

☐ No
☐ Yes. Book value $ ______ Valuation method ______ Current value $ ______

36. **Is a depreciation schedule available for any of the property listed in Part 6?**

☐ No
☐ Yes

37. **Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☐ No
☐ Yes

## Part 7: Office furniture, fixtures, and equipment; and collectibles

38 **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☑ No. Go to Part 8.
☐ Yes. Fill in the information below.

| General Description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. **Office furniture** | $ | | $ |
| 40. **Office fixtures** | $ | | $ |
| 41. **Office equipment, including all computer equipment and communication systems equipment and software** | $ | | $ |
| 42. **Collectibles** *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1 | $ | | $ |
| 42.2 | $ | | $ |
| 42.3 | $ | | $ |

43. **Total of Part 7.**

Add lines 39 through 42. Copy the total to line 86. $ 0.00

44. **Is a depreciation schedule available for any of the property listed in Part 7?**

☐ No
☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**

☐ No
☐ Yes

## Part 8: Machinery, equipment, and vehicles

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.

| **General Description** Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | **Net book value of debtor's interest** (Where available) | **Valuation method used for current value** | **Current value of debtor's interest** |
|---|---|---|---|
| **47. Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1 | $ | | $ |
| 47.2 | $ | | $ |
| 47.3 | $ | | $ |
| 47.4 | $ | | $ |
| **48. Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 48.1 | $ | | $ |
| 48.2 | $ | | $ |
| **49. Aircraft and accessories** | | | |
| 49.1 | $ | | $ |
| 49.2 | $ | | $ |
| **50. Other machinery, fixtures, and equipment (excluding farm machinery and equipment)** | | | |
| | $ | | $ |

51. **Total of Part 8.**

Add lines 47 through 50. Copy the total to line 87. $ 0.00

52. **Is a depreciation schedule available for any of the property listed in Part 8?**

☐ No

☐ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☐ No

☐ Yes

## Part 9: Real property

54. **Does the debtor own or lease any real property?**

☑ No. Go to Part 10.

☐ Yes. Fill in the information below.

55. **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| **Description and location of property** Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | **Nature and extent of debtor's interest in property** | **Net book value of debtor's interest** (Where available) | **Valuation method used for current value** | **Current value of debtor's interest** |
|---|---|---|---|---|
| 55.1 | | $ | | $ |
| 55.2 | | $ | | $ |
| 55.3 | | $ | | $ |
| 55.4 | | $ | | $ |
| 55.5 | | $ | | $ |
| 55.6 | | $ | | $ |

56. **Total of Part 9.** $ 0.00

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

57. **Is a depreciation schedule available for any of the property listed in Part 9?**

☐ No

☐ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☐ No

☐ Yes

## Part 10: Intangibles and intellectual property

59. **Does the debtor have any interests in intangibles or intellectual property?**

☑ No. Go to Part 11.

☐ Yes. Fill in the information below.

| **General Description** | **Net book value of debtor's interest** (Where available) | **Valuation method used for current value** | **Current value of debtor's interest** |
|---|---|---|---|
| 60. **Patents, copyrights, trademarks, and trade secrets** | $ | | $ |
| 61. **Internet domain names and websites** | $ | | $ |
| 62. **Licenses, franchises, and royalties** | $ | | $ |
| 63. **Customer lists, mailing lists, or other compilations** | $ | | $ |
| 64. **Other intangibles, or intellectual property** | $ | | $ |
| 65. **Goodwill** | $ | | $ |

66. **Total of Part 10.** $ 0.00

Add lines 60 through 65. Copy the total to line 89.

67. **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)?
- ☐ No
- ☐ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
- ☐ No
- ☐ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
- ☐ No
- ☐ Yes

## Part 11: All other assets

70. **Does the debtor own any other assets that have not yet been reported on this form?**

Include all interests in executory contracts and unexpired leases not previously reported on this form.
- ☐ No. Go to Part 12.
- ☑ Yes. Fill in the information below.

| | | | | Current value of debtor's interest |
|---|---|---|---|---|
| 71. **Notes receivable** | | | | |
| Description (include name of obligor) | | | | |
| See Attached Rider | 3,754,151.99 (Total Face Amount) | — 0.00 (Doubtful or uncollectible Amount) | = → | $ 3,754,151.99 |
| 72. **Tax refunds and unused net operating losses (NOLs)** | | | | |
| Description (for example, federal, state, local) | | | | |
| None | Tax Year | | | $ 0.00 |
| | Tax Year | | | $ |
| | Tax Year | | | $ |
| 73. **Interests in insurance policies or annuities** | | | | |
| None | | | | $ 0.00 |
| 74. **Causes of action against third parties (whether or not a lawsuit has been filed)** | | | | |
| None | | | | $ 0.00 |
| **Nature of Claim** | | | | |
| **Amount Requested** $ | | | | |
| 75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims** | | | | |
| None | | | | $ 0.00 |
| **Nature of Claim** | | | | |
| **Amount Requested** $ | | | | |
| 76. **Trusts, equitable or future interests in property** | | | | |
| None | | | | $ 0.00 |
| 77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership | | | | |
| Intercompany Receivable - Terraform Labs Pte. Ltd. | | | | $ 451,225,837.94 |
| | | | | $ |
| 78. **Total of Part 11.** Add lines 71 through 77. Copy the total to line 90. | | | | $ 454,979,989.93 |

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
- ☑ No
- ☐ Yes

Debtor Terraform Labs Limited
Name

Case number (If known) 24–11481 (BLS)

## Part 12: Summary

**In Part 12 copy all of the totals from the earlier parts of the form.**

| Type of Property | Current value of personal property | | Current value of real property |
|---|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $ 50,000.00 | | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $ 0.00 | | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $ 0.00 | | |
| 83. **Investments.** *Copy line 17, Part 4.* | $ 10,000,000.00 | | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $ 0.00 | | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $ 0.00 | | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $ 0.00 | | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $ 0.00 | | |
| 88. **Real property.** *Copy line 56, Part 9.* . ........ | | → | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $ 0.00 | | |
| 90. **All other assets.** *Copy line 78, Part 11.* | $ 454,979,989.93 | | |
| 91. **Total.** Add lines 80 through 90 for each column........91a. | $ 465,029,989.93 | + 91b. | $0.00 |

92. **Total of all property on Schedule A/B.** Lines 91a + 91b = 92........ $ 465,029,989.93

Debtor Name: Terraform Labs Limited Case Number: 24–11481 (BLS)

**Assets - Real and Personal Property**

**Part 4, Question 15:** Non-publicly traded stock interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture.

| **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture** *(Name of entity:)* | **% of Ownership** | **Valuation method used for current value** | **Current value of debtor's interest** |
|---|---|---|---|
| Investment 1 - LP Interests - Investments in decentralized infrastructure | Undetermined | Net Book Value | $10,000,000.00 |
| | | **TOTAL** | **$10,000,000.00** |

Debtor Name: Terraform Labs Limited Case Number: 24–11481 (BLS)

**Assets - Real and Personal Property**

**Part 11, Question 71:** Notes receivable

| **Notes receivable**<br>Description (include name of obligor) | **Total face amount** | **Doubtful or uncollectible amount** | **Current value of debtor's interest** |
|---|---|---|---|
| Moon Landing Promissory Notes | 3,754,151.99 | 0.00 | $3,754,151.99 |
| | | **TOTAL** | $3,754,151.99 |

Debtor Terraform Labs Limited
Name
Case number (if known) 24-10070 (BLS)

## Part 2: List All Creditors with NONPRIORITY Unsecured Claims

3. **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

**Amount of claim**

**3.1 Nonpriority creditor's name and mailing address**
MURPHY, PAUL
ADDRESS ON FILE

**As of the petition filing date, the claim is:**
*Check all that apply.*
☑ Contingent
☑ Unliquidated
☑ Disputed

**Basis for the claim:** 2023 Directorship Fees

$ Undetermined

**Date or dates debt was incurred**

**Last 4 digits of account number**

**Is the claim subject to offset?**
☑ No
☐ Yes

**3.2 Nonpriority creditor's name and mailing address**

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

$

**Date or dates debt was incurred**

**Last 4 digits of account number**

**Is the claim subject to offset?**
☐ No
☐ Yes

**3.3 Nonpriority creditor's name and mailing address**

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

$

**Date or dates debt was incurred**

**Last 4 digits of account number**

**Is the claim subject to offset?**
☐ No
☐ Yes

**3.4 Nonpriority creditor's name and mailing address**

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

$

**Date or dates debt was incurred**

**Last 4 digits of account number**

**Is the claim subject to offset?**
☐ No
☐ Yes

**3.5 Nonpriority creditor's name and mailing address**

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

$

**Date or dates debt was incurred**

**Last 4 digits of account number**

**Is the claim subject to offset?**
☐ No
☐ Yes

**3.6 Nonpriority creditor's name and mailing address**

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

$

**Date or dates debt was incurred**

**Last 4 digits of account number**

**Is the claim subject to offset?**
☐ No
☐ Yes

## Part 3: List Others to Be Notified About Unsecured Claims

**4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.**

**If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.**

| | Name and mailing address | On which line in Part 1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|---|
| 4.1 | | Line<br>☐ Not listed. Explain | |
| 4.2 | | Line<br>☐ Not listed. Explain | |
| 4.3 | | Line<br>☐ Not listed. Explain | |
| 4.4 | | Line<br>☐ Not listed. Explain | |
| 4.5 | | Line<br>☐ Not listed. Explain | |
| 4.6 | | Line<br>☐ Not listed. Explain | |
| 4.7 | | Line<br>☐ Not listed. Explain | |
| 4.8 | | Line<br>☐ Not listed. Explain | |
| 4.9 | | Line<br>☐ Not listed. Explain | |

## Part 4: Total Amounts of the Priority and Nonpriority Unsecured Claims

**5. Add the amounts of priority and nonpriority unsecured claims.**

| | | | Total of claim amounts |
|---|---|---|---|
| 5a. | **Total claims from Part 1** | 5a. | $ 0.00 |
| 5b. | **Total claims from Part 2** | 5b. + | $ 0.00 + Undetermined Amounts |
| 5c. | **Total of Parts 1 and 2** Lines 5a + 5b = 5c. | 5c. | $ 0.00 + Undetermined Amounts |

**Fill in this information to identify the case:**

Debtor name: Terraform Labs Limited

United States Bankruptcy Court for the: District of Delaware

Case number (If known): 24–11481 (BLS)

☐ Check if this is an amended filing

# Official Form 206G

## Schedule G: Executory Contracts and Unexpired Leases

12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.

**1. Does the debtor have any executory contracts or unexpired leases?**

☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

☑ Yes. Fill in all of the information below even if the contracts or leases are listed on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B).

| | **2. List all contracts and unexpired leases** | | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|---|---|
| 2.1 | **State what the contract or lease is for and the nature of the debtor's interest** | BITFINEX LISTING AGREEMENT DATED 3/25/2021 | BFXWW INC AKA BITFINEX<br>C/O SHRM TRUSTEES<br>(BVI) LIMITED TRINITY CHAMBERS<br>PO BOX 4301<br>ROAD TOWN, TORTOLA VG1110<br>VIRGIN ISLANDS |
| | **State the term remaining** | | |
| | **List the contract number of any government contract** | | |
| 2.2 | **State what the contract or lease is for and the nature of the debtor's interest** | BITFINEX LISTING AGREEMENT DATED 7/5/2021 | BFXWW INC AKA BITFINEX<br>C/O SHRM TRUSTEES<br>(BVI) LIMITED TRINITY CHAMBERS<br>PO BOX 4301<br>ROAD TOWN, TORTOLA VG1110<br>VIRGIN ISLANDS |
| | **State the term remaining** | | |
| | **List the contract number of any government contract** | | |
| 2.3 | **State what the contract or lease is for and the nature of the debtor's interest** | LISTING AGREEMENT DATED 10/15/20 | BITMONEX LLC<br>AYUD TOWER 15TH FLOOR<br>1ST KHOROO<br>SUKHBAATAR DISTRICT<br>ULAANBAATAR,<br>MONGOLIA |
| | **State the term remaining** | | |
| | **List the contract number of any government contract** | | |
| 2.4 | **State what the contract or lease is for and the nature of the debtor's interest** | LETTER AGREEMENT FOR INVESTMENT IN BLOCKPOUR PTE LTD DATED 4/14/22 | BLOCKPOUR PTE. LTD.<br>90 EU TONG SEN STREET<br>#03-02B<br>SINGAPORE, 059811<br>SINGAPORE |
| | **State the term remaining** | | |
| | **List the contract number of any government contract** | | |
| 2.5 | **State what the contract or lease is for and the nature of the debtor's interest** | SIMPLE AGREEMENT FOR FUTURE EQUITY DATED 4/14/22 | BLOCKPOUR PTE. LTD.<br>90 EU TONG SEN STREET<br>#03-02B<br>SINGAPORE, 059811<br>SINGAPORE |
| | **State the term remaining** | | |
| | **List the contract number of any government contract** | | |

Debtor Terraform Labs Limited Case number (If known): 24–11481 (BLS)
Name

## Additional Page if Debtor Has More Executory Contracts or Unexpired Leases

**Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.**

| List all contracts and unexpired leases | | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|---|
| 2.6 | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | GRANT MASTER AGREEMENT DATED 7/18/22 | BREEZE LABS, INC<br>3RD FLOOR<br>225-15<br>PANGYOYEOK-RO<br>BUNDANG-GU<br>SEONGNAM, 13494<br>KOREA, REPUBLIC OF |
| 2.7 | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | MASTER SERVICES AGREEMENT AND STATEMENT OF WORK #1 DATED 9/14/22 | CONCEPT ART HOUSE, INC. AKA CAH<br>ATTN: JENNIE MARTINEZ<br>548 MARKET ST.<br>PMB 51459<br>SAN FRANCISCO, CA 94104-5401 |
| 2.8 | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | TOKEN SALE AGREEMENT DATED 11/8/21 | GLOBAL MAIDEN INTERNATIONAL LIMITED<br>ELLEN L. SKELTON BUILDING<br>SECOND FLOOR<br>FISHERS LANE<br>ROAD TOWN, TORTOLA<br>VIRGIN ISLANDS |
| 2.9 | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | TOKEN PURCHASE AGREEMENT DATED 3/29/22 | HYPHEN LABS LTD<br>C/O: HYPHEN LABS LTD TREASURY SINGAPORE<br>234 BOCANA STREET<br>SAN FRANCISCO, CA 94110 |
| 2.10 | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | CRYPTOCURRENCY LOAN AGREEMENT DATED 10/26/21 | LIQUALITY INC.<br>ATTN: SIMON LAPSCHER AND THESSY MEHRAIN<br>220 W 148TH ST<br>UNIT 5<br>NEW YORK, NY 10039 |
| 2.11 | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | DEED OF GIFT DATED 1/20/22 | LUNA FOUNDATION GUARD LTD.<br>1 WALLICH STREET<br>#37-01<br>GUOCO TOWER<br>SINGAPORE, 078881<br>SINGAPORE |
| 2.12 | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | TOKEN SALES AGREEMENT DATED 2/15/22 | LUNA FOUNDATION GUARD LTD.<br>1 WALLICH STREET<br>#37-01<br>GUOCO TOWER<br>SINGAPORE, 078881<br>SINGAPORE |

## Additional Page if Debtor Has More Executory Contracts or Unexpired Leases

**Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.**

| List all contracts and unexpired leases | | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|---|
| 2.13 | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | SIMPLE AGREEMENT FOR FUTURE EQUITY AND WARRANT DATED 12/17/21 | MARIANA LAYER LABS LTD<br>BANCO POPULAR BUILDING<br>FLOOR 4<br>ROAD TOWN, TORTOLA VG1110<br>VIRGIN ISLANDS |
| 2.14 | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | PROMISSORY NOTE DATED 3/21/2022 | MOON LANDING VENTURE I LTD<br>1 WALLICH STREET<br>#37-01<br>GUOCO TOWER<br>SINGAPORE, 078881<br>SINGAPORE |
| 2.15 | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | PROMISSORY NOTE DATED 3/25/2022 | MOON LANDING VENTURE I LTD<br>1 WALLICH STREET<br>#37-01<br>GUOCO TOWER<br>SINGAPORE, 078881<br>SINGAPORE |
| 2.16 | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | PROMISSORY NOTE DATED 3/12/2022 | MOON LANDING VENTURE I LTD<br>1 WALLICH STREET<br>#37-01<br>GUOCO TOWER<br>SINGAPORE, 078881<br>SINGAPORE |
| 2.17 | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | DIRECTOR SERVICES AGREEMENT DATED 11/28/2022 | MURPHY, PAUL<br>ADDRESS ON FILE |
| 2.18 | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | SIMPLE AGREEMENT FOR FUTURE EQUITY AND SIDE LETTER DATED 6/27/22 | OPV LEAGUE PTE. LTD.<br>F-8/7<br>F-WARD<br>BAIRAGARH HUZUR<br>BHOPAL, 23 462030<br>INDIA |
| 2.19 | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | SERIES SEED PREFERRED STOCK INVESTMENT AGREEMENT AND SIDE LETTER DATED 5/12/2021 | OUTLET FINANCE INC.<br>C/O: OUTLET FINANCE INC. TREASURY SINGAPORE<br>CORPORATION TRUST CENTER<br>1209 ORANGE STREET<br>WILMINGTON, DE 19801 |

Debtor Terraform Labs Limited
Name

Case number (If known): 24–11481 (BLS)

## Additional Page if Debtor Has More Executory Contracts or Unexpired Leases

**Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.**

| | List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|---|
| 2.20 | **State what the contract or lease is for and the nature of the debtor's interest**<br>**State the term remaining**<br>**List the contract number of any government contract** | SECOND AMENDED AND RESTATED EXEMPTED LIMITED PARTNERSHIP AGREEMENT DATED 12/15/2022 | PARAFI DIGITAL OPPORTUNITIES INTERNATIONAL LP<br>ATTN: ADRIAN UBERTO<br>600 CALIFORNIA STREET<br>FLOOR 11<br>SAN FRANCISCO, CA 94108 |
| 2.21 | **State what the contract or lease is for and the nature of the debtor's interest**<br>**State the term remaining**<br>**List the contract number of any government contract** | SUBSCRIPTION DOCUMENTS DATED 10/25/2021 | PARAFI DIGITAL OPPORTUNITIES INTERNATIONAL LP<br>ATTN: ADRIAN UBERTO<br>600 CALIFORNIA STREET<br>FLOOR 11<br>SAN FRANCISCO, CA 94108 |
| 2.22 | **State what the contract or lease is for and the nature of the debtor's interest**<br>**State the term remaining**<br>**List the contract number of any government contract** | TOKEN PURCHASE AGREEMENT DATED 1/11/22 | RIFT TECHNOLOGIES LIMITED<br>1B TRENGGANU STREET<br>SINGAPORE, 058455<br>SINGAPORE |
| 2.23 | **State what the contract or lease is for and the nature of the debtor's interest**<br>**State the term remaining**<br>**List the contract number of any government contract** | TOKEN PURCHASE AGREEMENT FOR PRIVATE SALE (SD TOKEN) DATED 7/19/21 | STAZON TECHNOLOGIES LTD AKA STADER LABS<br>C/O: SD LEGOS TECHNOLOGIES PTE. LTD.<br>3 FRASER STREET #04-23A<br>DUO TOWER<br>SINGAPORE, 189352<br>SINGAPORE |
| 2.24 | **State what the contract or lease is for and the nature of the debtor's interest**<br>**State the term remaining**<br>**List the contract number of any government contract** | SUBSCRIPTION AGREEMENT DATED 3/20/2019 | TERRAFORM LABS PTE. LTD.<br>1 WALLICH STREET<br>#37-01<br>GUOCO TOWER<br>SINGAPORE, 078881<br>SINGAPORE |
| 2.25 | **State what the contract or lease is for and the nature of the debtor's interest**<br>**State the term remaining**<br>**List the contract number of any government contract** | SUBSCRIPTION AGREEMENT DATED 2/1/2021 | TERRAFORM LABS PTE. LTD.<br>1 WALLICH STREET<br>#37-01<br>GUOCO TOWER<br>SINGAPORE, 078881<br>SINGAPORE |
| 2.26 | **State what the contract or lease is for and the nature of the debtor's interest**<br>**State the term remaining**<br>**List the contract number of any government contract** | SUBSCRIPTION AGREEMENT DATED 12/17/2021 | TERRAFORM LABS PTE. LTD.<br>1 WALLICH STREET<br>#37-01<br>GUOCO TOWER<br>SINGAPORE, 078881<br>SINGAPORE |

Debtor Terraform Labs Limited
Name

Case number (If known): 24–11481 (BLS)

**Additional Page if Debtor Has More Executory Contracts or Unexpired Leases**

**Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.**

| | List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|---|
| 2.27 | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | TERMS AND CONDITIONS OF THE PERPETUAL SECURITY DATED 3/20/2019 | TERRAFORM LABS PTE. LTD.<br>1 WALLICH STREET<br>#37-01<br>GUOCO TOWER<br>SINGAPORE, 078881<br>SINGAPORE |
| | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | | |
| | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | | |
| | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | | |
| | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | | |
| | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | | |
| | State what the contract or lease is for and the nature of the debtor's interest<br>State the term remaining<br>List the contract number of any government contract | | |

**Fill in this information to identify the case:**

Debtor name: Terraform Labs Limited

United States Bankruptcy Court for the: District of Delaware

Case number (If known): 24–11481 (BLS)

☐ Check if this is an amended filing

# Official Form 206H
# Schedule H: Codebtors

12/15

**Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the additional Page to this page.**

1. **Does the debtor have any codebtors?**

   ☑ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

   ☐ Yes

2. **In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| | *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|---|
| | **Name** | **Mailing address** | **Name** | Check all schedules that apply: |
| 2.1 | | | | ☐ D<br>☐ E/F<br>☐ G |
| 2.2 | | | | ☐ D<br>☐ E/F<br>☐ G |
| 2.3 | | | | ☐ D<br>☐ E/F<br>☐ G |
| 2.4 | | | | ☐ D<br>☐ E/F<br>☐ G |
| 2.5 | | | | ☐ D<br>☐ E/F<br>☐ G |
| 2.6 | | | | ☐ D<br>☐ E/F<br>☐ G |

**Fill in this information to identify the case and this filing:**

Debtor name Terraform Labs Limited

United States Bankruptcy Court for the: District of Delaware

Case number (If known) 24–11481 (BLS)

# Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors

12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☑ *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☑ *Schedule H: Codebtors* (Official Form 206H)
- ☑ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☑ Amended Schedule F
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 07/29/2024
MM / DD / YYYY

X /s/ Chris Amani
Signature of individual signing on behalf of debtor

Chris Amani
Printed name

Head of Company Operations of Terraform Labs Pte. Ltd., Director of Terraform Labs Limited
Position or relationship to debtor