# EXHIBIT 24

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | : | |
| | : | **Chapter 11** |
| **TERRAFORM LABS PTE. LTD. *et al.*,** | : | **Case No. 24–10070 (BLS)** |
| **Debtors.**[1] | : | **(Jointly Administered)** |
| | : | **Re: Docket No. 717** |

# FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF TERRAFORM LABS PTE. LTD. AND TERRAFORM LABS LIMITED

Upon the filing of Terraform Labs Pte. Ltd. ("**TFL**") and Terraform Labs Limited ("**TLL**"), as debtors and debtors in possession in the above-captioned Chapter 11 Cases (collectively, the "**Debtors**"), as "proponents of the plan" within the meaning of section 1129 of title 11 of the United States Code (the "**Bankruptcy Code**"), of the *Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* (Docket No. 717) (as amended, modified, or supplemented) (the "**Plan**"), a copy of which is attached hereto as **Exhibit A**;[2] and the Court having approved the *Disclosure Statement for Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* (Docket No. 569) (as amended, modified, or supplemented, the "**Disclosure Statement**"); and the Court having entered the *Order (I) Approving Proposed Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III)*

[1] The Debtors in these chapter 11 cases are: Terraform Labs Pte. Ltd. and Terraform Labs Limited. The Debtors' principal offices are located at 10 Anson Road, #10-10 International Plaza, Singapore 079903.

[2] Capitalized terms used herein, but not defined herein, shall have the meanings ascribed to such terms in the Plan or Disclosure Statement, as applicable.

*Establishing Cure Procedures, (IV) Scheduling Confirmation Hearing, (V) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan, and (VI) Granting Related Relief* (Docket No. 572) (the "**Disclosure Statement Order**"); and the Debtors, through their balloting and tabulation agent, Epiq Corporate Restructuring, LLC ("**Epiq**"), having served the *Notice of (I) Approval of Disclosure Statement, (II) Establishment of Voting Record Date, (III) Hearing on Confirmation of the Proposed Plan, (IV) Procedures for Objection to Confirmation of the Proposed Plan, and (V) Procedures and Deadline for Voting on the Proposed Plan* (Docket No. 584) (the "**Confirmation Notice**"), including the Disclosure Statement Order, the Plan, the Disclosure Statement, and the other related solicitation materials, including copies of the Court approved ballots (the "**Ballots**"), notice of non-voting status, and notice of the hearing on the confirmation of the Plan (the "**Confirmation Hearing**"), as applicable, on the holders of Claims and Interests in accordance with the Disclosure Statement Order, as described in the *Certificate of Service of Solicitation Materials*, dated August 27, 2024 (Docket No. 638), (the "**Solicitation Affidavit**") and the *Declaration of Emily Young, On Behalf Epiq Corporate Restructuring, LLC, Regarding Voting and Tabulation of Ballots Cast on the Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* (Docket No. 699) (as may be amended, modified, or supplemented, the "**Voting Declaration)**; and on August 19, 2024, the Debtors, through Epiq, having caused the Confirmation Notice to be published in the national edition of *The New York Times* and CoinDesk (CoinDesk.com), and the Debtors pinned the notice of the Confirmation Hearing on the Debtors' X accounts (https://twitter.com/terra_money) and (https://twitter.com/terrac_money), the Debtors' Medium account (https://medium.com/terra-money), the Debtors' Discord channel (https://discord.com/invite/terra-money), and the Debtors' Telegram channel

(@terra_announcements), as set forth in the *Proof of Publication* (Docket No. 693) (the "**Publication Affidavit**"); and due and proper notice of the Confirmation Hearing having been given to holders of Claims against, and Interests in, the Debtors and other parties in interest in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the Disclosure Statement Order, as established by the certificates of service, mailing, and publication filed with the Court, including the Solicitation Affidavit and the Publication Affidavit, and such notice being reasonable and sufficient under the circumstances and no further or additional notice being required; and the Debtors having filed the *Notice of Filing of Plan Supplement in Connection with Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* (Docket No. 653), the *Notice of Filing of Second Plan Supplement in Connection with Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* (Docket No. 664), the *Notice of Filing of Third Plan Supplement in Connection with Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* (Docket No. 684), and the *Notice of Filing of Fourth Plan Supplement in Connection with Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* (Docket No. 719) (together, including any exhibits, schedules, and supplements thereto, and as may be further amended, restated, supplemented, or otherwise modified in accordance with the terms of the Plan and this Confirmation Order, the "**Plan Supplement**"), which included, among other things, (a) the Wind Down Trust Agreement, (b) the Wind Down Budget, (c) the Assumption Schedule, (d) the Schedule of Retained Causes of Action, and (e) the identity of, and other disclosures satisfying the requirements of section 1129(a)(5) of the Bankruptcy Code related to, the (i) Plan Administrator,

(ii) Wind Down Trustee, and (iii) Advisory Board Members; and due and proper notice of the Plan Supplement and the documents set forth, and transactions contemplated, therein having been given to holders of Claims against, and Interests in, the Debtors and other parties in interest in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order; and such filing and notice thereof being reasonable and sufficient under the circumstances and no further or additional notice being required; and the Court having considered the record in these Chapter 11 Cases, the compromises and settlements, and the transactions embodied in and contemplated by the Plan, the briefs and arguments regarding confirmation of the Plan, including in the *Debtors' Memorandum of Law in Support of Confirmation of Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* (Docket No. 703) (the "**Confirmation Brief**"), the evidence in support of the Plan adduced at the Confirmation Hearing, and the *Declaration of Michael S. Leto in Support of Confirmation of the Second Amended Chapter 11 Plan of Liquidation of Terraform Labs Pte. Ltd. and Terraform Labs Limited* (Docket No. 706) (the "**Leto Declaration**" and together with the Voting Certification, the "**Confirmation Declarations**"); and this Court having held the Confirmation Hearing on September 19, 2024; and the Court having taken judicial notice of the entire record of these Chapter 11 Cases; and after due deliberation:

**THIS COURT HEREBY FINDS:**

A. Findings of Fact and Conclusions of Law. The findings and conclusions set forth herein, together with the findings of fact and conclusions of law set forth in the record of the Confirmation Hearing, constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable to this proceeding pursuant to Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of

law constitute findings of fact, they are adopted as such.

B. Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)). This Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. Venue of these proceedings and the Chapter 11 Cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and this Court may enter a final order hereon under Article III of the United States Constitution. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in accordance with the terms set forth herein to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. The Debtors are eligible debtors under section 109 of the Bankruptcy Code. The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C. Chapter 11 Petitions. On January 21, 2024 (the "**TFL Petition Date**") and July 1, 2024 (the "**TLL Petition Date**" and together with the TFL Petition Date, the "**Petition Dates**"), respectively, TFL and TLL commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed or requested in these Chapter 11 Cases. The Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

D. Creditors' Committee. On February 29, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee

of unsecured creditors in these Chapter 11 Cases (the "**Creditors' Committee**").

E. Judicial Notice. The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court or its duly-appointed agent, Epiq, including all pleadings and other documents filed, all hearing transcripts, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of these Chapter 11 Cases.

F. Solicitation. The Debtors have complied with the Disclosure Statement Order. The Confirmation Notice was proper, timely, and adequate in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. No other or further notice is required.

G. Wind Down Trustee and Plan Administrator. Pursuant to the Plan and the Wind Down Trust Agreement, the Wind Down Trustee shall be selected by the Debtors and the Creditors' Committee, subject to the consent of the SEC. Pursuant to the Plan and the Wind Down Trust Agreement, the Plan Administrator shall be selected by the Creditors' Committee, subject to the consent of the Debtors and the SEC. Pursuant to the Plan, JTC (Cayman) Limited has been selected as the Wind Down Trustee and Todd R. Snyder has been selected as the Plan Administrator.

H. Burden of Proof and Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). Each of the Debtors has met the burden of proving that the Plan satisfies or complies with all applicable provisions of sections 1122, 1123, 1125, 1126, and 1129 of the Bankruptcy Code by a preponderance of the evidence. More particularly:

(a) Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). In addition to Administrative Expense Claims, Fee Claims, and Priority Tax Claims, which need not be classified, Sections 3 and 4 of the Plan classify ten (10) Classes of Claims against and Interests in the Debtors, based on differences

in the legal nature or priority of such Claims against and Interests in each Debtor. The Claims and Interests placed in each Class are substantially similar to the other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, the classifications were not implemented for improper purposes, and such Classes do not unfairly discriminate between holders of Claims and Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b) <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Sections 3 and 4 of the Plan specify that Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), and Class 3 (Beltran Allowed Secured Claims) are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c) <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Sections 3 and 4 of the Plan designate Class 4 (General Unsecured Claims), Class 5 (Crypto Loss Claims), Class 6 (SEC Claim), Class 7 (Intercompany Claims), Class 8 (Intercompany Interests), Class 9 (510(c) Subordinated Claims), and Class 10 (TFL Equity Interests) as Impaired within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims in such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d) <u>Equal Treatment (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e) <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan and the various documents and agreements set forth in the Plan Supplement, as well as the exhibits and schedules to the Plan, provide adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including, without limitation: (i) the appointment of the Wind Down Trustee, (ii) the appointment of the Plan Administrator, and (iii) the appointment of the Advisory Board.

(f) <u>Voting Equity Securities (11 U.S.C. § 1123(a)(6)).</u> The Plan provides that the only new securities to be issued under the Plan pursuant to Section 5.5(c) of the Plan will be the TFL Additional Stock to the Wind Down Trust in order to allow the Wind Down Trustee for the Wind Down Trust to control TFL. Accordingly, the requirements of section 1123(a)(6) are satisfied in the Chapter 11 Cases.

(g) Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). The Debtors filed with this Court, as part of the Plan Supplement, the identities of each of the Wind Down Trustee, the Plan Administrator, and the members of the Advisory Board. The Plan provisions concerning the selection or appointment of any officer, director, or manager under the Plan are consistent with the interests of creditors and equity security holders and with public policy in accordance with section 1123(a)(7) of the Bankruptcy Code.

(h) Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1)). Pursuant to Sections 3 and 4 of the Plan, as set forth in section 1123(b)(1) of the Bankruptcy Code, and pursuant to section 1124 of the Bankruptcy Code, Class 4 (General Unsecured Claims), Class 5 (Crypto Loss Claims), Class 6 (SEC Claim), Class 7 (Intercompany Claims), Class 8 (Intercompany Interests), Class 9 (510(c) Subordinated Claims), and Class 10 (TFL Equity Interests) are Impaired, with Classes 7, 8, 9, and 10 deemed to reject the Plan.

(i) Assumption and Rejection (11 U.S.C. § 1123(b)(2)). Section 8 of the Plan addresses the assumption and rejection of executory contracts and unexpired leases, and meets the requirements of section 365(b) of the Bankruptcy Code. Consistent with section 1123(b)(2) of the Bankruptcy Code, Section 8.1 of the Plan provides that as of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtors on or before the Effective Date; (iv) is identified in Sections 8.4 and 8.6 of the Plan; or (v) is identified on the Assumption Schedule (as may be amended, modified, or supplemented) included in the Plan Supplement for assumption, or assumption and assignment to the Wind Down Trust or another party.

(j) In accordance with the Disclosure Statement Order and the Plan, counterparties to the Debtors' executory contracts and unexpired leases proposed for potential assumption or assumption and assignment were each served with the Assumption Schedule and one or more assumption and assignment notices (the "**Cure Notices**"), which included the proposed Cure Amounts for each contract or lease thereon. The time given to parties in interest to object to the assumption, assumption and assignment, and rejection of their executory contracts or expired leases, and the proposed Cure Amounts was good and sufficient and no other or further notice is required.

(k) Settlement and Retention of Claims and Causes of Action and Reservation of Rights (11 U.S.C. § 1123(b)(3)). As permitted by section 1123(b)(3)(A) of the Bankruptcy Code, Section 10.6 of the Plan provides for a release of certain Claims and Causes of Action owned by the Debtors or the Debtors' Estates. Moreover, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, Section 5.12 of the Plan provides that, other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, transferred, or settled pursuant to the Plan, the Confirmation Order, or by another Bankruptcy Court order, the Debtors reserve any and all Causes of Action. On the Effective Date, any remaining assets and any Causes of Action of the Debtors' Estates shall transfer to the Wind Down Trust automatically and without further action of the Bankruptcy Court, as applicable, which shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights with respect to any Claim or Interest may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

(l) Modification of Rights of Holders of Certain Classes of Claims (11 U.S.C. § 1123(b)(5)). In accordance and in compliance with section 1123(b)(5) of the Bankruptcy Code, the Plan properly modifies the rights of holders of Claims in Class 4 (General Unsecured Claims), Class 5 (Crypto Loss Claims), Class 6 (SEC Claims), Class 7 (Intercompany Claims), and Class 9 (510(c) Subordinated Claims). The Plan leaves unaffected the rights of holders of Claims in Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims), and Class 3 (Beltran Allowed Secured Claims). Thus, the Plan complies with section 1123(b)(5) of the Bankruptcy Code.

(m) Additional Plan Provisions (11 U.S.C. § 1123(b)(6)). The permissive provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code. The failure to address specifically a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of any provision of the Plan or this Confirmation Order.

(n) Debtors Are Not Individuals (11 U.S.C. § 1123(c)). The Debtors are not individuals. Accordingly, section 1123(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

(o) Cure of Defaults (11 U.S.C. § 1123(d)). Section 8.2 of the Plan provides for the cure of default Claims associated with each executory contract and unexpired lease to be assumed or assumed and assigned pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. All Cure Amounts will be determined in accordance with the underlying agreements

and applicable non-bankruptcy law. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code

I. Modifications to the Plan. The modifications made to the Plan since the solicitation (i) complied in all respects with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, (ii) do not adversely affect the treatment of any holder of Allowed Claims, and (iii) do not require re-solicitation of votes with respect to the Plan. Adequate and sufficient notice of such modifications has been given, no further notice is or shall be required, and such modifications are approved in full. The votes cast to accept the Plan are deemed to have been cast with respect to the Plan.

J. The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically, the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable non-bankruptcy law, and the Disclosure Statement Order in transmitting the Disclosure Statement, the Plan, the Plan Supplement, the Ballots, and related documents and notices and in soliciting and tabulating votes on the Plan.

K. Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by any of the Debtors or the Wind Down Trust, as applicable, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

L. Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The disclosures made in the Plan Supplement comply with section 1129(a)(5) of the Plan Supplement to the extent applicable. The identity and affiliations of the persons proposed to serve (i) as the Plan

Administrator, (ii) as the Wind Down Trustee, and (iii) on the Advisory Board upon the Effective Date of the Plan, and the identity of and nature of any compensation for any insider, if any, to be employed or retained by the Plan Administrator, the Wind Down Trustee, and/or the Advisory Board, as applicable, have been fully disclosed, to the extent such information is available and applicable, and the appointment of such persons is consistent with the interests of the holders of Claims against and Interests in the Debtors and with public policy.

M. No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan does not provide for rate changes. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

N. Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis provided with the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

O. Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), and Class 3 (Beltran Allowed Secured Claims) are Classes of Unimpaired Claims that are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. As reflected in the Voting Certification, each of Class 4 (General Unsecured Claims), Class 5 (Crypto Loss Claims), and Class 6 (SEC Claim) (collectively, the "**Voting Classes**") have voted to accept the Plan in accordance with

section 1126(c) of the Bankruptcy Code.

P. Treatment of Administrative Expense Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Allowed Administrative Expense Claims and Fee Claims pursuant to Sections 2.3 and 2.4, respectively, of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Priority Non-Tax Claims pursuant to Section 4 of the Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to Section 2.5 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code. The Debtors have sufficient Cash to pay Allowed Administrative Expense Claims, Fee Claims, Priority Non-Tax Claims, and Priority Tax Claims.

Q. Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). The Voting Classes are Impaired Classes, and each Voting Class has voted to or is presumed to accept the Plan. Accordingly, at least one Class of Claims against the Debtors that is Impaired under the Plan has voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

R. Feasibility (11 U.S.C. § 1129(a)(11)). The information in the Disclosure Statement, the Leto Declaration, the Confirmation Brief, and the evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan is feasible and provides adequate and appropriate means for its implementation and an orderly wind down and liquidation of the Debtors' Estates, as contemplated by the Plan, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

S. Payment of Statutory Fees (11 U.S.C. § 1129(a)(12)). The Plan provides that all fees payable under section 1930 of title 28 of the United States Code, as determined by the Court, have been or will be paid on or before the Effective Date pursuant to Section 12.1 of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

T. Benefit Plans (11 U.S.C. § 1129(a)(13)). The Debtors do not have any obligations to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code). Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

U. No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

V. Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)). The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

W. No Applicable Non-Bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)). Each of the Debtors is a moneyed business, commercial corporation, or trust, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

X. Nonconsensual Confirmation (11 U.S.C. § 1129(b)). Each Voting Class has voted to or is presumed to accept the Plan. Therefore, section 1129(b) of the Bankruptcy Code is inapplicable to the Voting Classes in these Chapter 11 Cases. The Plan does not "discriminate unfairly" and is "fair and equitable" with respect to the Classes that are impaired and are deemed to reject the Plan, because no Class senior to any rejecting Class is being paid more than in full and the Plan does not provide a recovery on account of any Claim or Interest that is equal to or

junior to such rejecting Classes. Thus, the Debtors have demonstrated that the Plan satisfies section 1129(b) of the Bankruptcy Code.

Y. Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan filed in each of these Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

Z. Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

AA. Small Business Case (11 U.S.C. § 1129(e)). None of these Chapter 11 Cases are a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

BB. Good Faith Solicitation (11 U.S.C. § 1125(e)). Each of the Debtors solicited the Plan in good faith and in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules. All affected parties in interest had due and adequate notice and opportunity to participate in the Plan confirmation process and the Confirmation Hearing. Any modifications to the Plan do not require additional disclosure or re-solicitation of votes.

CC. The Debtors, the Released Parties, and the Exculpated Parties have acted in good faith in all aspects with respect to the Plan, including within the meaning of section 1125(e) of the Bankruptcy Code, and the Debtors proposed the Plan in good faith and not by any means forbidden by law. The Plan has been proposed with the legitimate purpose of maximizing the returns available to creditors and other parties in interest. The arm's-length negotiations between, among others, the Debtors, the Creditors' Committee, and the SEC provide independent evidence of the good faith in proposing the Plan.

DD. With respect to each Debtor, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code and the Bankruptcy Rules.

EE. The holders of Claims in Class 4 (General Unsecured Claims) are impaired under the Plan and have voted to accept the Plan in the numbers and amounts required by section 1126(d) of the Bankruptcy Code.

FF. The holders of Claims in Class 5 (Crypto Loss Claims) are impaired under the Plan and have voted to accept the Plan in the numbers and amounts required by section 1126(d) of the Bankruptcy Code.

GG. The holder of Claims in Class 6 (SEC Claim) is impaired under the Plan and has voted to accept the Plan in the numbers and amounts required by section 1126(d) of the Bankruptcy Code.

HH. Except as provided pursuant to Section 4.10 of the Plan, Holders of TFL Equity Interests are not entitled to any distribution under the Plan on account of such Interests.

II. <u>Injunction, Releases, and Exculpation</u>. This Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the releases, exculpations, and injunctions set forth in Section 10 of the Plan. Sections 105(a) and 1123(b) of the Bankruptcy Code permit approval of the releases and exculpations and the issuance of the injunctions set forth in Section 10 of the Plan. As set forth below, based upon the record of the Chapter 11 Cases and the evidence proffered or adduced at the Confirmation Hearing, the releases, injunctions, and exculpations in Section 10 of the Plan are consistent with the Bankruptcy Code and are appropriate under applicable law. Further, the releases, exculpations, and injunctions contained in Section 10 of the Plan (as well as the carve-outs to such releases and exculpations) are integral components

of the Plan.

(a) **Releases by Debtors.** For the reasons set forth in the Confirmation Declarations and the Confirmation Brief, the releases being provided by the Debtors in favor of the Released Parties pursuant to Section 10.6 of the Plan are (i) fair, equitable, and reasonable, (ii) integral elements of the Plan and resolution of the Chapter 11 Cases, without which the Debtors' ability to confirm the Plan would be seriously impaired, and (iii) in the best interests of the Debtors, the Estates, and creditors. Accordingly, such releases constitute a sound exercise of the Debtors' business judgment and, to the extent applicable, otherwise satisfy the standard articulated in *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930 (Bankr. W.D. Mo. 1994).

(b) **Exculpation.** For the reasons set forth in the Confirmation Declarations and the Confirmation Brief, the exculpations in favor of the Exculpated Parties in Section 10.7 of the Plan are appropriately tailored to the circumstances of these Chapter 11 Cases, and no Exculpated Party is being exculpated for acts or omissions that constitutes actual fraud, willful misconduct, or gross negligence.

(c) **Injunction.** For the reasons set forth in the Confirmation Declarations and the Confirmation Brief, the injunction set forth in Section 10.3 of the Plan is appropriate in that such injunction is necessary to implement, preserve, and enforce the releases and exculpations set forth in Section 10 of the Plan, and is narrowly tailored to achieve such purpose.

JJ. Settlements and Compromises. The settlements and compromises incorporated in the Plan (including, without limitation, the settlement and compromise of Claims, Interests, and controversies relating to the contractual, legal, equitable, and subordination rights that each creditor or Interest holder may have with respect to any Claim or Interest or any distribution to be made on account of an Allowed Claim or Allowed Interest), and the settlements and compromises set out in the SEC Settlement (which is adopted by way of the Plan), including the classification and treatment of the SEC Claim, are in the best interests of the Debtors, the Estates, the Debtors' creditors, any Interest holders, and other parties in interest, are both fair and equitable, and are within the range of reasonableness.

KK. Likelihood of Satisfaction of Conditions Precedent to the Effective Date. Each of the conditions precedent to the Effective Date, as set forth in section 9.1 of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with the Plan.

LL. Executory Contracts and Unexpired Leases. Section 8 of the Plan, governing the assumption, rejection, and assumption and assignment of executory contracts and unexpired leases, satisfies the requirements of section 365(b) of the Bankruptcy Code. The rejection of any executory contract pursuant to Section 8 of the Plan shall be legal, valid, and binding upon the Debtors, the Wind Down Trustee, and the Plan Administrator, and their successors and assigns and all non-Debtor parties and their successors and assigns to such executory contracts and unexpired leases, all to the same extent as if such rejection had been effectuated pursuant to an order of this Court before entry of this Confirmation Order. As part of the Plan Supplement, the Debtors filed the Assumption Schedule and the Cure Notices. No objections to Cure Amounts have been filed.

MM. Substantive Consolidation. Section 105(a) of the Bankruptcy Code empowers the Bankruptcy Court to substantively consolidate multiple debtors, including the limited substantive consolidation of the Debtors' Estates into a single Estate for certain limited purposes relating to the Plan, including voting, Confirmation, and Distribution. Substantive consolidation of the Debtors is an important element of the successful implementation of the Plan and the Debtors have demonstrated a sufficient basis for the substantive consolidation.

NN. Except as otherwise provided in this Confirmation Order or by an agreement between the Debtors and the holder of an applicable Claim, the 510(c) Subordinated Claims are properly classified as Class 9 (510(c) Subordinated Claims).

OO. Good Faith. The Debtors have proposed the Plan (and all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, including the Confirmation Declarations, the Confirmation Brief, and other pleadings filed in support of confirmation of the Plan, and the record of the Confirmation Hearing and these Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and recoveries to holders of Claims under the circumstances of the Chapter 11 Cases. The Plan (including the Plan Supplement and all other documents necessary to effectuate the Plan) was negotiated at arm's length among representatives of the Debtors, the Creditors' Committee, the SEC, and their respective professionals. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Plan, supported by valuable consideration, and necessary for the Debtors' successful liquidation.

PP. Objections. All parties have had a full and fair opportunity to litigate all issues raised, or which might have been raised, in objections to confirmation of the Plan, and informal comments, and all objections have been fully and fairly litigated.

QQ. Waiver of Stay. Given the facts and circumstances of these Chapter 11 Cases, it is appropriate that the stays of effectiveness of this Confirmation Order imposed by Bankruptcy Rules 3020(e), 6004(h), 6006(d), and 7062, to the extent applicable, be waived.

RR. Retention of Jurisdiction. Except as otherwise provided for in the Plan, the Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters

arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Section 11 of the Plan and section 1142 of the Bankruptcy Code.

**IT IS HEREBY ORDERED THAT:**

**A. Confirmation of the Plan**

1. The Plan satisfies or complies with all applicable provisions of sections 1122, 1123, 1125, 1126, and 1129 of the Bankruptcy Code and is confirmed pursuant to section 1129 of the Bankruptcy Code. The Debtors and the Wind Down Trustee, at the direction of the Plan Administrator, as set forth in the Wind Down Trust Agreement, and on behalf of the Wind Down Trust, are authorized to take all actions required to effectuate the Plan and the transactions contemplated therein.

2. All objections to or reservations of rights in respect of the Plan that have not been withdrawn or resolved before the Confirmation Hearing are overruled.

3. The terms of the Plan, the agreements, instruments, and other applicable documents contained in the Plan Supplement (the "**Plan Supplement Documents**") and the Wind Down Trust Documents, and all the exhibits to all of the foregoing are hereby approved by the Court and are binding; *provided*, *however*, the Wind Down Trust Documents are each binding only upon execution thereof. All other relevant and necessary documents executed or to be executed in connection with the transactions contemplated by the Plan shall be effective and binding as of the Effective Date. The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement Documents, the Wind Down Trust Documents, or any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

4. This Confirmation Order constitutes all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan. Each of the Debtors, the Wind Down Trustee, the Plan Down Administrator, and the Advisory Board is authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan, the Plan Supplement Documents, and the Wind Down Trust Documents. The Debtors, the Wind Down Trustee, the Plan Down Administrator, and the Advisory Board, and their respective directors, officers, members, agents, and attorneys are authorized and empowered to issue, execute, deliver, file, or record any agreement or document, including the Plan Supplement Documents and the Wind Down Trust Documents, as may be modified, amended, and supplemented, in substantially the form included therein, and to take any action necessary or appropriate to implement, effectuate, and consummate the Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Plan, and any release, amendment, or restatement of any bylaws, certificates of incorporation, or other organizational documents of the Debtors or Wind Down Trust, whether or not specifically referred to in the Plan or the Plan Supplement, without further order of the Court, and any or all such documents shall be accepted by each of the respective state, local or similar filing offices and recorded in accordance with the applicable non-bankruptcy law and shall become effective in accordance with their terms and the provisions of non-bankruptcy law. Pursuant to Section 5.4(g) of the Plan, the Wind Down Trustee, at the direction of the Plan Administrator, are authorized to, subject to applicable non-bankruptcy law and consistent with the implementation of the Plan,

merge, dissolve, liquidate, or take such other similar action with respect to each Debtor (including the cancellation of all Interests in each Estate) and complete the winding up of such Estate as expeditiously as practicable without the necessity for any other or further actions to be taken by or on behalf of such Estate or its shareholders or members, as applicable, or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate Governmental Unit.

5. Subject to the occurrence of the Effective Date, on and after the entry of this Confirmation Order, the provisions of the Plan shall bind every holder of a Claim against or Interest in the Debtors and inure to the benefit of and be binding on such holder's respective successors and assigns, regardless of whether the Claim or Interest of such holder is impaired under the Plan and whether such holder has accepted the Plan.

6. Each of the settlements and compromises incorporated into the Plan, including, without limitation, the release of claims therein, satisfies the requirements of Sections 1123 and 1129 of the Bankruptcy Code and is approved and shall be effective immediately and binding on all parties in interest. The Plan shall be deemed a valid motion to approve the good faith compromise and settlement of such settlements and compromises pursuant to Sections 1123(b)(3) and 1129 of the Bankruptcy Code.

7. Subject only to payment of any applicable filing fees under applicable non-bankruptcy law, each federal, state, commonwealth, local, foreign, or other Governmental Unit is authorized to accept for filing and/or recording any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order.

8. Any beneficial interest in the Wind Down Trust (if any) or any right to receive a Distribution from the Wind Down Trust shall not be evidenced by any certificate, security, receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Wind Down Trust by the Wind Down Trustee. Further, any beneficial interest in the Wind Down Trust (if any) or any right to receive a Distribution from the Wind Down Trust shall be nontransferable and non-assignable except by will, intestate, succession, or operation of law; *provided, however*, that holders of General Unsecured Claims shall be permitted to sell, transfer, and assign such holders' General Unsecured Claims only if authorized by the Bankruptcy Court upon a motion of the Plan Administrator; *provided*, *further*, that holders of Crypto Loss Claims shall be permitted to sell, transfer, and assign such holders' Crypto Loss Claims if authorized by the Crypto Loss Claim Procedures approved by the Bankruptcy Court. Any beneficial interest in the Wind Down Trust (if any) or any right to receive a Distribution from the Wind Down Trust shall not constitute Securities and shall not be registered pursuant to the Securities Act of 1933, as amended. If it is determined that such beneficial interests (if any) or rights constitute Securities, the exemption provisions of section 1145(a)(1) of the Bankruptcy Code would be satisfied and such securities would be exempt from registration.

9. The amendments and modifications to the Plan since the filing thereof, including as may be reflected in the Plan and this Confirmation Order, are approved in accordance with section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019(a). Through the Effective Date, the Debtors, with the consent of the Creditors' Committee (not to be unreasonably withheld), shall have the right to amend any documents contained in, and exhibits to, any Plan Supplement document.

10. The Debtors are authorized to take all necessary actions to form the Wind Down Trust prior to the Effective Date, including related to paying fees and expenses incurred in connection therewith and the establishment of bank accounts in the name of the Wind Down Trust.

11. On the Effective Date, all remaining property of the Debtors' Estates and any Estate Causes of Action, including the SEC Settlement Fund and all of the Debtors' right, title and interests in the Venture Investments (other than such right, title and interest in TQ and Standard Crypto Venture Fund I LP ("**SCVF**") (the "**Remaining Assets**") shall be transferred and vest in the Wind Down Trust free and clear of any liens, claims, encumbrances and interests of any kind. The Wind Down Trust may sell, transfer, or liquidate the Remaining Assets without further order; *provided, however*, that the Wind Down Trust may seek an order to approve the sale, transfer, assumption, assignment or other disposition of any other Remaining Assets, including the equity interests in, and assets of, Proximity, and the equity interests in the Venture Investments, pursuant to the Bankruptcy Code, including section 363 thereof, at its discretion. For the avoidance of doubt, if the Debtors or the Wind Down Trust, as applicable, file a motion, pursuant to sections 363 and/or 365 of the Bankruptcy Code, to sell, assume and/or assign TFL's right, title and interest in its Venture Investments relating to SCVF (a "**SCVF Transfer Motion**") on or before the Effective Date (or such later date as may be agreed to between the Debtors or the Wind Down Trust, as applicable, and Standard Crypto Venture Fund I GP LLC (the "**SC GP**")), then any Subscription Agreements, Limited Partnership Agreements, and/or other agreements concerning the Venture Investments relating to SCVF shall not be rejected and shall remain unaffected by confirmation of the Plan and the occurrence of the Effective Date; <u>provided, however</u>, that, if the SCVF Transfer Motion is denied pursuant to a Final Order, then the Debtors or the Wind Down Trust, as applicable, may elect to reject such agreements or may, with consent

from the SC GP, pursue an alternative sale transaction with respect to the Venture Investments relating to SCVF.

12. Pursuant to applicable non-bankruptcy law and section 1142(b) of the Bankruptcy Code, no action of the respective directors, managers, members, or stockholders, as applicable, of the Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including any contract, instrument, or other document included in the Plan Supplement.

13. The classification of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan (i) were set forth on the Ballots for purposes of voting to accept or reject the Plan, (ii) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classifications of such Claims and Interests under the Plan for distribution purposes, and (iii) shall not be binding on the Debtors.

14. The Wind Down Trust Documents and the Plan shall not constitute or be construed as admissions of any fact or liability, stipulation or waiver, but rather are in furtherance of settlement in the Chapter 11 Cases.

15. The Plan Administrator, the Wind Down Trustee, or any other party authorized to make distributions under the Plan, as applicable, are hereby authorized to make all distributions pursuant to the terms of the Plan and to pay any other applicable fees and expenses approved by any other order of the Bankruptcy Court.

16. Pursuant to Section 8 of the Plan, as of and subject to the occurrence of the Effective Date, it is hereby authorized and approved that on the Effective Date, except as otherwise provided in the Plan and this Confirmation Order, each executory contract and unexpired lease not previously rejected, assumed, or assumed and assigned shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume or assume and assign filed by the Debtors on or before the Effective Date (or such later date as may be agreed to between the Debtors or the Wind Down Trust, as applicable, and the non-Debtor counterparty); (iv) is identified in Sections 8.4 and 8.6 of this Plan; or (v) is identified on the Assumption Schedule included in the Plan Supplement for assumption, or assumption and assignment to the Wind Down Trust or another party.

17. Pursuant to the Disclosure Statement Order, the Debtors served Cure Notices on counterparties to the Debtors' executory contracts and unexpired leases, which set forth the proposed Cure Amount (if any) for each executory contact or unexpired lease the Debtors or the Wind Down Trust, as applicable, proposed to be assumed or assumed and assigned after the Effective Date. As part of the Plan Supplement, the Debtors filed the Assumption Schedule, which listed those executory contracts and unexpired leases proposed to be assumed or assumed and assigned, and the proposed Cure Amount (if any) for each executory contract or unexpired lease.

18. Any counterparty to an executory contract or unexpired lease that does not or did not timely object to a Cure Notice shall be deemed to have assented to the assumption or assumption and assignment of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer

or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor, or the Wind Down Trust, under such executory contract or unexpired lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor, or the Wind Down Trust, as applicable. Each such provision shall be deemed to not apply to the assumption or assumption and assignment of such executory contract or unexpired lease pursuant to the Plan and counterparties to assumed or assumed or assigned executory contracts or unexpired leases that fail to object or failed to object to the proposed assumption or assumption and assignment in accordance with the terms set forth in Section 8.2(b) of the Plan, shall forever be barred and enjoined from objecting to the proposed assumption or assumption and assignment or to the validity of such assumption or assumption and assignment (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

19. To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed, or assumed and assigned, pursuant to the Plan restricts or prevents, purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such executory contract or unexpired lease (including any "change of control" provision), such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other any other default-related rights

with respect thereto. The actions of any Debtor prior to the Effective Date, including, among other things, commencement of the Chapter 11 Cases, the wind down of the Debtors' Estates, and the confirmation and consummation of the Plan shall not be deemed to trigger any default, termination, or "change of control" provisions in any contract or agreement of the Debtors or the Wind Down Trust, including any executory contracts or unexpired leases.

20. As set forth in Section 5.1 of the Plan, the Plan served as a motion by the Debtors seeking entry of a Bankruptcy Court order deeming the substantive consolidation of the Debtors' Estates into a single Estate for certain limited purposes relating to the Plan, including voting, Confirmation, and Distribution. As of the Effective Date, (a) each Class of Claims and Interests shall be treated as against a single consolidated Estate without regard to the separate legal existence of the Debtors, (b) as set forth in Section 4.7 of the Plan, no Distributions under the Plan shall be made on account of Intercompany Claims, and (c) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as one consolidated entity so that, subject to the other provisions of section 553, debts due to one Debtor may be set off against the debts of the other Debtor.

21. The foregoing limited substantive consolidation of the Debtors under the Plan shall not affect (i) the legal and organizational structure of the Debtors, including for corporate, tax or any other purpose, (ii) the ability of the Wind Down Trust and the Wind Down Trustee, as directed by the Plan Administrator, to subordinate or otherwise challenge Claims on an entity-by-entity basis, (iii) any Causes of Action or defenses thereto, which in each case shall survive entry of the Confirmation Order as if there had been no substantive consolidation of the Estates, and (iv) payments from any insurance policies or the proceeds thereof.

22. For the avoidance doubt, pursuant to Bankruptcy Rule 3020(c)(1), the following provisions in the Plan are hereby approved and will be effective immediately on the Effective Date without further order or action by the Court, any of the parties to such release, or any other entity: (a) the Plan Injunction (Section 10.3); (b) the Releases by the Debtors (Section 10.6); and (c) the Exculpation (Section 10.7).

23. The Debtors and the Wind Down Trust are hereby authorized without further notice to or action, order or approval of the Court to enter into, perform under, and consummate the transactions contemplated by the Wind Down Trust Agreement and shall execute and deliver on the Effective Date, as applicable, all agreements, documents, instruments, financing statements, mortgages, security documents, and certificates relating to the Wind Down Trust Agreement and the Wind Down Trust Transfer Agreements (as defined in the Plan), as applicable, in each case that are contemplated to be executed and/or delivered, as applicable, on the Effective Date (collectively, the "**Wind Down Trust Documents**"). On the Effective Date, the Wind Down Trust Documents shall, subject to the satisfaction of the conditions thereof, constitute legal, valid, binding, and authorized joint and several obligations of the applicable Debtors and the Wind Down Trust, enforceable in accordance with their respective terms, and such obligations shall not be, and shall not be deemed to be, enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under applicable law, the Plan, or this Confirmation Order or on account of the confirmation or consummation of the Plan. All such documents are approved, incorporated in the Plan and this Confirmation Order by reference, and shall become effective in accordance with their terms and the Plan. Confirmation of the Plan shall be deemed approval of all obligations to be incurred and fees paid or to be paid by the Debtors or the Wind Down Trust in connection with the Wind Down Trust Documents.

24. This Confirmation Order authorizes the (i) creation and implementation of the Wind Down Trust in accordance with the terms of this Confirmation Order, the Plan, and the Wind Down Trust Agreement, and (ii) appointment of the Wind Down Trustee, the Plan Administrator, and the Advisory Board, each for the Wind Down Trust, to accomplish the purposes of the Wind Down Trust, as set forth in and subject to the Wind Down Trust Agreement and the Plan, notwithstanding any otherwise applicable non-bankruptcy law. The Wind Down Trust may be established prior to the Effective Date to the extent necessary, desirable, or appropriate to effectuate the Plan. Further, the Wind Down Trust will be operated in compliance with federal and state securities laws and SEC staff guidance regarding liquidating trusts.

25. The Debtors shall cause to be served and published in the same manner as the Confirmation Notice a notice of the entry of this Confirmation Order and occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (the "**Notice of Effective Date**") upon (a) all parties listed in the creditor matrix maintained by Epiq , and (b) such additional persons and entities as deemed appropriate by the Debtors or the Wind Down Trust, as soon as reasonably practicable after the Effective Date.

## B. Administrative Expense Claims Bar Date

26. Except as otherwise provided in Section 2.1 of the Plan, the applicable deadline for filing requests for payment of Administrative Expense Claims (other than holders of Administrative Expense Claims paid in the ordinary course of business, holders of Administrative Expense Claims arising under section 1930 of chapter 123 of title 28 of the United States Code, and holders of Fee Claims) and shall be the date that is sixty (60) calendar days after the Effective Date (the "**Administrative Expense Claims Bar Date**"). Holders of Administrative Expense Claims that are required to, but do not, file and serve requests for the payment of such

Administrative Expense Claims by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Claims against the Debtors or the Wind Down Trust, as applicable, or their assets or properties, and such Claims shall be deemed discharged as of the Effective Date.

**C. Crypto Loss Claim Bar Date**

27. The Plan Administrator, on behalf of the Wind Down Trust, is authorized to propose and implement, upon approval by this Court, the bar date and proof of claim process for holders of Crypto Loss Claims to assert a claim (the "**Crypto Loss Claims Bar Date**") for allowance and distribution purposes; *provided*, that such date shall be no more than one hundred twenty (120) calendar days after the Effective Date; *provided, further, however*, that such time may be extended by the Plan Administrator. Notwithstanding anything in the Plan or applicable law, any statutes of limitation, statutes of repose, or other time bar limitations with respect to Crypto Loss Claims that expire during the Chapter 11 Cases shall be tolled until the Crypto Loss Claim Bar Date.

28. The Plan Administrator is authorized to propose and implement, upon approval by this Court, the procedures pursuant to which holders of Crypto Loss Claims may assert such Claims and the process and timeline for administering and determining the Allowed Claim for each holder of a Crypto Loss Claim (the "**Crypto Loss Claim Procedures**"). The Plan Administrator shall seek approval of the Crypto Loss Claim Bar Date and the Crypto Loss Claim Procedures in a motion filed with the Bankruptcy Court, which shall include: (A) notice of the Crypto Loss Claim Procedures and an opportunity to object thereto; (B) notice of the hearing to consider approval of the Crypto Loss Claim Procedures, if necessary; (C) the deadline to file Crypto Loss Claims; (D) instructions for submitting a Crypto Loss Claim; (E) a modified Proof of

Claim form specifically as to Crypto Loss Claims; and (F) a notice for holders of Crypto Loss Claims to "opt in" to being a Contributing Claimant.

**D. Rejection Damages Bar Date**

29. If the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to Section 8.1 of the Plan results in damages to the other party or parties to such contract or lease, any Claim for such damages, if not heretofore evidenced by a timely filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtors or their Estates, unless a proof of Claim is filed with the Court and served upon the Debtors no later than (i) thirty (30) days after a filing and service of the Notice of Effective Date (as defined below); or (ii) thirty (30) days following service of an order approving rejection of any executory contract or unexpired lease of the Debtors if such contract or lease is the subject of a pending assumption dispute. Any such Claims, to the extent Allowed, shall be classified as General Unsecured Claims in Class 4.

**E. Other Bar Dates**

30. Except as otherwise provided in Section 2.6 of the Plan, the applicable deadline for Private Wallet Crypto Holders (as defined in the Plan) to request withdrawal of Tokens (as defined in the Plan) held in wallets or accounts owned or controlled by such Private Wallet Crypto Holder or be forever barred, estopped, and enjoined from withdrawing such Tokens and asserting any Claims relating to the loss of access to such Tokens against the Debtors or the Wind Down Trust, as applicable, or their respective assets or properties, shall be the date that is thirty (30) calendar days after the Effective Date.

31. Except as otherwise provided in Section 2.7 of the Plan, the applicable deadline for Bridge Wallet Crypto Holders (as defined in the Plan) to redeem Terra Crypto (as defined in the Plan) held in the Bridge Wallets (as defined in the Plan) or be forever barred,

estopped, and enjoined from redeeming such Terra Crypto and asserting any Claims relating to the loss of access to such Terra Crypto against the Debtors or the Wind Down Trust, as applicable, or their respective assets or properties, shall be the date that is thirty (30) calendar days after the Effective Date.

**F. Fee Claims**

32. All Professional Persons seeking approval by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 327, 328, 330, 331, or 503(b)(2) of the Bankruptcy Code shall file and serve, on or before the date that is sixty (60) calendar days after the Effective Date, their respective applications (collectively, the "**Final Fee Applications**") for final allowances of compensation for services rendered, and reimbursement of expenses incurred between the effective date of each respective Professional Person's retention in these Chapter 11 Cases and the Effective Date. Any objection to any Final Fee Application must be filed with this Court and served by no later than 4:00 p.m. (prevailing Eastern Time) on the date that is twenty-one (21) calendar days after the filing and service of the applicable Final Fee Application.

**G. United States**

33. As to the United States of America ("United States"), nothing in the Plan, this Order, any Plan Supplement, the Definitive Documents, or other related Plan documents shall:

(a) discharge, release, enjoin, bar, impair or otherwise preclude (i) any obligation or liability owed to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code, (ii) any claim of the United States arising after the Effective Date, (iii) any obligation or liability of any entity or person under police or regulatory statutes or regulations to the United States as the owner, lessor, lessee, licensee, or operator of property or rights to property that such entity or person owns, operates, licenses, or leases after the Effective Date; (iv) any right, defense, claim, suit or cause of action of, or obligation or liability owed to, the United States on the part of any non-debtor; *provided*, *however*, that the foregoing shall

in no way limit the exculpations and protections provided for under section 1125(e) of the Bankruptcy Code or set forth in section 10.7 of the Plan

(b) release, exculpate, nullify, bar, enjoin, or preclude the enforcement of the United States' criminal, police or regulatory powers; *provided*, *however*, that the foregoing shall not limit, diminish or otherwise alter the Debtors' defenses, claims, causes of action or other rights under applicable non-bankruptcy law with respect to any liability that may exist in connection with the foregoing;

(c) authorize the assumption, sale, assignment or other transfer of any U.S. federal (i) grants, (ii) grant funds, (iii) contracts, (iv) property, including but not limited to, intellectual property, data and patents, (v) leases, (vi) participation rights, (vii) agreements, (viii) applications, (ix) licenses, (x) permits, (xi) registrations, (xii) authorizations, (xiii) approvals, or (xiv) other interests of the federal government (collectively, "**Federal Interests**"), without compliance with all terms of the Federal Interests, as applicable, and with all applicable non-bankruptcy law;

(d) be interpreted to set cure amounts or to require the United States to novate, approve or otherwise consent to the assumption, sale, assignment or transfer of any Federal Interests;

(e) waive, alter or otherwise limit the United States' property rights with respect to any Federal Interests, including but not limited to, cryptocurrency funds, and all such rights of the United States are fully preserved;

(f) confer exclusive jurisdiction to the Bankruptcy Court with respect to the Federal Interests, claims, rights, defenses, obligations, liabilities, and causes of action, except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code);

(g) release any non-debtors from any liabilities owing to the United States as a creditor, including, but not limited to, any liabilities owing under the Internal Revenue Code; *provided*, *however*, that the foregoing shall in no way limit the exculpations and protections provided for under section 1125(e) of the Bankruptcy Code or set forth in section 10.7 of the Plan;

(h) affect any setoff or recoupment rights and defenses of the United States and such rights and defenses are preserved; and

(i) modify the scope of 11 U.S.C. § 525.

### H. TQ Agreements

34. Notwithstanding anything to the contrary in this Confirmation Order or the Plan, all Subscription Agreements, Limited Partnership Agreements, and other agreements concerning the Venture Investments (collectively, the "**TQ Agreements**") relating to TQ Ventures III Early LP and TQ Ventures III Growth LP (together, "**TQ**") shall (i) not be rejected on the Effective Date and shall remain unaffected by confirmation of the Plan and the occurrence of the Effective Date, and (ii) be automatically rejected without notice or further action on December 31, 2024 (or such other date as may be agreed to between the Wind Down Trust and the general partner of TQ, the "**TQ Rejection Date**"), unless, on or before the TQ Rejection Date, (1) all of the Debtors' rights, interests and obligations under the TQ Agreements (collectively, the "**TQ Interests**") are transferred on terms agreed in writing between the Wind Down Trust and the general partner of TQ (the "**GP**"), each in its sole discretion, or (2) the Wind Down Trust files a motion, pursuant to section 363 and/or 365 of the Bankruptcy Code, to sell, assume and/or assign the TQ Interests (a "**TQ Transfer Motion**"). In the event that a TQ Transfer Motion is filed on or before the TQ Rejection Date and (a) such motion is not approved by a final order of the Bankruptcy Court, (b) any applicable cure costs are not paid, (c) any applicable adequate assurance of future performance is not provided, or (d) the assignment of the TQ Interests is not closed, in each case on or before January 31, 2024 (or such other date as may be agreed to between the Wind Down Trust and the GP), the TQ Agreements shall be automatically rejected without notice or further action as of the TQ Rejection Date unless otherwise agreed in writing between the Wind Down Trust and the GP. Each of the Wind Down Trust and TQ reserves all rights, objections, and defenses in respect of any proposed assumption or assignment of the TQ Interests, including without limitation in respect of whether the TQ Interests may be assumed and/or assigned, the

identity of any proposed assignee, cure costs, and adequate assurance of future performance, and nothing herein shall be construed as a waiver of any such rights, objections, or defenses. In the event of any rejection of the TQ Agreements, notwithstanding any other bar date, TQ may file a rejection damages claim within thirty (30) days following the date of service of notice of such rejection, and the Wind Down Trust and TQ reserve all rights, objections, and defenses (other than timeliness of assertion, if such a claim is filed within such time period) in respect of any such rejection damages claim, and nothing herein shall be construed as a waiver of any such rights, objections, or defenses.

**I. Relm Insurance Ltd.**

35. Notwithstanding anything to the contrary in the Plan, upon entry of this Confirmation Order, the Relm Insurance Ltd. ("**Relm**") Private Company Directors & Officers liability insurance policy (Policy No. RILPDO10552023) ("**Relm D&O Policy**") shall be terminated with a retroactive effective date of December 28, 2023, and Relm shall not assert any claims against the Debtors related to or in connection with the Relm D&O Policy.

**J. Miscellaneous**

36. The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to the satisfaction or waiver of the conditions precedent to the Effective Date, and all parties in interest shall be entitled to rely upon this Confirmation Order in taking any actions or performing any obligations to consummate the Plan.

37. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan before the Debtors' or the Wind Down

Trustee's receipt of written notice of any such order; nor shall such reversal, modification, or vacatur of this Confirmation Order affect the validity or enforceability of such act or obligation. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order before the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, the Wind Down Trust Documents and all documents, instruments and agreements related thereto or any amendments or modifications thereto.

38. To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, (i) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or (ii) the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments, or assignments executed in connection with any disposition of assets contemplated by the Plan (including transfers of assets to and by the Wind Down Trust) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales or use tax, mortgage recording tax, or other similar tax or governmental assessment.

39. Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, and related documents, or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

40. Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

41. On the Effective Date, the Plan shall be deemed to be substantially

consummated under sections 1101 and 1127 of the Bankruptcy Code.

42. Each term and provision of the Plan, as it may have been altered or interpreted by the Court in accordance with Section 12.6 of the Plan, is (i) valid and enforceable pursuant to its terms, (ii) integral to the Plan and may not be deleted or modified except in accordance with the terms of the Plan, and (iii) nonseverable and mutually dependent.

43. The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of fourteen (14) days after entry of the order are hereby waived. The terms and provisions of this Confirmation Order shall be immediately effective and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062.

44. In accordance with Section 1.C of the Plan, if there is determined to be any inconsistency between any provision of the Plan and any provision of this Confirmation Order that cannot be reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern, and any such provisions of this Confirmation Order shall be deemed a modification of the Plan.

45. The provisions of the Plan and this Confirmation Order, including any findings of fact and conclusions of law set forth in this Confirmation Order, are non-severable and mutually dependent.

46. Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in these cases after the Effective Date shall be limited to: (i) the Notice Parties; and (ii) any party known to be directly affected by the relief sought.

47. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Confirmation Order and all matters arising in and under, and related to, these Chapter 11 Cases, as set forth in Section 11 of the Plan, or pursuant to section

1142 of the Bankruptcy Code. Further, the Bankruptcy Court shall retain jurisdiction over any sale, assumption or assumption and assignment of the Debtors' or the Wind Down Trust's assets, including but not limited to, the equity interests in, and assets of, Proximity, and the equity interests in the Venture Investments, to the extent the Debtors, Plan Administrator, or Wind Down Trustee seek to approve such sale, assumption or assumption and assignment pursuant to sections 363 and/or 365 of the Bankruptcy Code.

**BRENDAN L. SHANNON**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: September 20th, 2024**
**Wilmington, Delaware**